UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LOOPS, L.L.C., a Delaware limited liability company, | Case No.: 4:25-cv-02346-BYP |
| Plaintiff, | JUDGE BENITA Y. PEARSON |
| v. | |
| MAXILL INC., a Canadian corporation, et al. | |
| Defendants. | |

**REPLY IN SUPPORT OF MOTION TO STAY PROCEEDINGS OR
EXTEND TIME TO FILE RESPONSIVE PLEADINGS**

**I.     Introduction**

Loops's Opposition focuses on rebutting an argument that Maxill Canada and John Shaw (the "Non-Debtor Defendants") do not make and thus applies the incorrect legal standard (the "unusual circumstances" test). The Non-Debtor Defendants are not asking this Court to extend the 11 U.S.C. § 362 stay to them, so the "unusual circumstances" test is not appliable. The Non-Debtor Defendants are asking this Court to use its discretion to stay the case under its inherent authority to manage its docket and avoid duplicative litigation and undue burden on the parties and the Court. Such inefficiencies are inevitable without a stay. Loops's claims against the Non-Debtor Defendants completely overlap with the bankruptcy defendants—they are not independent and factually distinct; they are inseparable. And because Maxill Ohio and Maxill Realty filed under Chapter 11 of the bankruptcy code, which allows the debtor to reorganize and

1

keep the business alive, there is no reason to litigate the case to resolution against half the defendants only to rinse and repeat the same claims against the remaining defendants once the bankruptcy stay is lifted. Given how early we are in the case, doing so would be a false start.

Indeed, splitting up the case between the two sets of Defendants would be impossible based on Loops's allegations. Loops intertwines *all* the Defendants' conduct with respect to its patent infringement claims, and Loops's fraudulent transfer theory is rooted in a mortgage that Maxill Realty (a bankruptcy defendant) executed. Loops has not put forth any plausible way it could litigate this case without involving the defendants in bankruptcy. Courts across the country routinely use their inherent power to stay cases under similar circumstances—this is not "extraordinary relief," as Loops puts it. (Opp., Dkt. No. 18, p. 2.)

Further, good cause exists to allow the Defendants additional time to respond to Loops's Complaint. The Defendants are only seeking a short extension until January 15 for the Non-Debtor Defendants to respond. And Loops has not identified any harm in allowing this modest extension. The Defendants just recently retained the undersigned law firm, who is taking the lead on preparing the responsive filings, and has needed this time to get up to speed on what is, admittedly, a complex litigation history between these parties.

## II. The Discretionary Factors Favor a Stay

### A. Maxill is asking this Court for a discretionary stay—not a stay under 11 U.S.C. § 362.

Loops primarily contests an argument not before the Court: that the automatic stay under 11 U.S.C. § 362 extends to the Non-Debtor Defendants. In doing so, Loops suggests that the Non-Debtor Defendants must meet a "threshold issue" of demonstrating that this case has "unusual circumstances" that would warrant extending the bankruptcy stay to the Non-Debtor Defendants. (Opp., p. 7.) But the Non-Debtor Defendants are not making that argument. Rather,

the Non-Debtor Defendants are asking this Court to do what courts across the country routinely do under similar circumstances: exercise its inherent authority to manage its docket and stay this case for judicial economy and to avoid prejudicing the Defendants. (*See* Motion, Dkt. No. 17, p. 3.) Courts distinguish different standards between the former and the latter. *See Horizon Glob. Ams., Inc. v. N. Stamping, Inc.*, Case No. 1:20-CV-00310, 2025 U.S. Dist. LEXIS 202999, at *5 (N.D. Ohio Oct. 15, 2025) ("What NSI appears to overlook is that even if the automatic stay does not apply to McDonald Hopkins as a non-debtor (an issue which this Court does not decide), the Court has inherent authority to stay the proceeding against McDonald Hopkins.").

In exercising their inherent authority to stay a case, courts consider three factors: (1) prejudice to the non-moving party if a stay is granted, (2) prejudice to the moving party if a stay is not granted, and (3) whether judicial economy and efficiency would be served by a stay. *Id.* at 5–6. All three factors favor a stay in this case.

### B. A stay would serve judicial economy.

Loops does not deny that its claims against all the Defendants are intertwined or that proceeding without Maxill Ohio and Maxill Realty would result in duplicative litigation. (Mot., p. 5.) In fact, Loops appears to concede this fact, but dismisses it because, in Loops's view, such inefficiencies are "ordinary burdens of litigation." (Opp., p. 10.) Loops thus ignores the fact that a stay would avoid these inefficiencies and addresses a red herring: the fact that a stay will allegedly not conserve resources "[b]ecause th[e] bankruptcy cases will not resolve Loops's claims against Maxill Canada and Shaw[.]" (Opp., p. 9.) But this ignores the problem and, again, addresses an argument that the Non-Debtor Defendants have not made. The problem is that if the Court proceeds against Maxill Canada and Shaw now, it will have to go through the same

process again with the bankruptcy defendants once their stay is lifted—the same allegations and issues, just against a new set of defendants.

