# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| LOOPS, L.L.C., | Case No. 4:25-cv-02346-BYP |
| Plaintiff, | JUDGE BENITA Y. PEARSON |
| v. | |
| MAXILL INC., *et al.*, | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, TRANSFER, OR STAY COMPLAINT** |
| Defendants. | |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.   FACTS RELEVANT TO ISSUES TO BE DECIDED .......................................... 2

III.   LAW AND ARGUMENT ...................................................................................... 7

  A.   This case should be transferred to the Western District of Washington
  under *forum non conveniens*. ................................................................................... 7

  B.   Alternatively, this case should be stayed pending the completion of the *ex
  parte* reexamination of the '940 Patent. ................................................................ 10

  C.   Loops's patent infringement claims against Shaw should be dismissed for
  failure to state a claim. ........................................................................................... 12

  D.   Loops's fraudulent transfer claim against Shaw should be dismissed. ............ 15

    1.   Loops's claim is beyond the statute of limitations. ..................................... 15

    2.   Shaw is not a debtor to Loops. ....................................................................... 17

IV.   CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*01 Communique Lab., Inc. v. Citrix Sys., Inc.*, No. 06-cv-0253, 2008 U.S. Dist. LEXIS 19241 (N.D. Ohio Mar. 12, 2008) ............................................................... 11

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013) ................................................................................................................................. 13

*Adm'r, State Medicaid Estate Recovery Program v. Miracle*, 2015-Ohio-1516 (4th Dist.) ........................................................................................................................... 17

*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, No. 4:08CV589, 2010 U.S. Dist. LEXIS 92851 (N.D. Ohio Aug. 16, 2010) ..................................... 11

*American Dredging Co. v. Miller*, 510 U.S. 443 (1994) ............................................... 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................. passim

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................... 12, 15, 18

*Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos.*, 617 N.E.2d 1075 (Ohio 1993) ................................................................................................................................. 13

*Cincinnati Dev. III, LLC v. Cincinnati Terrace Plaza, LLC*, S.D. Ohio No. 1:18-cv-00586, 2021 U.S. Dist. LEXIS 106004 (June 7, 2021) ..................................... 18

*Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826 (N.D. Ohio 2021) ........................ 13

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ............................................................... 9

*Horizon Global Ams., Inc. v. N. Stamping, Inc.*, No. 1:20-CV-00310-PAB, 2025 U.S. Dist. LEXIS 202999 (N.D. Ohio Oct. 15, 2025) ............................................. 10

*Jones v. IPX Int'l Equatorial Guinea, S.A.*, 920 F.3d 1085 (6th Cir. 2019) ............................. 8, 9

*Lifesphere v. Sahnd*, 2008-Ohio-6507 (1st Dist.) ....................................................... 15

*Miller v. Glanz*, 948 F.2d 1562 (10th Cir. 1991) ......................................................... 13

*Moncier v. Jones*, 557 F. App'x 407 (6th Cir. 2014) ................................................... 12

*Poss v. Morris*, 2015-Ohio-5337 (11th Dist.) ............................................................. 17

*ResMed Corp. v. Cleveland Med. Devices, Inc.*, No. 1:23-CV-2221, 2025 U.S. Dist. LEXIS 41178 (N.D. Ohio Mar. 7, 2025) ................................................... 11

*Sinochem Int'l Co., Ltd. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007) ................................................................................................................ 7

*Stephens v. Premiere Credit of N. Am., LLC*, 3:16-CV-00007, 2018 U.S. Dist. LEXIS 9361 (W.D. Ky. Jan. 22, 2018) ...................................................... 15

*Trans Rail Am., Inc. v. Hubbard Twp.*, 478 F. App'x 986 (6th Cir. 2012) .................................. 12

*Treinish v. Spitaleri (In re Spitaleri)*, Bankr.N.D. Ohio Nos. Chapter 7 Proceedings, 05-94988, 2006 Bankr. LEXIS 4155 (May 9, 2006) ......................... 17

*Wordtech Sys. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308 (Fed. Cir. 2010) ................... 15

*Yeti Coolers, LLC v. RTIC Coolers, LLC*, 1:16-cv-264-RP, 2016 U.S. Dist. LEXIS 94452 (W.D. Tex. July 19, 2016) ................................................. 13

**Statutes**

28 U.S.C. § 1332 ........................................................................................................ 8

28 U.S.C. § 1404(a) ...................................................................................... 1, 7, 18

35 U.S.C. § 271(a) ..................................................................................... 13, 15

**Other Authorities**

Ohio Uniform Fraudulent Transfer Act .................................................................. 17

R.C. 1336.04(A)(1) ................................................................................................. 16

R.C. 1336.04(A)(2) ................................................................................................. 16

R.C. 1336.05(A) ...................................................................................................... 16

