# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LOOPS, L.L.C., | ) | |
| | ) | CASE NO. 4:25-cv-02346-BYP |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| vs. | ) | |
| | ) | |
| MAXILL INC. *et al.*, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Loops, L.L.C. ("Loops") files this First Amended Complaint against Defendants Maxill Inc. ("Maxill Canada"), Maxill, Inc. ("Maxill Ohio"), Maxill Realty, Inc. ("Maxill Realty"), and BaderCap Pty Ltd. ("BaderCap" and collectively with Maxill Canada, Maxill Ohio, and Maxill Realty, the "Maxill Entities"), and John Dennie Shaw ("Shaw," and collectively with the Maxill Entities, "Defendants").

## NATURE OF THE ACTION

1.     This is a civil action for willful infringement of United States Patent Nos. 11,013,311 (the "311 Patent") and 10,334,940 (the "'940 Patent") (collectively, the "Asserted Patents") under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*. True and correct copies of the Asserted Patents owned by Loops are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

2.     Loops invested years of research and development and substantial sums  into creating a patented, safety-first toothbrush known as the Loops Flexbrush®—a flexible toothbrush specifically engineered for use in correctional and mental health facilities, spaces where security and safety are paramount.

3.     Defendant Shaw, fully aware of Loops' patented technologies and the long-standing commercial success of the Loops Flexbrush® in the correctional and institutional care markets, caused the Maxill Entities, which Shaw owns and controls, to design, produce, promote, market, warehouse, distribute, and sell a knockoff product, the "Supermaxx" toothbrush (the "Accused Product").

4.     Rather than invest in developing their own product, the Maxill Entities, at the direction and under the control of their founder, owner, and controlling force Shaw, chose to copy and exploit the key safety features disclosed in the Asserted Patents, and, after initially selling the infringing Accused Product in Canada, began manufacturing, exporting, importing, marketing, promoting, warehousing, distributing, and selling the infringing Accused Product throughout the United States in direct competition with the Loops Flexbrush®.

5.     Loops, who has meaningfully contributed to solving a difficult safety problem, now brings this action to protect its intellectual property, enjoin further acts of infringement, hold Defendants accountable for their unlawful conduct, and recover the damages caused by Defendants' disregard for the patent laws of the United States.

## **PARTIES**

6.     Loops is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Whatcom County, Washington. Loops is registered to conduct business in multiple states throughout the United States and does regularly conduct business throughout the United States. Loops manufactures, markets, and sells oral care products, including products covered by the Asserted Patents such as the Loops Flexbrush®, to institutional and commercial customers throughout the United States. Loops regularly conducts interstate business, including the sale, marketing, and distribution of its oral care products to

37486858.2

correctional, detention, and mental health facilities nationwide. Upon information and belief, Loops has lost sales and contract bids across the United States to competitors distributing Defendants' Accused Product, and those sales have caused Loops substantial injury and damages within the United States.

7.      Upon information and belief, Maxill Canada is a corporation organized and existing under the laws of the Province of Ontario, Canada, with its principal place of business at 80 Elm Street, St. Thomas, Ontario, Canada, N5R 6C8. Upon information and belief, Maxill Canada manufactures and distributes oral care products, including the Accused Product, and exports those products to its U.S. affiliates, the Maxill Entities, for warehousing, promotion, marketing, sale, and distribution throughout the U.S., including within the State of Ohio and this judicial district.

8.      Upon information and belief, Maxill Ohio is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Cortland, Ohio. Upon information and belief, Maxill Ohio imports the Accused Product from Maxill Canada and warehouses, promotes, markets, distributes and sells it throughout the U.S., including within the State of Ohio and this judicial district. Upon information and belief, Maxill Ohio is an affiliate and instrumentality of the other Defendants and operates as part of their unified enterprise.

9.      Upon information and belief, Maxill Realty is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Cortland, Ohio. Upon information and belief, Maxill Realty owns, purchases, leases, and manages property used by the Defendants in connection with the warehousing, promotion, marketing, sale, and distribution of the Accused Product throughout the U.S., including within the State of Ohio and this judicial district. Upon information and belief, Maxill Realty participates in the importation, warehousing, promotion, marketing, sale, and distribution of the Accused Product throughout the U.S., including

within the State of Ohio and this judicial district. Upon information and belief, Maxill Realty is an affiliate and instrumentality of the other Defendants and operates as part of their unified enterprise.

10.     Upon information and belief, BaderCap is a business entity organized under the laws of an unknown foreign jurisdiction with its principal place of business in the City of St. Thomas in the Province of Ontario, Canada. Upon information and belief, BaderCap participates in the importation, warehousing, promotion, marketing, sale, and distribution of the Accused Product throughout the U.S., including within the State of Ohio and this judicial district. Upon information and belief, BaderCap is an affiliate and instrumentality of the other Defendants and operates as part of their unified enterprise. Upon information and belief, BaderCap entered into the open-ended mortgage and security agreement with Maxill Realty that is alleged in the Third Claim for Relief set forth below. Through that transaction, BaderCap purposefully directed conduct toward Ohio and availed itself of the privilege of conducting business in this judicial district.