Loops's allegations cannot be cleanly untangled into separate causes of action that could be litigated separately without wasting judicial resources and duplicating efforts by the Court and the Parties. A stay is appropriate under these circumstances, particularly where the claims against the bankrupt defendants and the remaining defendants "are substantially similar and related." *Wordtech Sys. v. Integrated Network Solutions, Inc.*, No. 2:04-cv-01971, 2012 U.S. Dist. LEXIS 172789, at *10 (E.D. Cal. Dec. 4, 2012); *see also Doss v. Cnty. of Alameda*, Case No. 19-cv-07940, 2024 U.S. Dist. LEXIS 218513, at *4 (N.D. Cal. Dec. 3, 2024) ("Many of Plaintiffs' claims in this case arise from similar facts and similar legal arguments such that a partial stay would require the parties to relitigate the same issues once the bankruptcy stay is lifted. That would be inefficient for everyone involved.").

This is the case here. To start, Loops accuses *all* Defendants of infringing the same two patents based on the *same* factual allegations, including the same accused product: Maxill's "Supermaxx toothbrush." (*See, e.g.*, Compl., pp. 10 and 12 ("Infringement of the '311 Patent Against All Defendants" and "Infringement of the '940 Patent Against All Defendants").) For example, Loops alleges that "Defendants, and each of them, have infringed, and continue to infringe one or more claims of the '311 Patent . . . by making, using, selling, offering to sell, and/or importing, without authority, the [Supermaxx toothbrush] within the United States, Ohio, and this judicial district." (*Id.* at ¶ 34, *see also* ¶ 44.) Loops alleges that "after first selling the [Supermaxx toothbrush] in Canada, Defendants began exporting and importing the [Supermaxx toothbrush] into the United States, Ohio, and this judicial district and promoting, marketing, warehousing, distributing, offering to sell, and selling same in these locations, and continue to do

so." (*Id.* at ¶ 31.) Loops's patent infringement allegations lump all Defendants together, claiming that they act together "as part of their unified enterprise." (*Id.* at ¶ 8.) It is unclear, to say the least, how Loops could litigate under this theory when the case is stayed against half of the Defendants alleged to be part of this "unified enterprise."

Loops's fraudulent transfer claims are just as inextricably wound together amongst the Defendants. In fact, it appears impossible that Loops could even litigate its fraudulent transfer claim solely against Shaw without involving Maxill Realty. Loops's claim centers on a mortgage that *Maxill Realty* executed. (*Id.* at ¶¶ 52–66.) All the parties will need discovery and information relevant to this cause of action from Maxill Realty.

In fact, to prevail on any of its claims against Shaw, personally, Loops must pierce the corporate veil, which would need information from the bankruptcy defendants. Loops alleges, for example, that "Shaw . . . dominates and controls [the Maxill Entities'] operations and finances" (*Id.* at ¶ 12.) Logically, then, it only makes sense to wait until the stay is lifted and all the Maxill Entities can participate in the case to litigate these claims. In short, a stay is appropriate here because Loops's claims against the bankruptcy defendants are not "separate and independent from their claims against the other [d]efendants[.]" *Rodriguez v. Extreme Mfg., LLC*, No. 11cv0626 MCA/LAM, 2012 U.S. Dist. LEXIS 191800, at *9 (D.N.M. Mar. 20, 2012).

The Northern District of Ohio in *Horizon Glob. Ams., Inc. v. Stamping, Inc.*, stayed a case under similar circumstances, reasoning that "[i]f the Court decided these issues without [the bankruptcy defendant], then once [the bankruptcy defendant] becomes able to fully participate, the Court would need to reopen those same factual and legal issues." 2025 U.S. Dist. LEXIS 202999, at *8. The reasoning in *Horizon* (and many other courts across the country granting stays under these circumstances) applies with full force here. *See also, e.g.*, *Putman v. Cnty. Of*

5

*Tuscola*, Case No. 1:23-cv-10427, 2025 U.S. Dist. LEXIS 48100, at *9–13 (E.D. Mich. Mar. 17, 2025) ("staying the entire case to avoid piecemeal litigation is the most efficient path forward"). The Court should thus grant the Non-Debtor Defendants' Motion and stay the case until Maxill Realty and Maxill Ohio are able to participate.