R.C. 1336.09 ........................................................................................................... 17

R.C. 1336.09(A) ...................................................................................................... 16

R.C. 1336.09(B) ...................................................................................................... 16

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 12, 13

## I.     INTRODUCTION

Despite the parties having a pending, stayed, patent infringement case in the Western District of Washington, home to Plaintiff Loops, L.L.C., that involves a very similar patent and the same alleged toothbrush product, Loops filed substantially identical allegations here in Ohio. Indeed, this is the second time Loops has attempted to shop a different forum than the Western District of Washington, which previously issued a non-infringement ruling in Maxill's favor (although that ruling was reversed and remanded). Loops first tried bringing these same patent claims in the Southern District of California. But after Maxill moved to dismiss or transfer to the Western District of Washington, Loops voluntarily dismissed that case and filed its Complaint here. Loops included in its Complaint, claims against Maxill Inc., a Canadian Corporation ("***Maxill Canada***"), and John Dennie Shaw (collectively, "***Defendants***"[1]) for patent infringement and fraudulent transfer. *See* ECF Doc.1.

The Defendants request this Court use its discretion and transfer the proceedings to the Western District of Washington under the doctrine of *forum non conveniens* and its authority under 28 U.S.C. § 1404(a), in the interest of justice and efficiency. The Western District of Washington is a more convenient forum and is very familiar with Loops's patent family and accused Maxill toothbrush product. It would serve judicial economy and ease the burdens on the parties to resolve this similar proceeding in a forum that is familiar with the parties, patent family, and claim construction, and is the locality in which the plaintiff witnesses likely reside.

Alternatively, the Defendants respectfully request that the Court enter an order staying this proceeding in the interest of judicial economy until the USPTO resolves an ongoing *ex parte*

---

[1] Loops also asserted claims against Maxill, Inc. ("Maxill Ohio"), Maxill Realty, Inc., and BaderCap Pty Ltd. There is currently a bankruptcy stay in place with respect to Maxill Ohio and Maxill Realty, and those two parties have requested an extension to respond to the Complaint until 21 days after the stay is lifted. (ECF Doc.17.) The undersigned counsel does not represent BaderCap.

reexamination, in which the USPTO has already rejected numerous claims of one of the two patents asserted in this case.

In addition, the Defendants request that the Court dismiss the patent infringement claims against Shaw for failure to state a claim. As the President of Maxill Canada, Shaw is protected by the corporate veil, and Loops has failed to plausibly allege any facts, beyond formulaic recitation of the law, that could warrant piercing that veil or finding him personally liable for patent infringement.

The Defendants also request that the fraudulent transfer claim against Shaw be dismissed because the statute of limitations has run and because Shaw is not a debtor to Loops to the extent Loops's patent infringement claims are dismissed against Shaw. Loops's only basis to allege Shaw is a debtor (a necessary element to plead fraudulent transfer) is via Loops's patent infringement claim against him personally. If that is dismissed, so should the fraudulent transfer claim.

## II.    FACTS RELEVANT TO ISSUES TO BE DECIDED

Loops filed its Complaint on October 30, 2025, against Maxill Canada, Shaw, Maxill Ohio, Maxill Realty, and BaderCap. ECF Doc. 1. In its Complaint, Plaintiff brings two claims for patent infringement against Maxill Canada, Maxill Ohio, Maxill Realty, and Shaw—as well as BaderCap—and a claim for fraudulent transfer against Maxill Realty and Shaw—as well as BaderCap. *Id.* at pp. 10–12.

Maxill Canada has been in the business of selling, marketing, and shipping infection control and oral healthcare products primarily to dental professionals since 1987. *See* ECF Doc. 20, Exhibit D, p. 6 at ¶ 9. One such product is Maxill Canada's SUPERMAXX institutional line of toothbrushes, the accused product in the subject action. Compl. ¶ 3; ECF Doc. 20, Exhibit D, p. 6 at ¶ 9.

Maxill Canada is incorporated under the laws of Ontario, Canada, and its principal place of business is Ontario, Canada. ECF Doc. 20, Exhibit D, p. 6, ¶¶ 9 and 11. Maxill Canada's primary market is within Canada; however, Maxill Canada does export its product to the United States. *Id.* at p. 7–8, ¶¶ 21 and 23.