11.     Upon information and belief, Shaw is a natural person who is a citizen and resident of the City of St. Thomas in the Province of Ontario, Canada.

12.     Upon information and belief, Shaw is the founder, president, and controlling shareholder of each of the Maxill Entities, and he dominates and controls their operations and finances. Upon information and belief, Shaw formed and has used the Maxill Entities as instruments to carry out and conceal infringing and other unlawful conduct, including the acts alleged herein. Upon information and belief, each of the Maxill Entities operates as a mere shell, conduit, or alter ego of Shaw and of one another, lacking genuine corporate independence. Upon information and belief, the Maxill Entities share common ownership, officers, and business functions, commingle assets and funds, and fail to maintain arms-length relationships with one

4

another or with Shaw. Upon information and belief, there exists a unity of interest and ownership among Shaw and the Maxill Entities such that any separateness between them has ceased to exist, and adherence to the fiction of separate corporate existence would promote injustice and permit abuse of the corporate privilege. Accordingly, the corporate veil should be pierced to impose personal liability on Shaw for the wrongful acts of the Maxill Entities and to impose reciprocal liability on the Maxill Entities for Shaw's wrongful conduct.

13.    Upon information and belief, Shaw and each of the Maxill Entities are the agents, representatives, and/or principals of each other, such that Shaw and each of the Maxill Entities are acting on behalf of, under the authority of, with full knowledge and consent of, and/or as the agent of the others, and Shaw and each of the Maxill Entities are engaged in activities that, but for the other, they would have to undertake themselves.

14.    Upon information and belief, Shaw personally directed, authorized, and participated in the acts of infringement alleged herein. Shaw was the moving force behind, and directly responsible for the design, development, production, manufacture, importation, promotion, marketing, warehousing, distribution, and sale of the Accused Product. Shaw knowingly, willfully, deliberately and intentionally induced, aided, abetted, and participated in the infringing activities of the Maxill Entities and others acting under his control, and he did so with full knowledge of Loops' patent rights and in willful disregard thereof.

## **<u>JURISDICTION</u>**

15.    This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*, and for fraudulent transfer and related equitable relief arising under the laws of the state of Ohio. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) over the federal patent claims and supplemental jurisdiction under 28 U.S.C.

37486858.2

§ 1367(a) over the state law claims, which form part of the same case or controversy.

16.     Alternatively, the Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17.     The Court has general personal jurisdiction over Maxill Ohio and Maxill Realty as each of these defendants is incorporated or registered to do business in the state of Ohio and maintains its principal place of business, offices, property, and operations within this judicial district. Each is therefore "at home" in Ohio within the meaning of *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and subject to general jurisdiction of this Court for all purposes.

18.     The Court has specific personal jurisdiction over all Defendants, and each of them, as, upon information and belief, all Defendants, and each of them, have purposefully directed business activities and infringing conduct toward the state of Ohio and this judicial district. The Accused Product is exported and imported into the U.S. through the Maxill Entities, is warehoused, promoted, marketed, distributed from this judicial district by the Maxill Entities and sold by the Maxill Entities to institutional and correctional customers located throughout the U.S., including within the state of Ohio and this judicial district. The claims in this action arise directly out of and relate to those Ohio-based activities of the Defendants. Exercising jurisdiction over all Defendants, and each of them, is consistent with due process because each has purposefully availed itself of the privilege of conducting business in Ohio, and the exercise of jurisdiction here comports with traditional notions of fair play and substantial justice.

19.     Additionally, the Court has specific personal jurisdiction over all Defendants, and each of them, because, upon information and belief, each of the Defendants also places or causes to have placed infringing products and services into the stream of commerce, independently and/or

as alter egos or agents of each other, including by way of the Defendants' websites, https://www.maxill.com/us and https://www.maxill.com/us/our-products/toothbrushes/specialty-items/supermaxx-prison-institutional-toothbrush.html, which have product information sheets prepared specifically for U.S. sales at https://www.maxill.com/us/mwdownloads/download/link/id/702/, and are available and marketed for sale within the U.S., Ohio, and this judicial district on, *inter alia*, Amazon (https://www.amazon.com/MAXILL-Supermaxx-Prison-Correctional-Toothbrushes/dp/B09GZJSDB7) and eBay (https://www.ebay.com/itm/225973388731) marketplaces, with the knowledge that such products and services will be made, imported, sold, offered for sale, and used in the state of Ohio and this judicial district. Upon information and belief, a substantial part of the events giving rise to Loops' claims, including acts of patent infringement, occurred in the state of Ohio and this judicial district, thereby causing Loops damage within the state and this district.

20.     The Court also has specific personal jurisdiction over BaderCap because, upon information and belief, BaderCap purposefully directed conduct toward the State of Ohio and this judicial district by entering into an open-ended mortgage and security agreement with Maxill Realty, purporting to encumber real property located at 181 North Mecca Street, Cortland, Ohio. The fraudulent nature of that transaction, as alleged in the Third Claim for Relief, forms a core component of the claims asserted in this action and establishes that BaderCap's conduct was purposefully aimed at this forum. This cause of action arises directly out of and relates to that conduct.