    C. <u>Without a stay the Defendants will be prejudiced.</u>

Loops concedes that litigating the case without Maxill Ohio and Maxill Realty will result in duplicative discovery and litigation, but claims this is just "the ordinary burdens of litigation[.]" (Opp. p. 10.) Duplicative discovery and litigation is not ordinary, and courts routinely avoid it by staying cases until a partial bankruptcy stay is lifted. *See* cases cited *supra*. Moreover, Shaw would be prejudiced if he had to defend against Loops's allegations related to piercing the corporate veil, but was unable to seek documents or information from Maxill Realty or Maxill Ohio, which would likely be relevant to demonstrating that the Maxill Entities all observed the proper corporate formalities. Further, to demonstrate which entities are selling and importing the Accused Products in the United States (an alleged basis for infringement), documents and information will likely be needed from Maxill Ohio. Thus, requiring the Non-Debtor Defendants to defend themselves now will either require them to do so without the benefit of getting information from the bankruptcy entities or burden the bankruptcy entities with discovery obligations in violation of the stay. Accordingly, this factor also favors staying the case.

    D. <u>A stay would have little prejudice to Loops.</u>

Finally, Loops has not articulated any meaningful harm it would endure from a stay other than having to wait longer to adjudicate its claim: "Justice delayed is justice denied[.]" (Opp., p. 8.) But this "prejudice" happens whenever there is a stay in any case and does not outweigh the

judicial economy concerns outlined throughout this brief if there is no stay. *See Horizon*, 2025 U.S. Dist. LEXIS 202999, at *7 ("The only prejudice NSI identifies is the obvious prejudice caused by any stay, i.e., having to wait longer for the court to adjudicate the claim. . . . But NSI underappreciates the efficiency concerns of not staying this case."). Loops also claims harm from "ongoing infringement and continued distribution of the accused product," but Loops did not assert these patents, which issued in 2019 and 2021, until 2025, and did not file a preliminary injunction in this case, implicitly conceding that any "ongoing infringement" can be addressed monetarily to the extent Loops prevails. Loops also gives lip service to a "risk of further asset dissipation" and "that evidence will be lost," but does not back this up with any factual support. In reality, Loops and Maxill have been litigating patent infringement claims over the sale of the Supermaxx toothbrush since 2012 and currently have a pending, stayed patent infringement case in the Western District of Washington (Case No. 2:17-cv-01825) that has been pending since 2017 concerning the parent to the patents asserted in this case. Waiting until the automatic stay is lifted as to Maxill Ohio and Maxill Realty will not prejudice Loops—but it will avoid inefficient, piecemeal litigation in a case that has barely started. The Non-Debtor Defendants' Motion should be granted.

### III. Good Cause Exists to Extend the Defendants' Deadlines to Respond to the Complaint

The Defendants' request for a modest time extension to respond to Loops's Complaint is not "dilatory," as Loops claims. (Opp., p. 11.) Loops has represented that it does not oppose Maxill Ohio and Maxill Realty's request for an extension of 21 days from the date each stay is lifted to respond to Loops's Complaint. (Opp., p. 2, fn. 1.) Shaw and Maxill Canada are asking for less than a two-week extension to what Loops had already agreed to (January 2, 2026). Loops cannot credibly claim any meaningful prejudice here. Good cause exists, as the undersigned law

7

firm was recently retained and had to get up to speed in a longstanding, complex legal dispute between these two parties. Given the short length of the requested extension and the lack of any prejudice to Loops, Shaw and Maxill Canada's request should be granted. *See Azura, LLC v. True POS Sols., Inc.*, Case No. 1:23-cv-217, 2023 U.S. Dist. LEXIS 246969, at *12 (W.D. Mich. July 28, 2023) (allowing extension where "the length of the delay at issue is quite short" and defendant "will not be unduly prejudiced").

| | |
|---|---|
| Dated: January 13, 2026 | Respectfully submitted by:<br><br>*/s/ Andrew Alexander*<br>Mark W. McDougall (#0080698)<br>mmcdougall@calfee.com<br>Andrew W. Alexander (#0091167)<br>aalexander@calfee.com<br>CALFEE HALTER & GRISWOLD LLP<br>The Calfee Building<br>1405 East Sixth Street<br>Cleveland, OH 44114<br>Telephone: (216) 622-8200<br>Facsimile: (216) 241-0816<br><br>*Attorneys for Defendants Maxill Inc., a Canadian Corporation, Maxill Inc., an Ohio corporation, Maxill Realty, Inc., an Ohio corporation, and John Shaw* |

# **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 13th day of January 2026.

        */s/ Andrew Alexander*
*One of the Attorneys for Defendants Maxill Inc., a Canadian Corporation, Maxill Inc., an Ohio corporation, Maxill Realty, Inc., an Ohio corporation, and John Shaw*