Defendant Shaw is the Founder and President of Maxill Canada, but is being sued as an individual in the subject action under the false premise that "each of the Maxill Entities operates as a mere shell, conduit, or alter ego of Shaw", "the corporate veil should be pierced to impose personal liability on Shaw for the wrongful acts of the Maxill Entities and to impose reciprocal liability on the Maxill Entities for Shaw's wrongful conduct", and "Shaw personally directed, authorized, and participated in the acts of infringement alleged herein." Compl. ¶¶ 12, 14; ECF Doc. 20, Exhibit D, p. 6 at ¶ 9. Plaintiff's Complaint acknowledges that "Shaw is a natural person who is a citizen and resident of the City of St. Thomas in the Province of Ontario, Canada." Compl. ¶ 11. Shaw, in his capacity as President, observes all necessary corporate formalities, including maintenance of proper corporate records, holding of regular meetings of directors and shareholders, and accurate separation of personal and corporate assets and accounts. ECF Doc. 20, Exhibit D, p. 8–9, ¶¶ 25–30.

Loops states in its Complaint that "Loops is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Whatcom County, Washington." Compl. ¶ 6. In Loops's home state of Washington, Maxill Canada, Loops, and other related entities are parties to consolidated federal district court litigation involving the parent patent to the asserted patents in this case. *Maxill Inc. et al. v. Loops, LLC et al.*, Case No. 2:17-cv-01825-TSZ, D. Wash., W.D ("the Consolidated Washington Litigation"), Doc. 1.

Maxill Ohio initiated that case on December 5, 2017, filing a declaratory judgment action against Loops and Loops Flexbrush, LLC, also having its principal place of business in the State of Washington, based on U.S. Patent No. 8,448,285 (the "'285 Patent"), which is the parent to the two asserted patents in this case. Cons. Wash. Lit., 2:17-cv-01825-TSZ, Doc. 1. Also in 2017, Loops and Loops Flexbrush filed a patent infringement case against Maxill asserting the '285 Patent ("the Utah Litigation"). Utah Lit., 1:17-cv-00123-DN, Doc. 7. On July 3, 2018, the parties stipulated to transfer the Utah Litigation to the Western District of Washington. Utah Lit., 1:17-cv-00123-DN, Doc. 71. On July 30, 2018, the Washington Court consolidated the transferred Utah Litigation with the litigation pending in that court. Cons. Wash. Lit., 2:17-cv-01825-TSZ, Doc. 17.

On February 8, 2018, Loops and Loops Flexbrush filed a counterclaim in the Consolidated Washington Litigation, asserting that Maxill Ohio infringed the '285 Patent, stating: "in connection with its parent Maxill, Inc., a Canada corporation ("Maxill Canada"), Maxill [Ohio] promotes, distributes, imports and/or sells, among other things, personal care products to correctional and mental health facilities." Cons. Wash. Lit., 2:17-cv-01825-TSZ, Doc. 10. On July 11, 2019, Loops and Loops Flexbrush jointly filed a motion for leave to amend that counterclaim to assert that Maxill Ohio also infringed the '940 Patent (one of the two patents asserted in this case), which had just issued on July 2, 2019. Cons. Wash. Lit., 2:17-cv-01825-TSZ, Doc. 72, on the basis that the patents are directed to the same subject matter and the same accused product:

> (1) On July 2, 2019, U.S. Patent No. 10,334,940 ("'940 patent") issued to Loops; the '940 patent is directly related to the '285 patent asserted in the original complaint; and Loops asserts that Maxill infringes claims of the '940 patent based on the same accused products as in the original complaint, (2) good cause exists to grant leave as the amendment is direct to the same subject matter, legal and factual issues and purpose as the original complaint.

Cons. Wash. Lit., 2:17-cv-01825-TSZ, Doc. 72 at 2:2–12. Loops and Loops Flexbrush reasoned that it made sense to litigate the '940 Patent claims in the Consolidated Washington Litigation based on the similarities between the two patents:

> As the [*sic*] both depend from the same application, the '940 patent is directly related to the '285 patent asserted in the original complaint. Loops asserts that Maxill infringes claims of the '940 patent based on the same accused products as the original complaint, i.e., certain SuperMaxx products. Loops' assertions of infringement of the '940 patent are thus directed to the same parties, products, subject matter, legal and factual issues and purposes as the original complaint.

Cons. Wash. Lit., 2:17-cv-01825-TSZ, Doc. 72 at 3:19–25.

On August 19, 2019, the Washington court denied Loops's and Loops Flexbrush's motion for leave to amend their counterclaim, stating: "If Loops wishes to pursue claims relating to United States Patent No. 10,334,940, it may commence a new action and pay the required filing fee." Cons. Wash. Lit., 2:17-cv-01825-TSZ, Doc. 80. The court's order was consistent with procedural posture at that time, as a claim construction order for the asserted '285 Patent issued on the same day that the motion to amend was filed. Cons. Wash. Lit., 2:17-cv-01825-TSZ, Doc. 71.