21.     Alternatively, upon information and belief, this Court has personal jurisdiction over Maxill Canada, BaderCap, and Shaw pursuant to Federal Rule of Civil Procedure 4(k)(2). Each is

37486858.2

a foreign entity or individual—Maxill Canada and BaderCap are foreign business entities, and Shaw is a foreign individual—not subject to the general jurisdiction of any state court in the United States. Exercising jurisdiction over them is consistent with the U.S. Constitution because, among other reasons, they have purposefully directed conduct toward the United States as a whole. Such conduct includes, but is not limited to, the marketing, exportation, importation, marketing, promotion, warehousing, sale, and distribution of the Accused Product throughout the United States by Maxill Canada, BaderCap and Shaw, and also BaderCap's execution of a fraudulent open-ended mortgage and security agreement with Maxill Realty purporting to encumber real property located at 181 North Mecca Street, Cortland, Ohio.

22.     Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Maxill Ohio and Maxill Realty have each, upon information and belief, committed acts of infringement within this district and each maintains a regular and established place of business here. Upon information and belief, each of these defendants conducts operations, maintains offices and facilities, and employs personnel in this district, including within Trumbull County, from which they import, warehouse, promote, market, distribute, and sell the Accused Product.

23.     Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(c)(3) as to Maxill Canada, BaderCap and Shaw, a Canadian corporation, an unknown foreign entity, and Canadian citizen, respectively, that are not resident in the United States.

24.     Venue is also proper in this judicial district for the state law fraudulent transfer and related equitable claims pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and transfers giving rise to those claims occurred in, and a substantial part of the property that is the subject of this action is situated in, this district, including the alleged transfer, concealment, or diversion of assets among the Maxill Entities.

## FACTUAL ALLEGATIONS

25.     Loops invents, manufactures, markets, and sells personal care products designed for distribution and use in correctional and mental health facilities.

26.     One of Loops' flagship products is the Loops Flexbrush®, a compact toothbrush with a flexible handle that cannot be fashioned into a weapon, making it ideal for use in these facilities.

27.     Loops owns certain related intellectual property including the '311 Patent entitled "Composite Toothbrush Having Safety Features and Methods of Making Same." *See* **Exhibit A**.

28.     Loops owns certain related intellectual property including the '940 Patent entitled "Composite Head Toothbrush Having Safety Features." *See* **Exhibit B**.

29.     Upon information and belief, Defendants manufacture, promote, warehouse, distribute, market, offer for sale, and sell among other things, personal care products to correctional and mental health facilities.

30.     Upon information and belief, in or around 2016 or 2017, Defendants began promoting, offering to sell, and selling the Accused Product, a competing flexible toothbrush under the designation, Supermaxx toothbrush, in Canada.

31.     Upon information and belief, after first selling the Accused Product in Canada, Defendants began exporting and importing the Accused Product into the United States, Ohio, and this judicial district and promoting, marketing, warehousing, distributing, offering to sell, and selling same in these locations, and continue to do so.

## PIERCING THE CORPORATE VEIL

32.     Loops incorporates by reference all other allegations in this first amended complaint as if fully rewritten herein, which further detail various facts that support piercing the

9

corporate veil to hold Shaw personally liable in this action.

33. Loops seeks to pierce the corporate veil to hold Shaw personally liable for the acts of the Maxill Entities. As detailed below and elsewhere in this amended complaint, Shaw's domination and control over the Maxill Entities satisfies Ohio's three-prong test for veil-piercing: (a) control over the corporation so complete that the corporation has no separate mind, will or existence of its own, rendering the entities his alter egos; (b) exercise of that control to commit fraud, an illegal act, or a similarly unlawful act; and (c) injury or unjust loss resulted to Loops from such control and wrong.

### *Alter Ego: Shaw's Complete Domination and Control*

34. At all relevant times, Shaw has owned and exercised complete domination and control, either overtly or covertly, over the Maxill Entities.

35. Upon information and belief, Shaw has commingled and diverted profits earned by the Maxill Entities for his personal benefit or concealed them beyond the reach of creditors, including Loops, while retaining present and future access for himself.

36. Shaw makes all management, executive, and operational decisions for the Maxill Entities in his sole discretion, without independent directors, officers, or processes. He reports to no one and has exercised this authority to use the entities as a personal instrumentality to commit and profit from infringement of Loops' patents while evading financial liability.

37. Upon information and belief, the Maxill Entities are grossly undercapitalized, with liabilities exceeding assets at the time of the infringement, as further evidenced by at least two of the Maxill Entities' recent bankruptcy filings, rendering them insolvent and unable to satisfy creditors like Loops.

37486858.2

38.     Upon information and belief, the Maxill Entities have failed to observe corporate formalities, such as maintaining separate books, holding meetings, or documenting arms-length transactions.

39.     As President of Maxill Ohio, Shaw has used it as a vehicle for importing, distributing, and selling the Accused Product in the U.S. to enrich himself, while exploiting the corporate form to attempt to shield himself from liability and to deprive Loops of compensation.