On November 27, 2019, the court ruled on the parties' dispositive motions, denying Loops's and Loops Flexbrush's joint motion for partial summary judgment of infringement, granting Maxill Canada's and Maxill Ohio's joint "cross-motion" for summary judgment of non-infringement, issuing a declaratory judgment of non-infringement in Maxill Ohio's favor, and dismissing as moot the Maxill motions for partial summary judgment on invalidity and unenforceability. Cons. Wash. Lit., 2:17-cv-01825-TSZ, Doc. 123. On December 31, 2020, the Federal Circuit reversed the Washington court's order of summary judgment of noninfringement due to the district court's claim construction. *Maxill, Inc. v. Loops, LLC*, 838 F. App'x 534 (Fed. Cir. 2020).

On March 10, 2021, the Consolidated Washington Litigation was stayed pending completion of another related litigation between the parties in Canada, as the Canadian Court had issued an interim and interlocutory injunction prohibiting Maxill Canada from challenging the validity of the '285 Patent either directly or indirectly while the Canadian Litigation was pending. Cons. Wash. Lit., 2:17-cv-01825-TSZ, Doc. 178.

After the Consolidated Washington Litigation was stayed, on July 16, 2025, Loops filed a complaint in the Southern District of California asserting two child patents of the '285 Patent, the '940 Patent and U.S. Patent No. 11,013,311 (the "***'311 Patent***"), against Maxill Canada and Shaw. *Loops, L.L.C. v. Maxill Inc.*, 3:25-cv-01814-JLS-DDL, Doc.1 ("the California Litigation"). After Maxill Canada and Shaw moved to dismiss or transfer that case to the Western District of Washington, Loops voluntarily dismissed the California Litigation. *Id.* at Doc. 15.

Shortly after dismissing the California Litigation, Loops filed this case. Compl. ¶ 1. The '311 Patent and the '940 Patent both claim priority from the application issuing as the '285 Patent, which is the subject of the Consolidated Washington Litigation. *Id.* at Exhs. A and B; Cons. Wash. Lit., 2:17-cv-01825-TSZ, Doc. 72-2. Each of these three patents is directed toward a toothbrush and has identical sole inventor and assignee, Loops, LLC. Demonstrating the significant overlap between these patents, Loops filed a terminal disclaimer during prosecution of the '940 Patent to obviate a *double patenting* rejection over the '285 Patent. Cal. Lit., 3:25-cv-01814-JLS-DDL, Doc. 9-3, p. 8.

The '940 Patent is currently the subject of a pending *ex parte* reexamination, in which the Examiner has rejected several of the claims and is currently on appeal to the USPTO's Patent Trial and Appeal Board. Ex. A; Cal. Lit., 3:25-cv-01814-JLS-DDL, Doc. 9-3 p. 10.

## III.    LAW AND ARGUMENT

### A.    This case should be transferred to the Western District of Washington under *forum non conveniens*.

This Court should transfer the action to the United States District Court for the Western District of Washington under the doctrine of *forum non conveniens* and under its authority from 28 U.S.C. § 1404(a). All Defendants have consented to personal jurisdiction and venue in the Western District of Washington—a court that, since 2018, has presided over a case involving a similar patent from the same patent family as those asserted in this case and involving the same accused product. The '285 Patent, at issue in Washington, is the parent of both the '311 Patent and the '940 Patent at issue in the present case. The Washington court is familiar with the patent family tree, specifications, technology, claim construction issues, and accused product. Further, Loops's headquarters is located in Washington, so litigating in Washington would be more convenient for the witnesses. It would thus be beneficial and more convenient to transfer the action to Washington.

Federal courts have discretion to transfer a case on the ground of *forum non conveniens* and have done so in cases involving foreign defendants and a history of related proceedings between the parties in a foreign tribunal. *Sinochem Int'l Co., Ltd. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 428–30 (2007) (citing *American Dredging Co. v. Miller*, 510 U.S. 443, 447–449 (1994)). When another federal court where the action could have been brought is the more convenient forum, transfer to that federal court is permitted if "in the interest of justice." *Id.* at 430; 28 U.S.C. § 1404(a).

Courts consider three factors when determining whether to transfer a case under the doctrine of *forum non conveniens*: "(1) whether an adequate alternative forum is available; (2) whether a balance of private and public interests suggests that trial in the chosen forum would be

unnecessarily burdensome for the defendant or the court; and (3) the amount of deference to give the plaintiff's choice of forum." *Jones v. IPX Int'l Equatorial Guinea, S.A.*, 920 F.3d 1085, 1090 (6th Cir. 2019). The third consideration can be separately addressed. *Id.*

The Western District of Washington is an adequate and available alternative forum. A forum is available if the defendant is amendable to process there and the forum is adequate if it can remedy the alleged harm. *Id.* at 1090–91. Maxill Canada and Maxill Ohio are already parties to the Washington Litigation and consent to personal jurisdiction in that court, as do Shaw and Maxill Realty. Further, Loops's headquarters is in Washington, presumably along with its relevant witnesses. It is a more convenient forum for both parties. The previous and pending litigation in Washington provides that the forum is available.