40.     As explained elsewhere in this amended complaint, and upon information and belief, BaderCap is owned and controlled by Shaw and functions as a sham entity in his fraudulent scheme to hinder, delay, and defraud creditors. Shaw has caused the other Maxill Entities to transfer substantial assets to BaderCap (or grant it purported security interests in those assets) to place them beyond creditors' reach while preserving his own access to and benefit from those assets.

41.     Shaw has further extended this scheme through Maxill Dental Inc. ("Maxill Dental"), a recently formed entity that, according to Shaw, is owned by BaderCap. Maxill Dental was not incorporated until June 10, 2025. Although Christine Thompson is listed as its President on registration paperwork, she is merely Shaw's proxy, having previously served as Purchasing and Logistics Manager for Maxill Canada.

42.     Maxill Dental is not a legitimate, independent company but another instrumentality in Shaw's corporate shell game, over which he exercises dominion and control with no separate mind, will, or existence of its own.

11

37486858.2

***Fraud and Unlawful Acts: Exercise of Control to Commit Wrongdoing***

43.     Shaw has orchestrated fraudulent conveyances and self-dealing among the Maxill Entities to hinder, delay, and defraud creditors, including Loops, by hiding assets and ill-gotten gains from patent infringement.

44.     In 2017, Shaw created a fraudulent security interest granting BaderCap a $14 million mortgage on the 500 West Main Street warehouse, purchased by Maxill Realty for $2.16 million in 2014. Maxill Realty received no reasonably equivalent value in exchange for this grant of secured rights to BaderCap, placing the property beyond creditors' reach. Shaw signed the mortgage document as "President" of Maxill Realty, Inc.

45.     On August 1, 2020, Shaw executed at least three sham agreements between Maxill Ohio and Maxill Canada, all signed by him on behalf of both parties:

A.     An $8.22 million promissory note and loan agreement, under which Maxill Canada purported to loan $8.22 million to Maxill Ohio, with any judgment over $50,000 triggering default and acceleration.

B.     A security agreement granting Maxill Canada a security interest in all of Maxill Ohio's assets to secure the  purported $8.22 million loan.

C.     A license agreement purporting to license Maxill Canada's intellectual property to Maxill Ohio for an upfront royal payment of $8.22 million (the same amount of money that Maxill Canada purportedly loaned to Maxill Ohio).

These were not arms-length transactions, but instead self-dealing designed and executed by Shaw to deplete Maxill Ohio's assets and shield them from Loops and other creditors.

46.     In 2024, Shaw depleted Maxill Ohio's PNC bank account to avoid liability to Loops and a former employee Dana Robie, who has been attempting unsuccessfully to collect an arbitration award of $308,661.98 plus 8% annual interest, which was obtained on March 5, 2024, and entered by the Trumbull County Court of Common Pleas on October 30, 2024.

47.     Upon information and belief, in a further effort to hinder, delay, and defraud creditors including Loops, in July 2024, Shaw caused Maxill Canada to assign and transfer to Bader Cap the $8.22 million promissory note and security agreement described in paragraph 45 above.

48.     Upon information and belief, in a further effort to hinder, delay, and defraud creditors including Loops, in June 2025, Shaw caused Maxill Ohio to transfer all of its assets and business operations to Maxill Dental, leaving Maxill Ohio an empty shell with no assets.

49.     To further attempt to avoid liability to Loop and other creditors (including Ms. Robie) and to hinder their litigation efforts to obtain recovery against Shaw and/or the Maxill Entities, on December 9, 2025, Shaw caused three Maxill companies—Maxill Ohio, Maxill Realty, Inc., and Maxill Dental Inc. (the "Maxill Debtors")—to file Chater 11 bankruptcies in the U.S. Bankruptcy Court for the Northern District of Ohio (Case Nos. 25-41500, 25-41501, 25-41502).

50.     On December 12, 2025, the Maxill Debtors moved for joint administration of their Chapter 11 cases, which was granted. The motion identified that all three companies operate or operated at 500 W. Main Street, Cortland, Ohio.

51.     Upon information and belief, the bankruptcy filings are a sham, designed to delay creditors, including this case and Ms. Robie's collection efforts. Indeed, Ms. Robie had a live case in Trumbull County Court of Common Pleas, Case No. 2024 JL 300195, working to collect the judgment, which was automatically stayed when the Maxill Debtors filed bankruptcy.

52.     On January 23, 2026, the U.S. Trustee responsible for overseeing the Maxill Debtors' cases moved to dismiss or convert them to Chapter 7.

37486858.2

53.     The U.S. Trustee cited a laundry list of mandatory bankruptcy documents, reports, and acts that the Maxill Debtors have failed to submit or perform. A true copy of the U.S. Trustee's motion is attached as **Exhibit C**.

54.     Upon information and belief, in a further effort to hinder, delay, and defraud creditors including Loops, Maxill Canada recently transferred all its assets to BaderCap, further insulating Shaw's ill-gotten financial gains.