The forum is also adequate. Loops has acknowledged that its infringement claims of the '940 Patent are "directed to the same . . . subject matter, legal and factual issues and purpose as the original complaint" in the Consolidated Washington Litigation. Cons. Wash. Lit., 2:17-cv-01825-TSZ, Doc. 72 at 3:19–25. It is undisputed that the United States District Court for the Western District of Washington has the authority to provide Loops with satisfactory remedy with respect to its patent claims. And the Western District of Washington would have subject matter jurisdiction over the fraudulent transfer claim under diversity jurisdiction, as all plaintiffs and defendants are citizens of different States and the amount in controversy exceeds $75,000. ECF Doc. 1, ¶ 16; 28 U.S.C. § 1332. The Western District of Washington is thus an adequate alternative forum that is available.

The balance of private and public interests also weighs in favor of transferring the case to Washington. A non-exhaustive list of private interests that are taken into consideration include: "'the relative ease of access to sources of proof; availability of compulsory process for attendance

of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Jones*, 920 F.3d at 1092–93 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Neither Maxill Canada, Shaw, nor Loops are residents of Ohio, so trying the case in Ohio would not be easier on any of these parties. Further, the parties already have a pending litigation in Washington, and Loops is headquartered in Washington, making it clear that trying this case in Washington would be less burdensome than in Ohio.

There is also a risk of inconsistent results and duplication of work and a waste of judicial resources if the case is tried in this Court. The Washington court has already expended significant time and effort adjudicating many issues for Loops's similar claims related to the parent '285 Patent. For example, the Washington court has already reviewed extensive briefing and made rulings on how to construe claims from the '285 Patent that are similar to the claims asserted in this case involving very similar subject matter. Cons. Wash. Lit., 2:17-cv-01825-TSZ, Doc.71.

Finally, the amount of deference given to the plaintiff on its choice of forum may be considered if the plaintiff asks, and the choice of forum should be disturbed if the private and public interests strongly favor dismissal *Id.* at 1094 (citing *Gulf Oil*, 330 U.S. at 508). The private and public interests strongly favor transferring the litigation to Washington to allow a court that has already expended significant time and effort in presiding over a very similar case.

In this action, the Court should exercise its ability to transfer to the case under the doctrine of *forum non conveniens* because an adequate alternative forum exists and the balance of private and public interest factors favors transfer.

**B.     Alternatively, this case should be stayed pending the completion of the *ex parte* reexamination of the '940 Patent.**

If this Court does not dismiss or transfer the subject action, Defendants respectfully request that this Court stay this case until the *ex parte* reexamination with the USPTO concerning the '940 Patent is finished. The Examiner has rejected half of the claims of the '940 Patent, which, if upheld on appeal, would simplify matters in this case. Ex. A, Ex Parte Reexamination Advisory Action.

Courts have the "inherent authority to stay [] proceedings" as an incident to their power to control their own dockets. *See, e.g.*, *Horizon Global Ams., Inc. v. N. Stamping, Inc.*, No. 1:20-CV-00310-PAB, 2025 U.S. Dist. LEXIS 202999, at *5 (N.D. Ohio Oct. 15, 2025) (internal citations omitted), *see also Cybergenetics Corp. v. Inst. of Envtl. Sci. & Research*, No. 5:19-CV-1197, 2020 U.S. Dist. LEXIS 20305, at *5-6 (N.D. Ohio Jan. 27, 2020) (citations omitted). "In deciding whether to grant a stay, courts commonly consider factors, such as: (1) the need for a stay; (2) the stage of the litigation; (3) whether the non-moving party will be unduly prejudiced or tactically disadvantaged; (4) whether a stay will simplify the issues; and (5) whether the burden of litigation will be reduced for both the parties and the court." *Cybergenetics* at *5–6 (citations omitted), *see also Horizon* at *5. Here, the interests of judicial economy and efficiency resulting from a stay outweigh any potential prejudice to the parties.

The pending USPTO reexamination of the '940 Patent warrants a stay of this action in its entirety. In the reexamination, the Examiner rejected claims 4–6, and that decision is on appeal to the USPTO's Patent Trail and Appeal Board. *Ex Parte* Reexamination 90/015,210 (currently on appeal at the USPTO PTAB); *see* Ex. A, Ex Parte Reexamination Advisory Action. The PTAB hearing is scheduled for later this month. Ex. B, Notice of Hearing. This District has recognized the intent of Congress in providing an efficient and cost-effective procedure for reviewing validity of patents employing the USPTO's expertise through the reexamination process. *ResMed Corp. v.*

*Cleveland Med. Devices, Inc.*, No. 1:23-CV-2221, 2025 U.S. Dist. LEXIS 41178, at *6 (N.D. Ohio Mar. 7, 2025). "'When determining whether to grant a motion to stay pending patent reexamination courts commonly consider three factors' . . . (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issue in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Id.* at *4 (citations omitted).