### *Injury to Loops: Resulting Harm from Shaw's Control and Wrongdoing*

55.     Shaw has used his control over the Maxill Entities to commit the fraudulent scheme described herein and to infringe the Loop patents with the specific intent to injure Loops and to enrich himself by doing so.

56.     Shaw's domination directed the Maxill Entities' patent infringement, fraudulent transfers, and asset-stripping, directly injuring Loops by depriving it of compensation for the unlawful sales and preventing recovery of damages.

57.     But for Shaw's fraudulent scheme, Loops could recover from the Maxill Entities' assets and profits. Instead, Loops suffers unjust loss as Shaw retains the benefits personally.

58.     Accordingly, this Court should pierce the corporate veil and hold Shaw personally liable for the Maxill Entities' infringements, fraudulent transfers, and related acts.

### **FIRST CLAIM FOR RELIEF**

### **(Infringement of the '311 Patent Against All Defendants)**

59.     Loops hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 58.

60.     The '311 Patent was duly and legally issued on May 25, 2021. Loops is the sole owner of the '311 Patent.

37486858.2

61.     Upon information and belief, Defendants, and each of them, have infringed, and continue to infringe one or more claims of the '311 Patent, literally and/or under the doctrine of equivalents, including but not limited to claims 1-5, pursuant to 35 U.S.C. § 271(a), by making, using, selling, offering to sell, and/or importing, without authority, the Accused Product within the United States, Ohio, and this judicial district.

62.     The Accused Product infringes at least claims 1 and 5, in part, because the Accused Product is a toothbrush comprising a rigid polymer material comprising a first volume, a pliable flexible material comprising a second volume, wherein the second volume is greater than the first volume, a plurality of bristles coupled to the rigid polymer material and a thermoplastic bond at an interface between the rigid polymer material and the pliable flexible material. Furthermore, the Accused Product is a composite toothbrush comprising a rigid polymer toothbrush head inner core

having a plurality of bristle holes for retention and holding a plurality of toothbrush bristles, with the rigid polymer inner core being made from a first material, a pliable flexible material partially surrounding the rigid polymer inner head core (on a left and a right side, in a bottom plan view underside aspect), the pliable flexible material made from a second material and comprises a greater volume than the rigid polymer toothbrush head inner core material, and a flexible handle at least partially made from the second material wherein the flexible handle is able to bend into an "L" or a "C" shape.

63.     The Accused Product also meets the other limitations of the claims of the '311 Patent, including the pliable flexible material providing a softness applicable to safety in a prison environment or an institutional environment (claim 2), an inner toothbrush head at least partially made from the rigid polymer material and an outer toothbrush head at least partially made from

15

the pliable flexible material (claim 3) and a flexible handle at least partially made from the pliable flexible material and a pair of pin connectors protruding from the inner toothbrush head, the pin connectors made from the rigid polymer material and assisting connecting the inner toothbrush head to the outer toothbrush head (claim 4).

64.     Upon information and belief, Defendants knew or should have known about the '311 Patent and their infringement of same. Defendants have become intimately familiar with Loops' technology and intellectual property from past litigations between them in Canada dating back more than a decade.

65.     Upon information and belief, Defendants are alter egos and/or agents of each other, such that the acts and/or knowledge of one are imputed to the other.

66.     Loops has been damaged and has suffered irreparable injury due to the acts of infringement of Defendants, and will continue to suffer damages and irreparable injury unless their acts are enjoined.

67.     Loops is entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284 in an amount of not less than $2,700,000.

68.     Defendants have infringed the '311 Patent as alleged above despite having prior knowledge of the Patent and their infringement of the Patent and have acted with willful, intentional, and reckless disregard of the objectively high likelihood that their acts constitute infringement of the '311 Patent. Upon information and belief, the Accused Product is a copy of the Loops Flexbrush® and its key safety features disclosed in the '311 Patent. The infringement of the '311 Patent has been and continues to be willful, entitling Loops to enhanced damages under 35 U.S.C. § 284 and also a finding that this case is exceptional, entitling Loops to an award of its reasonable attorneys' fees under 35 U.S.C. § 285.

37486858.2

69.     Shaw has induced infringement of the '311 Patent under 35 U.S.C. § 271(b) at least by using his control over the other Maxill Entities to actively encourage them to commit the direct infringement acts identified above, knowing that the acts he induced would result in direct patent infringement with specific intent that such infringement occur. Shaw encouraged the other Maxill Entities at least by directing, controlling, and influencing them to manufacture, import, offer to sell, and sell the Accused Product in the U.S.

**SECOND CLAIM FOR RELIEF**

**(Infringement of the '940 Patent Against All Defendants)**

70.     Loops hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 69.

71.     The '940 Patent was duly and legally issued on July 2, 2019. Loops is the sole owner of the '940 Patent.

72.     Upon information and belief, Defendants, and each of them, have infringed, and continue to infringe one or more claims of the '940 Patent, literally and/or under the doctrine of equivalents, including but not limited to at least claims 1-3, pursuant to 35 U.S.C. § 271(a), by making, using, selling, offering to sell, and/or importing, without authority, the Accused Product within the United States, Ohio, and this judicial district.