This District has recognized that the first factor considers if the case is still in its early stages and that courts have routinely stayed cases where the court has not held a *Markman* hearing yet. *Id.* at *4–5. The present case is still in its early stages, the Plaintiff filed the Complaint on October 30, 2025. Thus, given its initial stage, with an answer to the complaint having not even been filed, the first factor weighs heavily in favor of stay of the subject action pending conclusion of reexamination.

With respect to the second factor, this Court has recognized "'[w]hen a claim is cancelled as a result of reexamination, there is no need to try the issue, thus simplifying litigation.'" *Id.* at *6 (citing *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, No. 4:08CV589, 2010 U.S. Dist. LEXIS 92851, at *9 (N.D. Ohio Aug. 16, 2010) (quoting *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, No. 06-cv-0253, 2008 U.S. Dist. LEXIS 19241, at *2 (N.D. Ohio Mar. 12, 2008))). Accordingly, if the Examiner's rejections are upheld, this case stands to be simplified.

With respect to the third factor, there is no evidence that a stay pending reexamination would unduly prejudice or present a clear tactical disadvantage to the Plaintiff. The stay would allow the USPTO to complete its review and appeal determination of the validity of the claims asserted in the '940 Patent. When determining this prejudice factor, courts consider the timing of the reexamination request, the timing of the request for stay, the status of the reexamination

proceedings, and the relationship of the parties. *Id.* at *7. (citations omitted). Given that a hearing has already been scheduled for this month in the reexam appeal, any prejudice from a stay would be minimal. This Court should find there is no tactical disadvantage nor prejudice to the Plaintiff.

All factors considered, and in the interest of judicial economy, this Court should stay the subject action because one of the two patents asserted in the subject action is currently undergoing extensive *ex parte* reexamination with the USPTO.

### C. Loops's patent infringement claims against Shaw should be dismissed for failure to state a claim.

Loops's patent infringement claims against Shaw in his personal capacity amount to formulaic recitations of the elements—not plausible facts—and should thus be dismissed. A court may dismiss all or part of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion under this rule, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When determining whether a complaint meets this test, the court "constru[es] the record in the light most favorable to the non-moving party and accept[s] all well-pleaded  factual allegations as true." *Moncier v. Jones*, 557 F. App'x 407, 408 (6th Cir. 2014) (citations omitted). However, the court will not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. "Legal conclusions or unwarranted factual inferences need not be accepted as true." *Trans Rail Am., Inc. v. Hubbard Twp.*, 478 F. App'x 986, 988 (6th Cir. 2012). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties *might* present at trial, but rather to assess whether the plaintiff's complaint

alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). Loops's claims fail to meet this standard.

For an owner to be "personally liable for [direct patent] infringement under [35 U.S.C.] section 271(a), there must be evidence to justify piercing the corporate veil."[2] *Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826, 846 (N.D. Ohio 2021) (internal citations omitted); *see also Yeti Coolers, LLC v. RTIC Coolers, LLC*, 1:16-cv-264-RP, 2016 U.S. Dist. LEXIS 94452, at *8 (W.D. Tex. July 19, 2016) (dismissing direct patent infringement claims against corporate officer under Rule 12(b)(6)). To determine whether the corporate veil can be pierced, the courts look to the three *Belvedere* elements: "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud, an illegal act, or a similarly unlawful act, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Gold Crest*, 525 F. Supp. 3d at 847 (citing *Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos.*, 617 N.E.2d 1075, 1086 (Ohio 1993)). While the court in *Gold Crest*, ultimately denied the defendants' motion to dismiss the plaintiff's personal liability claim against the managing member, for direct patent infringement of the patents on behalf of the corporate defendants, the court noted *the complaint was supported by documentation and facts sufficient to support the claim. Gold Crest*, at 848–9. This is not the case with Loops's Complaint. It only includes conclusory, naked assertions devoid of further factual enhancement— this is insufficient. *See 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

---

[2] Loops only alleges direct patent infringement under 271(a). Compl., at ¶¶ 34, 44.

Loops merely states in its Complaint "upon information and belief" "Shaw owns and controls Maxill Entities" and Maxill Entities is "at the direction and under control of … Shaw" and that Shaw "dominates and controls their operations and finances." Compl. ¶¶ 3–4, 12. The Complaint further states that Shaw "personally directed, authorized, and participated in the acts of infringement." Compl. ¶ 14. But there are no documents or *factual* allegations alluded to in the Complaint that support these allegations. Repeatedly stating "upon information and belief" without providing what information these allegations are based on or where this information and belief is stemming from is not enough to plead a plausible complaint.