73.     The Accused Product infringes, at a minimum, claims 1-3, in part, because the Accused Product is a toothbrush having a composite head, wherein the composite head has a rigid polymer inner core having a plurality of bristle holes for retention and holding of toothbrush bristles, the rigid polymer inner core made from a first material, a pliable flexible material, made from a second material, completely surrounding the rigid polymer inner core (on the left and right side in a bottom plan view underside aspect), and a bond at an interface between the rigid polymer

17

inner core and the pliable flexible material surrounding the rigid polymer inner core, wherein the rigid polymer inner core is molded to the pliable flexible material forming the composite head.

74.     The Accused Product also meets the other limitations of claims 2 and 3 of the '940 Patent, including the composite head further comprising a tip of the rigid polymer inner core being covered with the pliable flexible material, an end of the of the rigid polymer inner core opposite the tip further having the pliable flexible material adjacent thereto and the end of the rigid polymer inner core opposite the tip transitioning to a handle of the toothbrush, an opposite side of the rigid inner core, the opposite side opposing a side having the bristle holes, the opposite side substantially covered by the pliable flexible material and a pair of pin connectors extending from the opposite side of the rigid polymer inner core, the rigid polymer inner core thereby being substantially encased by the pliable flexible material with the exception of the pin connectors and the side having a plurality of bristles not being fully encased in the pliable flexible material (claim 2) and the pliable flexible material further comprising thermoplastic properties, wherein the bond is devoid of glue due to the thermoplastic properties (claim 3).

75.     Upon information and belief, Defendants knew or should have known about the '940 Patent and their infringement of same. Defendants have become intimately familiar with Loops' technology and intellectual property from past litigations between them in Canada dating back more than a decade.

76.     Upon information and belief, Defendants are alter egos and/or agents of each other, such that the acts and/or knowledge of one are imputed to the other.

77.     Loops has been damaged and has suffered irreparable injury due to the acts of infringement of Defendants, and will continue to suffer damages and irreparable injury unless their acts are enjoined.

37486858.2

78.     Loops is entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284 in an amount of not less than $2,700,000.

79.     Defendants have infringed the '940 Patent as alleged above despite having prior knowledge of the Patent and their infringement of the Patent and have acted with willful, intentional, and reckless disregard of the objectively high likelihood that their acts constitute infringement of the '940 Patent. Upon information and belief, the Accused Product is a copy of the Loops Flexbrush® and its key safety features disclosed in the '940 Patent. The infringement of the '940 Patent has been and continues to be willful, entitling Loops to enhanced damages under 35 U.S.C. § 284 and also a finding that this case is exceptional, entitling Loops to an award of its reasonable attorneys' fees under 35 U.S.C. § 285.

80.     Shaw has induced infringement of the '940 Patent under 35 U.S.C. § 271(b) at least by using his control over the other Maxill Entities to actively encourage them to commit the direct infringement acts identified above, knowing that the acts he induced would result in direct patent infringement with specific intent that such infringement occur. Shaw encouraged the other Maxill Entities at least by directing, controlling, and influencing them to manufacture, import, offer to sell, and sell the Accused Product in the U.S.

**THIRD CLAIM FOR RELIEF**

**(Fraudulent Transfer Against Maxill Realty, BaderCap and Shaw Pursuant to Ohio Rev. Code §§ 1336.01 *et seq.*)**

81.     Loops hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 80.

82.     This claim arises under the Ohio Uniform Voidable Transactions Act (Ohio Rev. Code §§ 1336.01 *et seq.*).

83.     At all relevant times, Loops has been a creditor of the Maxill Entities and Shaw

37486858.2

within the meaning of Ohio Rev. Code § 1336.01(D), by virtue of Loops' patent rights and pending infringement claims and litigation against Defendants in the United States and abroad. Defendants knew or reasonably should have known that they faced substantial and foreseeable liability to Loops arising from their infringing and other wrongful acts that form the bases for various litigations in the United States and abroad.

84.    Upon information and belief, on or about October 18, 2017, while Loops was actively pursuing or preparing infringement and other legal actions against Defendants, Maxill Realty executed an open-ended mortgage and security agreement in favor of BaderCap, purporting to secure up to $14 million in obligations against real property located at 181 North Mecca Street, Cortland, Ohio (the "Cortland Property") having a fair market value of approximately $2 million.

85.    Upon information and belief, BaderCap is owned, controlled, or directed by Shaw, shares his address in St. Thomas, Ontario as evidenced by the open-ended mortgage and security agreement above-referenced, and was used as a shell or conduit to fabricate or exaggerate indebtedness and to encumber the Cortland Property for the purpose of placing it beyond the reach of legitimate creditors, including Loops.

86.    The link between Maxill and BaderCap is evidenced by, among other things, a LinkedIn profile for Brian DeYue, a Strategic Financial Advisor for Maxill and a Private Equity Analyst for SMIC – BaderCap Investments as shown below:



////

////

////

37486858.2

## Work experience



**Private Equity Analyst**
SMIC - BaderCap Investments
February 2010- Currently  · 15 years and 9 months
Taipei City, Taiwan



**Colgate-Palmolive**
7 years

**Finance Analyst**
2007 - 2010  · 3 years
Beijing City, China
Analyst and banking liaison for restructuring and acquisitions.