Shaw, on the other hand, stated in his affidavit, which Loops has requested the Court take judicial notice of, that "Maxill Canada maintains its own bank accounts, finances, and records, separate and apart from those of any shareholder, officer, or director, including [himself]." ECF Doc. 20, Exhibit D, pp. 6, 8–9 at ¶¶ 9–10, 28. "Corporate and personal funds have not been commingled, and at no time have personal funds been used to pay corporate debts of Maxill Canada, nor have corporate funds been diverted for personal use." ECF Doc. 20, Exhibit D, p. 9 at ¶ 29. Further, Shaw stated "[a]ll transactions between me and Maxill Canada, if any, have been conducted at arm's length." ECF Doc. 20, Exhibit D, p. 9 at ¶ 30.

In its Complaint, Loops merely recited conclusions and formulaic recitation of claim elements. Loops provided no facts or plausible inferences to support how "Maxill Entities operate[] as a mere shell, conduit, or alter ego of Shaw." "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . [n]or does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, at 678 (internal citations omitted). And a complaint is implausible if the only factual allegations supporting it are asserted "upon information and belief." *Stephens v. Premiere Credit of N. Am.,*

*LLC*, 3:16-CV-00007, 2018 U.S. Dist. LEXIS 9361, at *5 (W.D. Ky. Jan. 22, 2018). Loops's mere conclusory allegations do not meet the pleading standard under *Iqbal/Twombly* and Loops does not provide any plausible inference based on factual allegations. Shaw is protected by the corporate veil and Loops has failed to plausibly allege any supported facts that could warrant piercing that veil.

In sum, the "'corporate veil' shields a company's officers from personal liability for direct infringement that the officers commit in the name of the corporation, unless the corporation is the officers' 'alter ego.' … To determine whether the corporate officers are personally liable for the direct infringement of the corporation under § 271(a) requires invocation of those general principles relating to piercing the corporate veil." *Wordtech Sys. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010) (internal quotations omitted). But Loops fails to make any such allegations that go beyond a mere recitation of the claims and factors for piercing the corporation veil. Loops's patent infringement claim against Shaw must be dismissed.

### D. Loops's fraudulent transfer claim against Shaw should be dismissed.

#### 1. *Loops's claim is beyond the statute of limitations.*[3]

This court should dismiss Loops's fraudulent transfer claim against Shaw because the statute of limitations has passed. Loops's claim for fraudulent transfer is brought under Chapter 1336 of the Ohio Revised Code against Maxill Realty and Shaw. *See* Compl. ¶¶ 52–66. Loops did not file the action within the required four years of the alleged transfer or within one year of discovering the transfer. Loops's fraudulent transfer claim is subject to the statute of limitations in R.C. § 1336.09. *See e.g., Lifesphere v. Sahnd*, 2008-Ohio-6507, ¶ 18 (1st Dist.) ("[A]n action

---

[3] Although Maxill Realty is not responding at this time, Loops's claim against Maxill Realty fails for the same reason.

seeking to set aside a property transfer under the fraudulent-conveyance statutes is subject to the one- and four-year time limitations found in R.C. 1336.09.").

Loops alleges that a mortgage was executed and recorded with actual intent to hinder, delay, or defraud Loops as a creditor in violation of R.C. 1336.04(A)(1) and/or the mortgage was constructively fraudulent under R.C. 1336.04(A)(2) and R.C. 1336.05(A). Compl. ¶¶ 61–62. In support of its claim, Loops alleges that "on or about **October 18, 2017**, while Loops was actively pursuing or preparing infringement and other legal actions against Defendants, Maxill Realty executed an open-ended mortgage and security agreement in favor of BaderCap, purporting to secure up to $14 million in obligations against real property . . . having a fair market value of approximately $2 million." Compl. at ¶ 55 (emphasis added). Accordingly, Loops's claim is too late.

Pursuant to R.C. 1336.09(A), a claim for relief with respect to a transfer or an obligation that is fraudulent under R.C. 1336.04(A)(1) is extinguished unless an action is brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or reasonably could have been discovered by the claimant[.]" O.R.C. § 1336.09(A). Pursuant to R.C. 1336.09(B), a claim for relief with respect to a transfer or an obligation that is fraudulent under R.C. 1336.04(A)(2) or R.C. 1336.05(A) is extinguished unless an action is brought "within four years after the transfer was made or the obligation was incurred." O.R.C. § 1336.09(B). Loops filed its Complaint on October 30, 2025, which is well over four years after the alleged transfer date. Compl. ¶ 55. Based on the foregoing, Loops filed its constructive fraudulent transfer claims outside of the four-year statute of limitations.