**Mergers Acquisition**
2004-2007  · 3 years
São Paulo Area, Brazil

**Taxation Manager**
2003-2004  · 1 year
São Paulo Area, Brazil
Import and Export Tax Reclamation



**Junior Costing Intern**
Volkswagen of Brazil
2000 - 2002  · 2 years
São Paulo Area, Brazil
Costs inputs and updates for the Mercosur region.

## Educational Background



**London Business School**
Finance  · Business/Managerial Economics

**The London School of Economics and Political Science (LSE)**
Fianance  · Business Administration and Management, General

87.     The farce that is BaderCap is evidenced by, among other things, the fact that Brian DeYue's LinkedIn profile picture is identical to Ahmad Nizam Shahrul Wajdi's profile picture, who neither works for Maxill nor BaderCap, nor was educated at the London Business School as shown below:



## Ahmad Nizam Shahrul Wajdi
Petronas



- PETRONAS



- Universiti Teknologi Malaysia

Bayan Lepas, Penang, Malaysia · Contact info

37 connections



37486858.2

## Experience



### Lead Sourcing Specialist
PETRONAS

Dec 2018 - Present · 6 yrs 11 mos

WP. Kuala Lumpur, Federal Territory of Kuala Lumpur, Malaysia



### Supply Chain Management Analyst
GE

Feb 2015 - Nov 2018 · 3 yrs 10 mos

www.linkedin.com/company/1015/uala Lumpur, Federal Territory of Kuala Lumpur, Malaysia



### Internship
PETRONAS

Dec 2013 - May 2014 · 6 mos

Kuala Lumpur, Federal Territory of Kuala Lumpur, Malaysia

## Education



### Universiti Teknologi Malaysia
Bachelor's degree, Computer and Information Sciences and Support Services

2009 - 2013

Grade: 3.89

88.     The farces that are Brian DeYue's and Ahmad Nizam Shahrul Wajdi's LinkedIn profiles are evidenced by, among other things, the fact that their profile pictures were taken from iStock under the description, "Asian Businessman 2" (Asian Businessman 2 Stock Photo - Download Image Now - Adult, Adults Only, Beautiful People - iStock), an online stock photography provider based in Canada as shown in the screenshot below:

22



89.     Upon information and belief, no bona fide loan advances or reasonably equivalent value were ever provided by BaderCap in connection with this purported $14 million obligation, and the "open-ended" nature of the instrument was intended to allow Shaw to claim future fictitious indebtedness and thereby inflate the encumbrance on the Cortland Property.

90.     The mortgage was executed and recorded with actual intent to hinder, delay, or defraud Loops as a creditor, in violation of Ohio Rev. Code § 1336.04(A)(1). Indicators of such intent include, among others:

(a)   the transfer was made to an insider, as BaderCap is owned or controlled by Shaw;

(b)   Maxill Realty retained possession and control of the Cortland, Ohio property after executing the mortgage;

(c)   the mortgage was recorded as legitimate financing when, in fact, no bona fide loan or value was provided;

(d)   the transfer was made after and during pending litigation with Loops; and

(e)   the stated $14 million obligation was grossly disproportionate to the property's actual value of approximately $2 million.

91.    Alternatively, the mortgage and the obligation it purported to secure were constructively fraudulent under Ohio Rev. Code §§ 1336.04(A)(2) and 1336.05(A), because Maxill Realty incurred the obligation without receiving reasonably equivalent value in exchange and was engaged in a business or transaction for which its remaining assets were unreasonably small, or intended to incur, or reasonably should have believed it would incur, debts beyond its ability to pay as they became due; and because Maxill Realty was insolvent at the time the mortgage was executed or became insolvent as a result thereof, and did not receive reasonably equivalent value in exchange for incurring that obligation.

92.    The mortgage was therefore a fraudulent transfer and the incurrence of an obligation within the meaning of Ohio Rev. Code § 1336.01(L) and § 1336.04(A), executed for the purpose of preventing Loops from reaching the Cortland Property to satisfy its claims.

93.    As a direct and proximate result of the execution and recordation of the fraudulent mortgage, Loops has been and will continue to be hindered, delayed, and defrauded in its efforts to collect upon its claims and to enforce its rights under United States patent law.

24

94. Pursuant to Ohio Rev. Code § 1336.07, Loops seeks to avoid the fraudulent obligation and to nullify or subordinate the mortgage to the extent necessary to satisfy its claims; to impose a constructive trust upon the Cortland Property, its rents, and proceeds; to obtain injunctive relief restraining further transfer or encumbrance; and to recover a money judgment equal to the value of the property fraudulently encumbered, together with costs, attorneys' fees, and such other relief as the Court deems just and equitable.

95. The conduct of Maxill Realty, BaderCap, and Shaw in executing and recording the fraudulent mortgage described herein was undertaken with actual malice, intent to defraud, and conscious disregard for the rights of Loops. Such conduct was willful, wanton, and malicious, and justifies the imposition of punitive or exemplary damages under Ohio law.