Further, Loops's Complaint lacks any factual allegations supporting when it discovered the transfer or when the obligation was discovered. *See Adm'r, State Medicaid Estate Recovery*

*Program v. Miracle*, 2015-Ohio-1516, ¶ 26 (4th Dist.) (upholding dismissal where "the 2005 transfer occurred more than four years before this action was filed"). Notably, Loops alleges that the obligation was incurred "on or about October 18, 2017" and that the "mortgage was executed and recorded." Compl. ¶¶ 61, 64, 66. "A properly recorded deed gives constructive notice to all who claim an interest through or under the grantor by whom such deed was executed." *Treinish v. Spitaleri (In re Spitaleri)*, Bankr.N.D. Ohio Nos. Chapter 7 Proceedings, 05-94988, 2006 Bankr. LEXIS 4155, at *7 (May 9, 2006) (finding that a transfer "reasonably could have been discovered" when a deed was recorded in 1999 and, therefore, "the trustee's action is barred under O.R.C. § 1336.09, and the defendants' motion to dismiss is granted."). Accordingly, without any factual allegations demonstrating that Loops learned of this transaction within one year of filing, and Loops's own allegation that the mortgage was recorded in 2017, giving Loops constructive notice, Loops has failed to bring its claim within the requisite statute of limitations.

2.    *Shaw is not a debtor to Loops.*

Loops's fraudulent transfer claim should also be dismissed because Loops is not a creditor to Shaw. Loops's only claim to be a creditor to Shaw is through its pending patent infringement claim, but because there is not a viable patent infringement claim by Loops against Shaw (*i.e.*, it should be dismissed for the reasons stated *supra*), Loops is not a creditor and it cannot claim fraudulent transfer against Shaw.

Without its claim for patent infringement against Shaw, Loops has no standing to bring a fraudulent transfer claim against Shaw. *Poss v. Morris*, 2015-Ohio-5337, ¶ 26 (11th Dist.) ("R.C. Chapter 1336 is only intended to apply when a transfer of property will prevent a creditor from obtaining satisfaction of an underlying debt. Hence, to state a viable claim under the Ohio Uniform Fraudulent Transfer Act, a plaintiff must have standing as a creditor."); *Cincinnati Dev. III, LLC v. Cincinnati Terrace Plaza, LLC*, S.D. Ohio No. 1:18-cv-00586, 2021 U.S. Dist. LEXIS 106004,

at *51 (June 7, 2021) ("A plaintiff must have standing as a creditor and establish the following elements to state a viable claim under this Act[.]").

Loops alleges a formulaic and conclusory patent infringement allegations against Shaw which is insufficient under the *Iqbal/Twombly* standard and it should be dismissed. If this Court dismisses Loops's patent infringement claim against Shaw, Loops does not have standing to bring a fraudulent transfer claim against Shaw. Accordingly, it should be dismissed if Loops's patent infringement case against Shaw is dismissed.

## IV.    CONCLUSION

The Defendants request this Court transfer the proceedings to the Western District of Washington under the doctrine of *forum non conveniens* and its authority under 28 U.S.C. § 1404(a), in the interest of justice and efficiency. A more convenient forum, in which litigation including all necessary parties and involving the same accused product and related U.S. patent to those of the subject action is already pending, exists in this case.

Alternatively, the Defendants respectfully request that the Court enter an order staying this proceeding in the interest of judicial economy and to avoid duplicative litigation and await guidance from an undergoing extensive *ex parte* reexamination of the '940 Patent with the USPTO regarding one of the two patents asserted in this proceeding.

The Defendants request the court dismiss the patent infringement claims against Shaw for failure to state a claim. Shaw is protected by the corporate veil and Loops has failed to plausibly allege any supported facts that could warrant piercing that veil.

The Defendants further request the fraudulent transfer claim against Shaw be dismissed based on the statute of limitations, and because Shaw is not a debtor to Loops. If the patent

infringement claims are dismissed against Shaw, the Court should dismiss the fraudulent transfer action against Shaw because Loops is not a creditor to Shaw.

Dated: January 15, 2025

Respectfully submitted,

*/s/ Andrew W. Alexander*
Mark W. McDougall (#0080698)
mmcdougall@calfee.com
Andrew W. Alexander (#0091167)
aalexander@calfee.com
CALFEE HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
Telephone: (216) 622-8200
Facsimile: (216) 241-0816

*One of the attorneys for Defendants Maxill Inc., a Canadian Corporation, and John Shaw, an individual*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been filed electronically on January 15, 2026 with the United States District Court for the Northern District of Ohio. Notice of the filing will be sent by email to all counsel by operation of the Court's electronic filing system and all parties may access this filing through that system.

/s/ *Andrew W. Alexander*
*One of the attorneys for Defendants*
*Maxill Inc., a Canadian Corporation,*
*and John Shaw, an individual*