96. Loops further contends that each of the transfer transactions identified in paragraphs 47 and 54 above that Loops identifies as being made with the intend to hinder, delay, or defraud creditors, including Loops, also constitute fraudulent transfers under Ohio Rev. Code § 1336.01 *et seq.*

97. Loops avers that it did not discover, nor could it reasonably have discovered, any of the fraudulent transfers on which it sues more than one year before filing this action.

## PRAYER FOR RELIEF

WHEREFORE, Loops prays for relief as follows:

A. That Defendants, and each of them, be adjudged to have infringed the '311 Patent and the '940 Patent under 35 U.S.C. § 271(a), and that Shaw additionally be adjudged to have infringed both patents under 35 U.S.C. § 271(b);

B. That Defendants, and each of them, their subsidiaries, divisions, affiliates, officers, agents, servants, employees and attorneys, and all those persons in active concert or participation

25

with either of them be permanently restrained and enjoined under 35 U.S.C. § 283 from directly infringing the '311 Patent and the '940 Patent, and that Shaw further be restrained from inducing infringement of the '311 Patent and the '940 Patent;

C.      That the Court award Loops recovery of damages to compensate it for Defendants' infringement of the '311 Patent and the '940 Patent pursuant to 35 U.S.C. § 284 in an amount to be proven at trial but not less than $2,700,000;

D.      That Defendants, and each of them, be adjudged to have willfully infringed the '311 Patent and the '940 Patent under 35 U.S.C. § 271, and that the Court treble the amount of actual damages recoverable by Loops pursuant to 35 U.S.C. § 284;

E.      That this action be adjudged an exceptional case, and that the Court award Loops its attorneys' fees incurred in connection with this action, pursuant to 35 U.S.C. § 285;

F.      That the Court assess pre-judgment and post-judgment interest and costs of suit against Defendants, and each of them, and award such interest and costs to Loops pursuant to 35 U.S.C. § 284;

G.      That the Court find and declare that the October 18, 2017 open-ended mortgage and security agreement between Maxill Realty and BaderCap constitutes a fraudulent transfer or the incurrence of a fraudulent obligation under Ohio Rev. Code § 1336.04(A)(1) and (2) and § 1336.05(A);

H.      That the Court, pursuant to Ohio Rev. Code § 1336.07, avoid, set aside, or subordinate the fraudulent mortgage and any related liens or encumbrances on the Cortland Property, to the extent necessary to satisfy Loops' claims;

I.      That the Court impose a constructive trust upon the Cortland Property, its rents, proceeds, and profits for the benefit of Loops, and issue injunctive relief prohibiting further

transfer, conveyance, or encumbrance of that property or any proceeds thereof pending satisfaction of Loops' claims;

J.      That the Court find and declare that the other transfers identified under its Third Claim for Relief (Fraudulent Transfers) in this Amended Complaint (beyond the October 18, 2017 open-ended mortgage and security agreement) fraudulent transfers or the incurrence of fraudulent obligations under Ohio Rev. Code § 1336.04(A)(1) and (2) and/or § 1336.05(A).

K.      That the Court, pursuant to Ohio Rev. Code § 1336.07 and other applicable law, grant Loops LLC any and all appropriate relief at law or in equity with respect to such other fraudulent transfers, including but not limited to avoidance, recovery, attachment, injunction, damages, or any other remedy necessary to satisfy Loops LLC's claims;

L.      That the Court enter a money judgment against Shaw, BaderCap and Maxill Realty, jointly and severally, for the value of the property fraudulently encumbered or transferred, together with interest and such other monetary and equitable relief as justice requires;

M.      That the Court award Loops punitive or exemplary damages against Defendants Maxill Realty, BaderCap, and Shaw in an amount sufficient to punish and deter fraudulent and malicious conduct, subject to proof at trial; and

N.      That Loops receive such other and further relief as this Court may deem just and proper.

Dated: February 5, 2026

Respectfully submitted,

  s/ Matthew J. Cavanagh
David B. Cupar (0071622)
Matthew J. Cavanagh (0079522)
Benjamin Foote-Huth (0104192)
McDONALD HOPKINS
600 Superior Avenue East, Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5400
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com
bfootehuth@mcdonaldhopkins.com


David M. Kohn (*pro hac vice* forthcoming)
Michael T. Lane (*pro hac vice* forthcoming)
John M. Houkom (*pro hac vice*
forthcoming) Zachary S. Tedford (*pro hac
vice* forthcoming) LEWIS KOHN &
WALKER, LLP
17085 Via Del Campo
San Diego, CA 92127
Telephone: (858) 436-1332
dkohn@lewiskohn.com
mlane@lewiskohn.com
jhoukom@lewiskohn.com
ztedford@lewiskohn.com

*Attorneys for Plaintiff Loops L.L.C.*

28

### **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Loops hereby demands a trial by jury as to all claims and all issues triable by jury.

  *s/ Matthew J. Cavanagh*     
*Attorney for Plaintiff Loops L.L.C.*
