**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| LOOPS, L.L.C.,<br><br>Plaintiff,<br><br>v.<br><br>MAXILL INC., *et al.*,<br><br>Defendants. | Case No. 4:25-cv-02346-BYP<br><br>JUDGE BENITA Y. PEARSON |

**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S AMENDED COMPLAINT**

Defendants Maxill, Inc., an Ohio corporation ("***Maxill Ohio***"), Maxill Realty, Inc., ("***Maxill Realty***"), Maxill Inc., a Canadian corporation ("***Maxill Canada***"), and John Dennie Shaw ("***Shaw***") (collectively, "***Defendants***" or "***Maxill***") file this Answer and Counterclaims to Plaintiff Loops, L.L.C.'s ("Loops") Amended Complaint for patent infringement of United States Patent Nos. 11,013,311 (the "'311 Patent") and 10,334,940 (the "'940 Patent") and fraudulent transfer against Maxill Realty and Shaw. Defendants deny the allegations and characterizations in Plaintiff's Amended Complaint unless expressly admitted in the following paragraphs.

## <u>ANSWER</u>

## NATURE OF ACTION

1. Maxill admits that Loops brought the above-captioned action and attached copies of the '311 and '940 Patents to the Amended Complaint. Defendants deny the remaining allegations in Paragraph 1.

2. Maxill lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2 and thus denies them.

3. Maxill denies the allegations in Paragraph 3.

4. Maxill denies the allegations in Paragraph 4.

5. Maxill admits that Loops brought the above-captioned action. Maxill lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 5 and thus denies them

**PARTIES**

6. Maxill lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 6 and thus denies them.

7. Maxill admits that Maxill Canada is a corporation organized and existing under the laws of the Province of Ontario, Canada, with its principal place of business at 80 Elm Street, St. Thomas, Ontario, Canada, N5R 6C8. Maxill admits that Maxill Canada manufactures and distributes oral care products, including the Supermaxx toothbrush among others, and exports or has exported some of those products to other countries, including to Maxill Ohio. Until June 2025, Maxill Ohio promoted, sold, and warehoused the Supermaxx toothbrush. Maxill denies the remaining allegations in Paragraph 7.

8. Maxill admits that Maxill Ohio is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Cortland, Ohio. Maxill admits that Maxill Ohio has imported the Supermaxx toothbrush from Maxill Canada and has sold it in the United States, including in Ohio. Maxill admits that Maxill Ohio is owned by Maxill Canada. Maxill denies the remaining allegations in Paragraph 8.

9. Maxill admits that Maxill Realty is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Cortland, Ohio. Maxill admits

that Maxill Realty owns property in Ohio that is used to store Supermaxx toothbrushes. Maxill denies the remaining allegations in Paragraph 9.

10. Maxill denies that BaderCap participates in the importation, warehousing, promotion, marketing, sale, and distribution of the Supermaxx toothbrush. Maxill denies that BaderCap is an affiliate and instrumentality of Maxill. Maxill admits that Maxill Realty and BaderCap executed an "Open-End Mortgage and Security Agreement." Maxill lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 10 and thus denies them.

11. Maxill admits that Shaw is a natural person who is a citizen and resident of the Township of Southwold in the Province of Ontario, Canada.

12. Maxill admits that Shaw is the President of Maxill Canada and the founder and President at Maxill Ohio. Maxill admits that Shaw owns a controlling interest in Maxill Canada. Maxill admits that Maxill Canada owns a controlling interest in Maxill Ohio and Maxill Realty. Maxill denies the remaining allegations in Paragraph 12.

13. Maxill denies the allegations in Paragraph 13.

14. Maxill denies the allegations in Paragraph 14.

## JURISDICTION AND VENUE

15. Maxill admits that the Amended Complaint purports to set forth an action for patent infringement and fraudulent transfer. Maxill admits that this Court has subject matter jurisdiction.

16. Maxill denies that Maxill owes any amount of damages to Loops. Maxill admits that this Court has subject matter jurisdiction.

17. Maxill admits that Maxill Ohio and Maxill Realty are incorporated and do or have done business in Ohio and that this Court has personal jurisdiction over them.

18. Maxill denies the allegations in Paragraph 18.

19. Maxill denies the allegations in Paragraph 19.

20. Maxill admits Maxill Realty and BaderCap executed an "Open-End Mortgage and Security Agreement" related to property in Cortland, Ohio. Maxill denies the remaining allegations in Paragraph 20.

21. Maxill admits that Maxill Canada is a foreign entity and that Shaw is a foreign individual. Maxill denies the remaining allegations in Paragraph 21.

22. Maxill admits that Maxill Ohio and Maxill Realty maintain offices in Cortland, Ohio . Maxill admits that Maxill Ohio has imported and sold the Supermaxx toothbrush. Maxill denies the remaining allegations in Paragraph 22 and states that this case should be transferred to the Western District of Washington for the reasons set forth in Maxill's pending Motion to Transfer (Dkt. #27).

23. Maxill admits that Maxill Canada is a Canadian corporation and that Shaw is a Canadian citizen. Maxill admits, on information and belief, that BaderCap is a foreign entity. Maxill denies the remaining allegations in Paragraph 23 and states that this case should be transferred to the Western District of Washington for the reasons set forth in Maxill's pending Motion to Transfer (Dkt. #27).

24. Maxill denies the allegations in Paragraph 25 and states that this case should be transferred to the Western District of Washington for the reasons set forth in Maxill's pending Motion to Transfer (Dkt. #27).

## FACTUAL ALLEGATIONS

25. Maxill lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25 and thus denies them.

26. Maxill admits that one of Loops' flagship products is the Loops Flexbrush®. Maxill lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 26 and thus denies them.

27. Maxill admits that the '311 Patent identifies Loops as the named assignee of the '311 Patent. Maxill lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 27 and thus denies them.

28. Maxill admits that the '940 Patent identifies Loops as the named assignee of the '311 Patent. Maxill lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 28 and thus denies them.

29. Maxill admits that Maxill Canada manufactures and sells personal care products to correctional and mental health facilities. Maxill admits that Maxill Ohio has sold personal care products to correctional and mental health facilities. Maxill admits that Maxill Realty owns the building where the Supermaxx toothbrush is stored. Maxill denies the remaining allegations in Paragraph 29.

30. Maxill admits that starting at least as early as 2015, Maxill Canada began selling the accused Supermaxx toothbrush. Maxill admits that Maxill Canada has been selling a toothbrush line under the Supermaxx name since 1997. Maxill denies the remaining allegations in Paragraph 30.

31. Maxill admits that Maxill Ohio began promoting, selling, and warehousing the Supermaxx toothbrush after Maxill Canada's first sale of the Supermaxx toothbrush. Maxill denies the remaining allegations in Paragraph 31.

**[ALLEGED] PIERCING THE CORPORATE VEIL**

32. Maxill incorporates its responses to all other allegations as if fully rewritten herein, and denies any allegations in Paragraph 32.

33. Maxill denies the allegations in Paragraph 33.

34. Maxill admits that Shaw owns Maxill Canada. Maxill denies the allegations in Paragraph 34.

35. Maxill denies the allegations in Paragraph 35.

36. Maxill denies the allegations in Paragraph 36.

37. Maxill denies the allegations in Paragraph 37.

38. Maxill denies the allegations in Paragraph 38.

39. Maxill denies the allegations in Paragraph 39.

40. Maxill denies the allegations in Paragraph 40.

41. Maxill denies the allegations in Paragraph 41.

42. Maxill denies the allegations in Paragraph 42.

43. Maxill denies the allegations in Paragraph 43.

44. Maxill denies the allegations in Paragraph 44.

45. Maxill denies the allegations in Paragraph 45.

46. Maxill denies the allegations in Paragraph 46.

47. Maxill denies the allegations in Paragraph 47.

48. Maxill denies the allegations in Paragraph 48.

49. Maxill denies the allegations in Paragraph 49.

50. Maxill admits the allegations in Paragraph 50.

51. Maxill denies the allegations in Paragraph 51.

52. Maxill admits the allegations in Paragraph 52.

53. Maxill admits that a purported copy of Motion of the United States Trustee for Entry of an Order Converting or Dismissing Case Pursuant to 11 U.S.C. § 1112(b) is attached to the Amended Complaint as Exhibit C. Maxill denies the remaining allegations in Paragraph 53.

54. Maxill denies the allegations in Paragraph 54.

55. Maxill denies the allegations in Paragraph 55.

56. Maxill denies the allegations in Paragraph 56.

57. Maxill denies the allegations in Paragraph 57.

58. Maxill denies the allegations in Paragraph 58.

**[ALLEGED] INFRINGEMENT OF THE ’311 PATENT**

59. Maxill incorporates by reference its responses in Paragraphs 1–58 above as if fully set forth herein.

60. Maxill admits that according to the cover of the ’311 Patent, it was issued on May 25, 2021 and it is assigned to Loops. Maxill denies the remaining allegations in Paragraph 60.

61. Maxill denies the allegations in Paragraph 61 at least because the accused Supermaxx toothbrush does not meet all limitations of any valid claim of the ’311 Patent.

62. Maxill denies the allegations in Paragraph 62 at least because the accused Supermaxx toothbrush does not meet all limitations of any valid claim of the ’311 Patent.

63. Maxill denies the allegations in Paragraph 63 at least because the accused Supermaxx toothbrush does not meet all limitations of any valid claim of the ’311 Patent.

64. Maxill denies the allegations in Paragraph 64.

65. Maxill denies the allegations in Paragraph 65.

66. Maxill denies the allegations in Paragraph 66.

67. Maxill denies the allegations in Paragraph 67.

68. Maxill denies the allegations in Paragraph 68.

69. Maxill denies the allegations in Paragraph 69.

**[ALLEGED] INFRINGEMENT OF THE ’940 PATENT**

70. Maxill incorporates by reference its responses in Paragraphs 1–69 above as if fully set forth herein.

71. Maxill admits that according to the cover of the ’940 Patent, it was issued on July 2, 2019, and it is assigned to Loops. Maxill denies the remaining allegations in Paragraph 71.

72. Maxill denies the allegations in Paragraph 72 at least because the accused Supermaxx toothbrush does not meet all limitations of any valid claim of the ’940 Patent.

73. Maxill denies the allegations in Paragraph 73 at least because the accused Supermaxx toothbrush does not meet all limitations of any valid claim of the ’940 Patent.

74. Maxill denies the allegations in Paragraph 74 at least because the accused Supermaxx toothbrush does not meet all limitations of any valid claim of the ’940 Patent.

75. Maxill denies the allegations in Paragraph 75.

76. Maxill denies the allegations in Paragraph 76.

77. Maxill denies the allegations in Paragraph 77.

78. Maxill denies the allegations in Paragraph 78.

79. Maxill denies the allegations in Paragraph 79.

80. Maxill denies the allegations in Paragraph 80.

**[ALLEGED] FRAUDULENT TRANSFER**

81. Maxill incorporates by reference its responses in Paragraphs 1–80 above as if fully set forth herein.

82. Maxill admits that Loops' purported claim arises under Ohio Rev. Code §§ 1336.01 *et seq*.

83. Maxill denies the allegations in Paragraph 83.

84. Maxill admits that Maxill Realty and BaderCap executed an "Open-End Mortgage and Security Agreement.". Maxill denies the remaining allegations in Paragraph 84.

85. Maxill denies the allegations in Paragraph 85.

86. Maxill denies the allegations in Paragraph 86.

87. Maxill denies the allegations in Paragraph 87.

88. Maxill denies the allegations in Paragraph 88.

89. Maxill denies the allegations in Paragraph 89.

90. Maxill denies the allegations in Paragraph 90.

91. Maxill denies the allegations in Paragraph 91.

92. Maxill denies the allegations in Paragraph 92.

93. Maxill denies the allegations in Paragraph 93.

94. Maxill admits that Loops is seeking certain relief in this case. Maxill denies the remaining allegations in Paragraph 94.

95. Maxill denies the allegations in Paragraph 95.

96. Maxill denies the allegations in Paragraph 96.

97. Maxill denies the allegations in Paragraph 97.

## PRAYER FOR RELIEF

Maxill denies that Loops is entitled to any of the relief it prays for.

## DEFENDANTS AFFIRMATIVE DEFENSES

1. Further answering the Complaint, Maxill asserts the following affirmative defenses, undertaking the burden of proof only as to those defenses required by law, regardless of how such defenses are denominated here. Maxill reserves the right to rely upon any additional defenses that become available or apparent during discovery and reserves its right to amend this response and to assert such additional defenses or, if appropriate, delete additional defenses as discovery proceeds. Maxill asserts each of these affirmative defenses in the alternative, without admitting that Maxill is in any way liable to Loops, that Loops has been or will be injured or damaged in any way, or that Loops is entitled to any relief whatsoever. As a defense to the Amended Complaint and each and every allegation contained in it, Maxill alleges as follows:

### FIRST AFFIRMATIVE DEFENSE (Invalidity of the ’311 Patent)

2. The claims of the ’311 Patent are invalid for failure to comply with one or more of the requirements of Title 35, United States Code, including, without limitation, §§ 101, 102, 103, and/or 112. For example, as explained in Maxill’s Counterclaims, the ’311 Patent is invalid as anticipated under § 102 because Maxill and Loops both sold products that Loops contends meet the limitations of the claims of the ’311 Patent before its earliest filing date. The claims of the ’311 Patent are also invalid under 35 U.S.C. § 103 because the purported inventions therein would have been obvious to a person of ordinary skill in the art at the time the claimed inventions were made, in view of the prior art, alone or in combination. Prior art relevant to obviousness includes, without limitation: (1) the 2004 and 2005 Maxill Oral Care Catalogues disclosing earlier versions of the Supermaxx toothbrush; (2) the OraLine Institutional Products

disclosure; (3) Church (U.S. Patent No. 7,796,001); (4) Szczech (U.S. Patent No. 6,397,425); (5) Buhler (U.S. Patent Publication No. 2002/0136790); (6) Meyer II (U.S. Patent Publication No. 2003/0135943); (7) Kraemer (WO 01/96088); and (8) Roberts (WO 99/17915), each of which was identified in Maxill's October 12, 2018 Invalidity Contentions in the Washington Action and known to Loops before the filing date of the '311 Patent. The claimed features of the '311 Patent represent nothing more than the combination of known elements using known methods to achieve predictable results, and a person of ordinary skill in the art would have had reason to combine the prior art references with a reasonable expectation of success.

**<u>SECOND AFFIRMATIVE DEFENSE</u> (Invalidity of the '940 Patent)**

3. The claims of the '940 Patent are invalid for failure to comply with one or more of the requirements of Title 35, United States Code, including, without limitation, §§ 101, 102, 103, and/or 112. For example, as explained in Maxill's Counterclaims, the '940 Patent is invalid as anticipated under § 102 because Maxill and Loops both sold products that Loops contends meet the limitations of the claims of the '940 Patent before its earliest filing date. The claims of the '940 Patent are also invalid under 35 U.S.C. § 103 because the purported inventions therein would have been obvious to a person of ordinary skill in the art at the time the claimed inventions were made, in view of the prior art, alone or in combination. Prior art relevant to obviousness includes, without limitation: (1) the 2004 and 2005 Maxill Oral Care Catalogues disclosing earlier versions of the Supermaxx toothbrush; (2) the OraLine Institutional Products disclosure; (3) Church (U.S. Patent No. 7,796,001); (4) Szczech (U.S. Patent No. 6,397,425); (5) Buhler (U.S. Patent Publication No. 2002/0136790); (6) Meyer II (U.S. Patent Publication No. 2003/0135943); (7) Kraemer (WO 01/96088); and (8) Roberts (WO 99/17915), each of which was identified in Maxill's October 12, 2018 Invalidity Contentions in the Washington Action and

known to Loops during prosecution of the ’940 Patent. The claimed features of the ’940 Patent represent nothing more than the combination of known elements using known methods to achieve predictable results, and a person of ordinary skill in the art would have had reason to combine the prior art references with a reasonable expectation of success.

**THIRD AFFIRMATIVE DEFENSE (Unenforceability of the ’311 Patent)**

4. The claims of the ’311 Patent are unenforceable due to Loops’ inequitable conduct before the U.S. Patent and Trademark Office, as detailed in Maxill’s counterclaims below (incorporated herein by reference).

**FOURTH AFFIRMATIVE DEFENSE (Unenforceability of the ’940 Patent)**

5. The claims of the ’940 Patent are unenforceable due to Loops’ inequitable conduct before the U.S. Patent and Trademark Office, as detailed in Maxill’s counterclaims below (incorporated herein by reference).

**FIFTH AFFIRMATIVE DEFENSE (Non-Infringement of the ’311 Patent)**

6. Maxill has not infringed and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the ’311 Patent. To the extent that any claim of the ’311 Patent is infringed by the accused Supermaxx toothbrush, the claims of the ’311 Patent are invalid as anticipated under 35 U.S.C. § 102(a)(1) because the accused Supermaxx toothbrush was in public use, on sale, and/or otherwise available to the public before the earliest effective filing date of the ’311 Patent.

**SIXTH AFFIRMATIVE DEFENSE (Non-Infringement of the ’940 Patent)**

7. Maxill has not infringed and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the ’940 Patent. To the extent that any claim of the ’940 Patent is infringed by the accused Supermaxx toothbrush, the

claims of the ’940 Patent are invalid as anticipated under 35 U.S.C. § 102(a)(1) because the accused Supermaxx toothbrush was in public use, on sale, and/or otherwise available to the public before the earliest effective filing date of the ’940 Patent.

**SEVENTH AFFIRMATIVE DEFENSE (Estoppel)**

8. Loops is estopped from construing any valid claim of the ’311 or ’940 Patents to be infringed or to have been infringed, either literally or by application of the doctrine of equivalents, by any product made, used, imported, sold, or offered for sale by Maxill in view of prior art and/or because of admissions, representations, and/or statements made to the United States Patent and Trademark Office during prosecution of any application leading to the issuance of the ’311 or ’940 Patents, because of disclosure or language in the specification of the ’311 or ’940 Patents and any related patents, and/or because of limitations in the claims of the ’311 or ’940 Patents. In particular, during prosecution of the ’311 and ’940 Patents, Loops made representations and amendments to the USPTO that narrowed the scope of the claims. Loops is estopped from asserting claim constructions that would recapture claim scope surrendered during prosecution. Loops is also estopped from bringing its fraudulent transfer claims because of unreasonable and inexcusable delay in bringing such claims, and because Maxill has been materially prejudiced by that delay.

**EIGHTH AFFIRMATIVE DEFENSE (Statute of Limitations)**

9. Loops’s claims are barred by the applicable statutes of limitations. Loops’s patent infringement claims are limited to damages accruing no more than six years before filing of this action under 35 U.S.C. § 286. With respect to the fraudulent transfer claim, the alleged open-ended mortgage was executed and recorded on or about October 18, 2017. Loops filed this action on October 30, 2025—more than eight years after the alleged transfer. The Ohio Uniform

Voidable Transactions Act provides a four-year limitations period from the date of the transfer under Ohio Rev. Code. § 1336.09(A)(1), or at least one year from the date the transfer was or reasonably could have been discovered, under Ohio Rev. Code § 1336.09(A)(2). The mortgage was a recorded public instrument. Loops knew or should have known of the mortgage well within the limitations period, as the parties were engaged in active litigation during and after the 2017 recordation. Loops's fraudulent transfer claim is therefore time-barred in whole or in part.

**<u>NINTH AFFIRMATIVE DEFENSE</u> (Double Recovery)**

10. Loops's claims for relief are limited by the doctrine of full compensation, exhaustion, and/or first sale, and Loops is not entitled to double recovery.

**<u>TENTH AFFIRMATIVE DEFENSE</u> (Patent Misuse)**

11. Loops's efforts to enforce the '311 and '940 Patents amounts to patent misuse, including but not limited to by seeking to enforce the patents against products that it knows were publicly available and on sale before the '311 and '940 Patents' earliest priority dates.

**<u>ELEVENTH AFFIRMATIVE DEFENSE</u> (Failure to Provide Notice and/or Mark)**

12. Loops' claim for damages is limited by 35 U.S.C. § 287 because Loops failed to properly mark patented articles covered by the '311 and/or '940 Patents and/or failed to provide Maxill with actual notice of alleged infringement. On information and belief, Loops sold and continues to sell the Loops Flexbrush®, which Loops contends is covered by the Asserted Patents, without consistently and continuously marking the product with the patent numbers of the '311 and/or '940 Patents as required under 35 U.S.C. § 287(a). Loops is therefore precluded from recovering any damage prior to the date on which it provided Maxill with actual notice of the specific alleged infringement. Loops's prior correspondence and litigation concerning different patents and different claims does not constitute actual notice of infringement of the '311

and ’940 Patents specifically. Maxill disputes that adequate actual notice was provided prior to the filing of this action and reserves the right to challenge the sufficiency and date of any purported notice.

**TWELFTH AFFIRMATIVE DEFENSE (No Willful Infringement)**

13. Loops’s claims for enhanced damages are barred because Maxill’s conduct was not willful. Maxill acted in good faith and maintained a reasonable, non-frivolous belief that the accused Supermaxx toothbrush does not infringe any valid and enforceable claim of the ’311 and/or ’940 Patents. Specifically, Maxill has at all times held a good-faith belief—supported by the prior art and by Loops’s own admissions—that the claims of the ’311 and ’940 Patents are invalid in light of the Supermaxx toothbrush and the Loops Flexbrush®, both of which were publicly available years before the earliest effective filing dates of the Asserted Patents. Maxill further relied on its longstanding Supermaxx product design, which predates the Asserted Patents, as the basis for its good-faith belief of non-infringement and invalidity. Maxill’s conduct does not meet the standard for willful infringement under *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93 (2016), as there is no evidence of egregious conduct or deliberate disregard of a known and valid patent right.

**THIRTEENTH AFFIRMATIVE DEFENSE (R.C. 1336.01(B))**

14. Loops’s fraudulent transfer claim is barred because the alleged assets involved are not susceptible to, and/or are exempt from, fraudulent transfer.

**FOURTEENTH AFFIRMATIVE DEFENSE (R.C. 1336.08(A))**

15. Loops’s fraudulent transfer claim is barred because any alleged transfers or obligations were not fraudulent in that they were taken in good faith and for a reasonably equivalent value by the transferee or obligee.

**FIFTHEENTH AFFIRMATIVE DEFENSE (R.C. 1336.08(E))**

16. Loops's fraudulent transfer claim is barred because any alleged transfers or obligations were not fraudulent in that they were made in the ordinary course of business or financial affairs, were made pursuant to a good faith effort to rehabilitate and the transfer or obligation secured present value given for that purpose as well as an antecedent debt, and to the extent new value was given to or for the benefit of the debtor after the transfer was made.

**SIXTEENTH AFFIRMATIVE DEFENSE (R.C. 1336.08(C))**

17. Loops's fraudulent transfer claim is subject to set off and/or reduction in the amount of any liability on a judgment to the extent of value given for any alleged transfers or obligations.

**SEVENTEENTH AFFIRMATIVE DEFENSE (Equitable Principles)**

18. Loops's fraudulent transfer claim is barred by the doctrines of estoppel, waiver, laches, release, acquiescence, and ratification.

**EIGHTEENTH AFFIRMATIVE DEFENSE (Unclean Hands)**

19. Loops's fraudulent transfer claim is barred by its conduct and the doctrine of unclean hands.

**NINETEENTH AFFIRMATIVE DEFENSE (Standing)**

20. Loops lacks standing, capacity, and/or authority to assert its fraudulent transfer claim.

**TWENTIETH AFFIRMATIVE DEFENSE (Necessary Parties)**

21. Loops's fraudulent transfer claim is barred because Loops failed to join necessary and indispensable parties.

**<u>TWENTY-FIRST AFFIRMATIVE DEFENSE</u> (Failure to State a Claim)**

22. Loops's fraudulent transfer claim fails to state claim upon which relief may be granted.

24.

**<u>TWENTY-SECOND AFFIRMATIVE DEFENSE (Exceptional Case)</u>**

23. This case is exceptional within the meaning of 35 U.S.C. § 285, and Maxill is entitled to an award of its reasonable attorneys' fees. Loops's conduct in pursuing this litigation is objectively unreasonable given that: (a) Loops has known, or should have known, that the claims of the '311 and '940 Patents are invalid based on the prior public use and sale of Loops's own Flexbrush® product and the Supermaxx toothbrush, both of which predate the effective filing dates of the Asserted Patents; (b) Loops has admitted in its own court filing in this very action that the Asserted Patents are continuation-in-part adding "new matter"—meaning the claims cannot claim priority to earlier filing dates; (c) Loops filed this action shortly after voluntarily dismissing a nearly identical action in the Southern District of California following Maxill's motion to transfer, evidencing a pattern of forum-shopping designed to burden Maxill rather than to vindicate legitimate patent rights; and (d) despite being placed on notice by Maxill's April 3, 2026, letter identifying the foregoing invalidity grounds with specificity, Loops has continued to press its claims. Maxill therefore reserves its right to seek its fees and costs as prevailing party in this exceptional case.

**<u>COUNTERCLAIMS</u>**

In accordance with Federal Rule of Civil Procedure 13, Counterclaim Plaintiffs Maxill, Inc., an Ohio corporation ("***Maxill Ohio***"), Maxill Realty, Inc., ("***Maxill Realty***"), Maxill Inc., a Canadian corporation ("***Maxill Canada***"), and John Dennie Shaw ("***Shaw***") (collectively,

"***Counterclaim Plaintiffs***" or "***Maxill***") alleges as follows for its Counterclaims against Counterclaim Defendant Loops, L.L.C.'s ("Loops"). The allegations herein are made based on personal knowledge as to Maxill with respect to their own actions and upon information and belief as to all others.

## NATURE OF THE ACTION

1. Maxill's counterclaims are for declaratory judgment of invalidity, unenforceability, and noninfringement of United States Patent Nos. 11,013,311 (the "'311 Patent") and 10,334,940 (the "'940 Patent") (collectively, the "Asserted Patents"), brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, Title 35 of the United States Code. Maxill requests this relief because Loops has alleged and continues to allege that Maxill's Supermaxx™ toothbrush ("the Accused Product" or "Supermaxx") infringes the Asserted Patents.

2. Loops's affirmative allegations of infringement of the Asserted Patents against Maxill have created an immediate, real, and justiciable controversy between Maxill and Loops.

3. Neither Maxill nor its products practice any valid and enforceable claims of the Asserted Patents. Maxill has not induced or contributed to any third-party product or technology that practices any valid and enforceable claims of the Asserted Patents.

4. Maxill seeks a declaratory judgment that the Asserted Patents are invalid and unenforceable and/or that Maxill does not infringe any valid and enforceable claims of the Asserted Patents, permanent injunctive relief, a determination that Loops's conduct constitutes deliberate, willful and/or bad faith conduct such that this should be declared an exceptional case under 35 U.S. C. § 285, attorneys' fees, and any other relief the Court deems just and proper.

## THE PARTIES

5. Counterclaim Plaintiff Maxill Ohio is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Cortland, Ohio.

6. Counterclaim Plaintiff Maxill Realty is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Cortland, Ohio.

7. Counterclaim Plaintiff Maxill Canada is a corporation organized and existing under the laws of the Province of Ontario, Canada, with its principal place of business at 80 Elm Street, St. Thomas, Ontario, Canada, N5R 6C8.

8. Counterclaim Plaintiff Shaw is a natural person who is a citizen and resident of the Township of Southwold in the Province of Ontario, Canada.

9. On information and belief, Counterclaim Defendant Loops is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Whatcom County, Washington.

## JURISDICTION AND VENUE

10. Maxill's counterclaims arise under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

11. This Court has subject matter jurisdiction over Maxill's counterclaims under 28 U.S.C. §§ 1331, 1338, and 2201, and 2202. An actual controversy exists under the Declaratory Judgment Act, at least because Loops has asserted and is asserting infringement of the Asserted Patents by Maxill and Maxill denies those allegations.

12. By filing its Complaint in this District, Loops has consented to personal jurisdiction and venue. For the purposes of the Counterclaims set forth herein, and without waiving any defense of lack of venue or improper venue in connection with Loops's Amended

Complaint and causes of action, venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 at least because Loops has submitted to personal jurisdiction in this Court and has consented to this venue by filing its Amended Complaint here.

## BACKGROUND

### A. Litigation History Between Maxill and Loops

13. Maxill Canada has been in the business of selling, marketing, and shipping infection control and oral healthcare products primarily to dental professionals since 1987. One such product is Maxill Canada's Supermaxx institutional line of toothbrushes, the product Loops has accused of patent infringement in the present case.

14. For over a decade, Loops has sought to keep the Supermaxx line of toothbrushes off the market by filing numerous patent infringement and other lawsuits against Maxill Canada and related entities in Canada and the United States. Loops's assertions of patent infringement are not genuine attempts to protect legitimate patent rights, but rather attempts to strong-arm Maxill in the market.

15. In 2012, Loops sued Maxill Canada in the Federal Court of Canada for alleged infringement of Loops's Canadian Patent No. 2,577,109 through sales of the Supermaxx toothbrush. This case settled in 2014.

16. In 2015, Loops again sued Maxill Canada in Canada for alleged breach of the parties' settlement agreement ("the Canadian Action"). This case remains pending.

17. In September 2017, Loops sued Maxill Canada in the U.S. District Court for the District of Utah for alleged infringement of U.S. Patent No. 8,448,285 (the "'285 patent"). *See Loops, LLC et al v. Bob Barker Company, Inc. et al.*, Case No. 1:17-cv-00123 (D. Utah) (the

"Utah Action"). The '311 and '940 Patents asserted against Maxill by Loops in this case are related to the '285 Patent through a chain of continuation-in-part applications.

18. In December 2017, Maxill Ohio filed a declaratory judgment action against Loops in the U.S. District Court for the Western District of Washington seeking declarations of invalidity and non-infringement of the '285 Patent. *See Maxill Inc. et al. v. Loops, LLC et al.*, Case No. 2:17-cv-01825 (W.D. Wash.) (the "Washington Action").

19. In July 2018, Loops and Maxill Canada stipulated to transfer the Utah Action to the Western District of Washington and consolidate it with the Washington Action. The district court stayed the Washington Action in March 2021, pending conclusion of the Canadian Action. The Washington Action remains stayed, although Maxill has requested that the stay be lifted.

20. On July 16, 2025, Loops sued Maxill Canada and Shaw in the U.S. District Court for the Southern District of California. *See Loops, L.L.C. v. Maxill Inc.*, 3:25-cv-01814 (S.D. Cal.) (the "California Action"). Loops's complaint asserted infringement of the '311 and '940 Patents based on the importation and sale of the Supermaxx toothbrush in the United States. After Maxill Canada and Shaw moved to dismiss or transfer that case to the Western District of Washington, Loops voluntarily dismissed the California Action.

21. On October 30, 2025, shortly after dismissing the California Action, Loops filed this action against Maxill in the U.S. District Court for the Northern District of Ohio (the "Ohio Action"). Loops asserted, *inter alia*, infringement of the '311 and '940 Patents based on the Supermaxx toothbrush. *See* Dkt. No. 1 at ¶¶ 32-51.

22. On February 5, 2026, Loops filed an Amended Complaint against Maxill in this case. *See* Dkt. No. 24.

23. Loops alleges in the Amended Complaint that "Defendants, and each of them, have infringed, and continue to infringe one or more claims of the '311 Patent, literally and/or under the doctrine of equivalents, including but not limited to claims 1-5, pursuant to 35 U.S.C. § 271(a), by making, using, selling, offering to sell, and/or importing, without authority, the Accused Product within the United States, Ohio, and this judicial district." *See id.* at ¶ 61.

24. Loops also alleges in the Amended Complaint that "Defendants, and each of them, have infringed, and continue to infringe one or more claims of the '940 Patent, literally and/or under the doctrine of equivalents, including but not limited to at least claims 1-3, pursuant to 35 U.S.C. § 271(a), by making, using, selling, offering to sell, and/or importing, without authority, the Accused Product within the United States, Ohio, and this judicial district." *See id.* at ¶ 72.

25. Loops's claims of infringement against Maxill are strategically designed to burden Maxill with costly and time-consuming legal battles and disrupt Maxill's business operations in hopes of leveraging a favorable settlement from Maxill.

26. Loops's allegations of infringement of the '311 and '940 Patents by Maxill's Supermaxx toothbrush in this case demonstrate affirmative acts by Loops to enforce its rights in the '311 and '940 Patents.

27. Accordingly, there is an immediate and existing case or controversy, and declaratory judgment jurisdiction exists over the subject matter set forth in Maxill's counterclaims.

28. Neither Maxill, nor any of its products, directly or indirectly infringe any valid and enforceable claims of the '311 or '940 Patents.

29. Neither Maxill, nor any of its products, perform each element of any claim of any valid and enforceable claims of the ’311 or ’940 Patents, nor does Maxill instruct third parties to perform each element of any valid and enforceable claim of the ’311 or ’940 Patents.

30. Loops is aware that Maxill does not infringe any valid and enforceable claims of the ’311 Patent.

31. Loops is aware that Maxill does not infringe any valid and enforceable claims of the ’940 Patent.

32. Despite this awareness, Loops is nevertheless maintaining its baseless infringement claims against Maxill.

**B. The Asserted Patents**

33. According to the face of the ’311 Patent, the USPTO issued the ’311 Patent, entitled “Composite Toothbrush Having Safety Features and Methods of Making Same,” on May 25, 2021. The face of the ’311 Patent lists Steven L. Kayser as inventor and Loops, LLC as the assignee.

34. According to the face of the ’311 Patent, the ’311 Patent issued from U.S. Application No. 16/459,341 (the “’341 Application”), filed on July 1, 2019.

35. According to the face of the ’311 Patent, the ’341 Application purports to be a continuation-in-part of U.S. Application No. 15/854,097 (the “’097 Application”), filed on December 26, 2017, and issued as the ’940 Patent. The face of the ’311 Patent further claims that the ’097 Application is a continuation-in-part of U.S. Application No. 14/099,637 (the “’637 Application”) filed on December 6, 2013, which is purportedly a continuation-in-part of U.S. Application No. 11/653,153 (the “’153 Application”) filed on January 12, 2007. The face of the ’311 Patent further claims that the ’153 Application is a continuation-in-part of U.S. Application

No. 11/563,671 (the "'671 Application"), filed on November 27, 2006, and issued as the '285 Patent.

36. The '311 Patent does not claim the benefit of the filing date of any applications filed before November 27, 2006.

37. The '311 Patent does not claim priority to any applications filed before November 27, 2006.

38. The earliest possible effective filing date of the '311 Patent is therefore November 27, 2006.

39. According to the face of the '940 Patent, the USPTO issued the '940 Patent, entitled "Composite Head Toothbrush Having Safety Features," on July 2, 2019. The face of the '940 Patent lists Steven L. Kayser as inventor and Loops, LLC as the assignee.

40. According to the face of the '940 Patent, the '940 Patent issued from the '097 Application, filed on December 26, 2017.

41. According to the face of the '940 Patent, the '097 Application purports to be a continuation-in-part of the '637 Application filed on December 6, 2013, which is purportedly a continuation-in-part of the '153 Application filed on January 12, 2007. The face of the '940 Patent further claims that the '153 Application is a continuation-in-part of the '671 Application, filed on November 27, 2006, and issued as the '285 Patent.

42. The '940 Patent does not claim the benefit of the filing date of any applications filed before November 27, 2006.

43. The '940 Patent does not claim priority to any applications filed before November 27, 2006.

44. The earliest possible effective filing date of the ’940 Patent is therefore November 27, 2006.

45. Regardless, the claims of the Asserted Patents are not entitled to the benefit of filing dates earlier than the filing dates of the ’311 and ’940 Patent themselves.

46. Loops stated in its Opposition to Defendants’ Motion to Dismiss or Transfer that the claims of the ’311 and 940 Patents add “new matter not present in the parent application”:

> [T]he United States Patent and Trademark Office (“USPTO”) issued the ‘940 and ‘311 patents to Loops on July 2, 2019, and May 25, 2021, respectively….***Both patents are “continuations-in-part” of the application that issued as the ’285 patent. [] As such, they claim some of the inventive features disclosed in the earlier application, while adding new matter not present in the parent application***. *See PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 n.3 (Fed. Cir. 2008) (“the quintessential difference between a continuation and a continuation-in-part is the addition of new matter”).

Dkt. No. 33 at 5 (emphasis added).

47. Claims that include “new matter” cannot receive the benefit of earlier-filed applications under 35 U.S.C. § 120.

48. By Loops’s own admission, the claims of the Asserted Patents include new matter not present in any earlier applications to which they claim priority.

49. The claims of the Asserted Patents are therefore entitled only to the filing dates of the ’311 and ’940 Patents themselves.

50. The ’311 Patent is not entitled to an effective filing date earlier than July 1, 2019.

51. The ’940 Patent is not entitled to an effective filing date earlier than December 26, 2017.

52. Even setting aside Loops’s admissions, the earlier applications to which the ’311 and ’940 Patents claim priority do not support the full scope of the claims of either of the Asserted Patents.

53. Independent claims 1 and 5 (and all claims dependent therefrom) of the ’311 Patent include a volume limitation that requires the volume of pliable flexible material to be greater than the volume of rigid polymer material. *See* Dkt. No. 24-1 (’311 Patent) at cls. 1, 5.

54. None of the applications to which the ’311 Patent claims priority disclose or support the volume limitations requiring the volume of pliable flexible material to be greater than the volume of rigid polymer material.

55. Because all claims of the ’311 Patent include new matter not disclosed or supported in earlier applications in the family, the claims of the ’311 Patent cannot receive the benefit of filing dates earlier than the filing date of the ’311 Patent itself, *i.e.*, July 1, 2019.

56. Independent claims 1 and 4 (and all claims dependent therefrom) of the ’940 Patent require pliable flexible material “completely surrounding” or “substantially surrounding” the rigid polymer inner core “on a left and a right side in bottom plan view underside aspect.” *See* Dkt. No. 24-2 (’940 Patent) at cls. 1, 4.

57. None of the applications to which the ’940 Patent claims priority disclose or support limitations requiring pliable flexible material “completely surrounding” or “substantially surrounding” the rigid polymer inner core “on a left and a right side in bottom plan view underside aspect.”

58. Because all claims of the ’940 Patent include new matter not disclosed or supported in earlier applications in the family, the claims of the ’940 Patent cannot receive the benefit of filing dates earlier than the filing date of the ’940 Patent itself, *i.e.*, December 26, 2017.

59. Accordingly, the earliest effective filing date of the claims of the ’311 Patent is July 1, 2019.

60. Further, the earliest effective filing date of the claims of the ’940 Patent is December 26, 2017.

**COUNTERCLAIM I:**

**Invalidity of U.S. Patent No. 11,013,311**

61. Maxill repeats and realleges each and every allegation set forth in the above paragraphs and incorporates them by reference herein.

62. In view of the facts as alleged above, there is an actual, substantial, immediate, and justiciable controversy between Maxill and Loops regarding whether Maxill infringes any valid and/or enforceable claim of the ’311 Patent.

63. According to the face of the ’311 Patent, Loops is the assignee of the ’311 Patent.

64. Based on Loops’s Amended Complaint (Dkt. No. 24), Loops claims to be the sole owner of the ’311 Patent. *See* Dkt. No. 24 at ¶ 60.

65. The claims of the ’311 Patent, including claims 1-5 asserted against Maxill by Loops in the Amended Complaint (Dkt. No. 24), are invalid and void, at least, for failure to meet one or more of the conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq*., including but not limited to failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and 112 and/or 256, and/or the doctrine of obviousness-type double-patenting and/or any other judicially-created requirements for patentability and enforceability.

66. As explained above, the earliest effective filing date to which the claims of the ’311 Patent are entitled is July 1, 2019.

67. As one example of the invalidity of the claims of the ’311 Patent, the Supermaxx toothbrush—the very product that Loops accuses of infringing the ’311 Patent in this case—was

in public use, on sale, and/or was otherwise known to the public before the July 1, 2019 earliest effective filing date of the ’311 Patent.

68. Loops alleges in the Amended Complaint that the Supermaxx toothbrush infringes claims 1-5 of the ’311 Patent. Specifically, Loops asserts that “Defendants, and each of them, have infringed, and continue to infringe one or more claims of the ’311 Patent, literally and/or under the doctrine of equivalents, including but not limited to claims 1-5, pursuant to 35 U.S.C. § 271(a), by making, using, selling, offering to sell, and/or importing, without authority, the Accused Product within the United States, Ohio, and this judicial district.” *See* Dkt. No. 24 at ¶ 61.

69. Loops also alleges in the Amended Complaint that Supermaxx meets the limitations of “at least claims 1 and 5” of the ’311 Patent. *See id.* at ¶ 62.

70. Loops further alleges in the Amended Complaint that Supermaxx “also meets the other limitations of the claims of the ’311 Patent.” *See id.* at ¶ 63.

71. Accordingly, Loops admits that the Supermaxx toothbrush meets each and every limitation of the claims of the ’311 Patent.

72. Additionally, Loops concedes that the Supermaxx toothbrush accused of infringing the claims of the ’311 Patent in this case was in public use, on sale, and/or was otherwise known to the public before July 1, 2019. Loops alleges in the Amended Complaint that “in or around 2016 or 2017, Defendants began promoting, offering to sell, and selling the Accused Product, a competing flexible toothbrush under the designation, Supermaxx toothbrush, in Canada.” *See* Dkt. No. 24 at ¶ 30.

73. Further, Loops knew, or should have known, that Supermaxx was on sale and in public use before July 1, 2019. For example, the Supermaxx toothbrush was available for

purchase on Maxill's website at least by March/April 2015. *See, e.g.*, *"Specialty Toothbrushes,"* Maxill (March 28, 2015), https://web.archive.org/web/20150328010450/http://www.maxill.com/ca/products/toothbrushes/specialty-toothbrushes.html (attached hereto as Exhibit A); *"Supermaxx Institution Toothbrush*," Maxill (April 29, 2015), https://web.archive.org/web/20150429221051/http://www.maxill.com/ca/products/toothbrushes/specialty-toothbrushes/supermaxx-institutional-toothbrush.html (attached hereto as Exhibit B). This is over four years before the earliest effective filing date of the claims of the '311 Patent.

74. The Supermaxx toothbrush—the very product that Loops accuses of infringing the '311 Patent in this case—therefore anticipates the claims of the '311 Patent under AIA 35 U.S.C. § 102(a)(1).

75. As another example of the invalidity of the claims of the '311 Patent, Loops' Flexbrush toothbrush was in public use, on sale, and/or was otherwise known to the public before the July 1, 2019 earliest effective filing date of the '311 Patent.

76. Loops alleges in the Amended Complaint that the Flexbrush is "covered" by the Asserted Patents, including the '311 Patent. According to Loops, "Loops manufactures, markets, and sells oral care products, including ***products covered by the Asserted Patents such as the Loops Flexbrush®***, to institutional and commercial customers throughout the United States." *See* Dkt. No. 24 at ¶ 6 (emphasis added).

77. Loops further admits in this litigation that the Flexbrush embodies the purported invention claimed in the '311 patent. According to Loops, "Loops asserts infringement of U.S. Patent Nos. 11,013,311 (the ''311 patent') and 10,334,940 (the ''940 patent')" and "Loops has

commercialized its ***patented invention as the 'Flexbrush,' a novel flexible toothbrush***." *See* Dkt. No. 33 at 2 (emphasis added).

78. Accordingly, Loops admits that the Flexbrush toothbrush meets each and every limitation of the claims of the '311 Patent.

79. Additionally, Loops knew, or should have known, that Flexbrush was in public use, on sale, and/or was otherwise known to the public before July 1, 2019. For example, the Flexbrush toothbrush was available for purchase on Loops's website at least by July 2015. *See, e.g.*, "*Loops Flexbrush Safety Toothbrush*," Loops (July 7, 2015), https://web.archive.org/web/20150707183132/http://www.flossloops.com/Products_flexbrush.html (attached hereto as Exhibit C). This is over four years before the earliest effective filing date of the claims of the '311 Patent.

80. The Flexbrush toothbrush therefore anticipates the claims of the '311 Patent under AIA 35 U.S.C. § 102(a)(1).

81. As another example of the invalidity of the claims of the '311 Patent, even if the claims of the '311 Patent were entitled to their earliest possible effective filing date, the claims of the '311 Patent are still invalid as anticipated.

82. As explained above, the earliest possible effective filing date of the '311 Patent is November 27, 2006.

83. The first sale of Loops's Flexbrush was November 23, 2005. *See* Dkt. No. 33-5 at 38.

84. Based on Loops's own filings in this case, Loops admits that the first sale of Loops's Flexbrush was November 23, 2005. *See* Dkt. No. 33-5 at 38.

85. Thus, Flexbrush was first sold on November 23, 2005, which is more than one year before even the earliest possible effective filing date of the ’311 Patent of November 27, 2006.

86. Accordingly, even if the ’311 Patent was entitled to its earliest possible effective filing date, the claims of the ’311 Patent are still invalid under pre-AIA 35 U.S.C. § 102(b). Loops knew, or should have known, that the claims of the ’311 Patent are invalid before filing this case against Maxill.

87. Had Loops conducted a diligent pre-suit investigation regarding its allegations that Maxill infringes the claims of the ’311 Patent, it would have known that the claims of the ’311 Patent are invalid based on at least the facts described above.

88. At a minimum, Loops is presently aware that the claims of the ’311 Patent are invalid.

89. On April 3, 2026, counsel for Maxill sent a letter to Loops explaining the above facts related to the invalidity of the claims of the ’311 Patent.

90. On April 17, 2026, counsel for Loops responded to Maxill’s April 3, 2026 letter, acknowledging receipt of Maxill’s letter and confirming Loops’s awareness of the issues raised therein, including the above facts related to the invalidity of the claims of the ’311 Patent.

91. As another example of the invalidity of the claims of the ’311 Patent, the claims of the ’311 Patent are invalid under 35 U.S.C. § 103 because the purported inventions therein would have been obvious to a person of ordinary skill in the art at the time the claimed inventions were made, in view of the prior art, alone or in combination. Prior art relevant to obviousness includes, without limitation: (1) the 2004 and 2005 Maxill Oral Care Catalogues disclosing earlier versions of the Supermaxx toothbrush; (2) the OraLine Institutional Products

disclosure; (3) Church (U.S. Patent No. 7,796,001); (4) Szczech (U.S. Patent No. 6,397,425); (5) Buhler (U.S. Patent Publication No. 2002/0136790); (6) Meyer II (U.S. Patent Publication No. 2003/0135943); (7) Kraemer (WO 01/96088); and (8) Roberts (WO 99/17915), each of which was identified in Maxill's October 12, 2018 Invalidity Contentions in the Washington Action and known to Loops before the filing date of the '311 Patent. The claimed features of the '311 Patent represent nothing more than the combination of known elements using known methods to achieve predictable results, and a person of ordinary skill in the art would have had reason to combine the prior art references with a reasonable expectation of success.

92. Accordingly, Maxill seeks a judgment declaring that the '311 Patent is invalid.

## COUNTERCLAIM II:

### Invalidity of U.S. Patent No. 10,334,940

93. Maxill repeats and realleges each and every allegation set forth in the above paragraphs and incorporates them by reference herein.

94. In view of the facts as alleged above, there is an actual, substantial, immediate, and justiciable controversy between Maxill and Loops regarding whether Maxill infringes any valid and enforceable claim of the '940 Patent.

95. According to the face of the '940 Patent, Loops is the assignee of the '940 Patent.

96. Based on Loops's Amended Complaint (Dkt. No. 24), Loops claims to be the sole owner of the '940 Patent. *See* Dkt. No. 24 at ¶ 71.

97. The claims of the '940 Patent, including claims 1-3 asserted against Maxill by Loops in the Amended Complaint (Dkt. No. 24), are invalid and void, at least, for failure to meet one or more of the conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including but not limited to failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and 112

and/or 256, and/or the doctrine of obviousness-type double-patenting and/or any other judicially-created requirements for patentability and enforceability.

98. As explained above, the earliest effective filing date to which the claims of the ’940 Patent are entitled is December 26, 2017.

99. As one example of the invalidity of the claims of the ’940 Patent, the Supermaxx toothbrush—the very product that Loops accuses of infringing the ’940 Patent in this case—was in public use, on sale, and/or was otherwise known to the public before the December 26, 2017 earliest effective filing date of the ’940 Patent.

100. Loops alleges in the Amended Complaint that the Supermaxx toothbrush infringes claims 1-3 of the ’940 Patent. Specifically, Loops asserts that “Defendants, and each of them, have infringed, and continue to infringe one or more claims of the ‘940 Patent, literally and/or under the doctrine of equivalents, including but not limited to at least claims 1-3, pursuant to 35 U.S.C. § 271(a), by making, using, selling, offering to sell, and/or importing, without authority, the Accused Product within the United States, Ohio, and this judicial district.” *See* Dkt. No. 24 at ¶ 72.

101. Loops also alleges in the Amended Complaint that Supermaxx meets the limitations of “at a minimum, claims 1-3” of the ’940 Patent. *See id.* at ¶ 73.

102. Loops further alleges in the Amended Complaint that Supermaxx “also meets the other limitations of claims 2 and 3 of the ’940 Patent.” *See id.* at ¶ 74.

103. Accordingly, Loops admits that the Supermaxx toothbrush meets each and every limitation of claims 1-3 of the ’940 Patent.

104. Additionally, as explained above, Loops concedes that the Supermaxx toothbrush accused of infringing claims 1-3 of the ’940 Patent in this case was in public use, on sale, and/or

was otherwise known to the public before December 26, 2017. Loops alleges in the Amended Complaint that "in or around 2016 or 2017, Defendants began promoting, offering to sell, and selling the Accused Product, a competing flexible toothbrush under the designation, Supermaxx toothbrush, in Canada." *See* Dkt. No. 24 at ¶ 30.

105. Further, Loops knew, or should have known, that Supermaxx was on sale and in public use before December 26, 2017. For example, the Supermaxx toothbrush was available for purchase on Maxill's website at least by March/April 2015. *See, e.g.*, "Specialty Toothbrushes," Maxill (March 28, 2015), https://web.archive.org/web/20150328010450/http://www.maxill.com/ca/products/toothbrushes/specialty-toothbrushes.html (attached hereto as Exhibit A); "Supermaxx Institution Toothbrush," Maxill (April 29, 2015), https://web.archive.org/web/20150429221051/http://www.maxill.com/ca/products/toothbrushes/specialty-toothbrushes/supermaxx-institutional-toothbrush.html (attached hereto as Exhibit B). This is over two years before the earliest effective filing date of the claims of the '940 Patent.

106. The Supermaxx toothbrush—the very product that Loops accuses of infringing the '940 Patent in this case—therefore anticipates the claims of the '940 Patent under AIA 35 U.S.C. § 102(a)(1).

107. As another example of the invalidity of the claims of the '940 Patent, Loops's Flexbrush toothbrush was in public use, on sale, and/or was otherwise known to the public before the December 26, 2017 earliest effective filing date of the '940 Patent.

108. Loops alleges in the Amended Complaint that the Flexbrush is "covered" by the Asserted Patents, including the '940 Patent. According to Loops, "Loops manufactures, markets, and sells oral care products, including ***products covered by the Asserted Patents such as the***

***Loops Flexbrush®***, to institutional and commercial customers throughout the United States." *See* Dkt. No. 24 at ¶ 6 (emphasis added).

109. Loops further admits in this litigation that the Flexbrush embodies the purported invention claimed in the '940 patent. According to Loops, "Loops asserts infringement of U.S. Patent Nos. 11,013,311 (the ''311 patent') and 10,334,940 (the ''940 patent')" and "Loops has commercialized ***its patented invention as the 'Flexbrush,' a novel flexible toothbrush***." *See* Dkt. No. 33 at 2 (emphasis added).

110. Accordingly, Loops admits that the Flexbrush toothbrush meets each and every limitation of the claims of the '940 Patent.

111. Additionally, Loops knew, or should have known, that Flexbrush was in public use, on sale, and/or was otherwise known to the public before December 26, 2017. For example, the Flexbrush toothbrush was available for purchase on Loops's website at least by July 2015. *See, e.g.*, "Loops Flexbrush Safety Toothbrush," Loops (July 7, 2015), https://web.archive.org/web/20150707183132/http://www.flossloops.com/Products_flexbrush.html (attached hereto as Exhibit C). This is over two years before the earliest effective filing date of the claims of the '940 Patent.

112. The Flexbrush toothbrush therefore anticipates the claims of the '940 Patent under AIA 35 U.S.C. § 102(a)(1).

113. As another example of the invalidity of the claims of the '940 Patent, even if the claims of the '940 Patent were entitled to their earliest possible effective filing date, the claims of the '940 Patent are still invalid as anticipated.

114. As explained above, the earliest possible effective filing date of the '940 Patent is November 27, 2006.

115. The first sale of Loops's Flexbrush was November 23, 2005. *See* Dkt. No. 33-5 at 38.

116. Based on Loops' own filings in this case, Loops admits that the first sale of Loops's Flexbrush was November 23, 2005. *See* Dkt. No. 33-5 at 38.

117. Thus, Flexbrush was first sold on November 23, 2005, which is more than one year before even the earliest possible effective filing date of the '940 Patent of November 27, 2006.

118. Accordingly, even if the '940 Patent was entitled to its earliest possible effective filing date, the claims of the '940 Patent are still invalid under pre-AIA 35 U.S.C. § 102(b).

119. Loops knew, or should have known, that the claims of the '940 Patent are invalid before filing this case against Maxill.

120. Had Loops conducted a diligent pre-suit investigation regarding its allegations that Maxill infringes the claims of the '940 Patent, it would have known that the claims of the '940 Patent are invalid based on at least the facts described above.

121. At a minimum, Loops is presently aware that the claims of the '940 Patent are invalid.

122. On April 3, 2026, counsel for Maxill sent a letter to Loops explaining the above facts related to the invalidity of the claims of the '940 Patent.

123. On April 17, 2026, counsel for Loops responded to Maxill's April 3, 2026 letter, acknowledging receipt of Maxill's letter and confirming Loops's awareness of the issues raised therein, including the above facts related to the invalidity of the claims of the '940 Patent.

124. As another example of the invalidity of the claims of the '940 Patent, the claims of the '940 Patent are invalid under 35 U.S.C. § 103 because the purported inventions therein

would have been obvious to a person of ordinary skill in the art at the time the claimed inventions were made, in view of the prior art, alone or in combination. Prior art relevant to obviousness includes, without limitation: (1) the 2004 and 2005 Maxill Oral Care Catalogues disclosing earlier versions of the Supermaxx toothbrush; (2) the OraLine Institutional Products disclosure; (3) Church (U.S. Patent No. 7,796,001); (4) Szczech (U.S. Patent No. 6,397,425); (5) Buhler (U.S. Patent Publication No. 2002/0136790); (6) Meyer II (U.S. Patent Publication No. 2003/0135943); (7) Kraemer (WO 01/96088); and (8) Roberts (WO 99/17915), each of which was identified in Maxill's October 12, 2018 Invalidity Contentions in the Washington Action and known to Loops during prosecution of the '940 Patent. The claimed features of the '940 Patent represent nothing more than the combination of known elements using known methods to achieve predictable results, and a person of ordinary skill in the art would have had reason to combine the prior art references with a reasonable expectation of success.

125. Accordingly, Maxill seeks a judgment declaring that the '940 Patent is invalid.

**<u>COUNTERCLAIM III:</u>**

**Unenforceability of U.S. Patent No. 11,013,311**

126. Maxill repeats and realleges each and every allegation set forth in the above paragraphs and incorporates them by reference herein.

127. In view of the facts as alleged above, there is an actual, substantial, immediate, and justiciable controversy between Maxill and Loops regarding whether Maxill infringes any valid and/or enforceable claim of the '311 Patent.

128. According to the face of the '311 Patent, Loops is the assignee of the '311 Patent.

129. Based on Loops's Amended Complaint (Dkt. No. 24), Loops claims to be the sole owner of the '311 Patent. *See* Dkt. No. 24 at ¶ 60.

130. On information and belief, Loops is responsible for deliberately withholding one or more material prior art references from the United States Patent and Trademark Office ("USPTO") during prosecution of the '311 Patent with the specific intent to deceive the USPTO, which renders the asserted claims of the '311 Patent unenforceable due to inequitable conduct.

131. On October 12, 2018—well before the application that issued as the '311 Patent was filed on July 1, 2019—Maxill served Loops with Invalidity Contentions ("Maxill's Invalidity Contentions") in the Washington Action involving the '285 Patent, which relates to the same alleged toothbrush technology as the '311 Patent. Maxill's Invalidity Contentions identified a multitude of prior art references that are related and material to the patentability of the claims of the '311 Patent. Loops was aware of these references by at least October 2018, yet failed to disclose many of these prior art references to the USPTO during prosecution of the '311 Patent.

132. For example, Maxill's Invalidity Contentions identified at least the following material prior art references: (1) the 2004 Maxill Oral Care Catalogue; (2) the 2005 Maxill Oral Care Catalogue; (3) the OraLine Institutional Products disclosure; (4) Church (US 7,796,001); (5) Szczech (US 6,397,425); (6) Buhler (US 2002/0136790); (7) Meyer II (US 2003/0135943); (8) Kraemer (WO 01/96088); and (9) Roberts (WO 99/17915). On information and belief, despite knowledge of these references, Loops did not disclose these references to the USPTO during prosecution of the '311 Patent.

133. Moreover, Maxill's Invalidity Contentions also identified a multitude of prior use and prior sale evidence. This evidence includes but is not limited to affidavits, photographs, shipping labels, invoices, reports, and images of product molds, including related to an earlier version of the Supermaxx toothbrush, demonstrating that the invention claimed in the '285 Patent was on sale and in public use before November 2005. On information and belief, Loops

failed to disclose any of this prior sale or prior use evidence to the USPTO during prosecution of the ’311 Patent.

134. On information and belief, at least the named inventor of the ’311 Patent, Steven L. Kayser, and the attorney(s) that prosecuted the ’311 Patent, including Timothy W. Fitzwilliam, were aware of the prior art cited in Maxill’s Invalidity Contentions. For example, some prior art references disclosed in Maxill’s Invalidity Contentions—such as Boucherie (US 5,609,890) and Velasquez (US 4,020,521)—were submitted to the USPTO during prosecution of the ’311 Patent. This indicates that Mr. Kayser and Mr. Fitzwilliam knew of the prior art disclosed in Maxill’s Invalidity Contentions and deliberately chose to disclose some, but not all, of the prior art references and evidence cited therein. Additionally, on information and belief, Mr. Kayser’s role at Loops and close involvement with Loops’ pending litigations against Maxill would also have provided him knowledge of the prior art disclosed in Maxill’s Invalidity Contentions.

135. The prior art disclosed in Maxill’s Invalidity Contentions is material to the patentability of the claims of the ’311 Patent. For example, the 2004 Maxill Oral Care Catalogue is a sales brochure that shows and describes products that were in public use and on sale to customers of Maxill in 2004. Among the products shown and described in the 2004 Maxill Oral Care Catalogue was an earlier version of the Supermaxx toothbrush that is accused of infringing the ’311 Patent in this case. To the extent that Loops contends the current version of the Supermaxx toothbrush infringes the claims of the ’311 Patent, prior art related to the public use and/or sale of an earlier version of the Supermaxx toothbrush would have been material to the patentability of at least the same claims of the ’311 Patent.

136. In connection with the prosecution of the application that ultimately led to the issuance of the ’311 Patent, Loops, Mr. Kayser, and/or Mr. Fitzwilliam knew or should have known of the duty of candor owed to the USPTO and the duty of disclosure imposed by 37 C.F.R. § 1.56 that requires disclosure of material information to the USPTO. During prosecution of the application that led to the issuance of the ’311 Patent, on information and belief, Loops failed to disclose many of the references disclosed in Maxill’s Invalidity Contentions to the USPTO. For example, on information and belief, none of the prior art references discussed above are identified on the face of the ’311 Patent in the “References Cited” section and were not identified in any of the Information Disclosure Statements submitted by Loops during prosecution of the ’311 Patent.

137. On information and belief, Loops, through one or more of the persons involved in the prosecution of the ’311 Patent, deliberately withheld the disclosure of these references during prosecution of the ’311 Patent with the specific intent to deceive the USPTO. For example, on information and belief, Loops’s deliberate withholding of the disclosure of the references disclosed in Maxill’s Invalidity Contentions was motivated by a desire to avoid claim rejections in light of the robust and material disclosure of these references and their substantial similarity to the purported inventions in the ’311 Patent, which was not discovered by the examiner during prosecution of the ’311 Patent.

138. On information and belief, Loops’s failure to submit any of the aforementioned patents, printed publications, or prior use/prior sale evidence during prosecution of the ’311 Patent constitutes inequitable conduct because, but for Loops’s lack of disclosure, the USPTO would not have issued the ’311 Patent.

139. Loops intended to deceive the USPTO because Loops knew of the prior art references and evidence of prior use and sale, it knew that the evidence was material, and yet made a deliberate decision to withhold all of this evidence from the USPTO. The specific intent to deceive is further supported by the following: (a) Loops selectively disclosed some of the prior art references identified in Maxill's Invalidity Contentions—such as Boucherie and Velasquez—while deliberately omitting others that were equally or more material, demonstrating that the omissions were not the result of oversight or ignorance but of a conscious, strategic decision; (b) the withheld references, particularly the 2004 and 2005 Maxill Oral Care Catalogues and the prior use and sale evidence of the Supermaxx toothbrush, directly anticipated the claimed features of the '311 Patent, making their omission particularly egregious; (c) no reasonable examiner would have issued the '311 Patent had these references been disclosed, as they are but-for material under the standard articulated in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011); and (d) the name inventor and prosecuting attorney were actively monitoring the Washington Action litigation during prosecution of the '311 Patent and had actual, contemporaneous knowledge of the withheld prior art.

140. In light of at least the foregoing, the '311 Patent is unenforceable due to inequitable conduct.

141. An actual case or controversy exists between Maxill and Loops concerning Maxill's alleged liability for infringement of the '311 Patent.

142. Maxill seeks a declaration of this Court that the '311 Patent is unenforceable due to inequitable conduct.

## <u>COUNTERCLAIM IV:</u>

**Unenforceability of U.S. Patent No. 10,334,940**

143. Maxill repeats and realleges each and every allegation set forth in the above paragraphs and incorporates them by reference herein.

144. In view of the facts as alleged above, there is an actual, substantial, immediate, and justiciable controversy between Maxill and Loops regarding whether Maxill infringes any valid and enforceable claim of the ’940 Patent.

145. According to the face of the ’940 Patent, Loops is the assignee of the ’940 Patent.

146. Based on Loops’s Amended Complaint (Dkt. No. 24), Loops claims to be the sole owner of the ’940 Patent. *See* Dkt. No. 24 at ¶ 71.

147. On information and belief, Loops is responsible for deliberately withholding one or more material prior art references from the USPTO during prosecution of the ’940 Patent with the specific intent to deceive the USPTO, which renders the asserted claims of the ’940 Patent unenforceable due to inequitable conduct.

148. On October 12, 2018—during prosecution of the application that issued as the ’940 Patent—Maxill served Loops with Invalidity Contentions (“Maxill’s Invalidity Contentions”) in the Washington Action involving the ’285 Patent, which relates to the same alleged toothbrush technology as the ’940 Patent. Maxill’s Invalidity Contentions identified a multitude of prior art references that are related and material to the patentability of the claims of the ’940 Patent. Loops was aware of these references by at least October 2018, yet failed to disclose many of these prior art references to the USPTO during prosecution of the ’940 Patent.

149. For example, Maxill’s Invalidity Contentions identified at least the following material prior art references: (1) the 2004 Maxill Oral Care Catalogue; (2) the 2005 Maxill Oral

Care Catalogue; (3) the OraLine Institutional Products disclosure; (4) Church (US 7,796,001); (5) Szczech (US 6,397,425); (6) Buhler (US 2002/0136790); (7) Meyer II (US 2003/0135943); (8) Kraemer (WO 01/96088); and (9) Roberts (WO 99/17915). On information and belief, despite knowledge of these references, Loops did not disclose these references to the USPTO during prosecution of the ’940 Patent.

150. Moreover, Maxill’s Invalidity Contentions also identified a multitude of prior use and prior sale evidence. This evidence includes but is not limited to affidavits, photographs, shipping labels, invoices, reports, and images of product molds, including related to an earlier version of the Supermaxx toothbrush, demonstrating that the invention claimed in the ’285 Patent was on sale and in public use before November 2005. On information and belief, Loops failed to disclose any of this prior sale or prior use evidence to the USPTO during prosecution of the ’940 Patent.

151. On information and belief, at least the named inventor of the ’940 Patent, Steven L. Kayser, and the attorney(s) that prosecuted the ’940 Patent, including Timothy W. Fitzwilliam, were aware of the prior art cited in Maxill’s Invalidity Contentions. For example, some prior art references disclosed in Maxill’s Invalidity Contentions—such as Boucherie (US 5,609,890) and Velasquez (US 4,020,521)—were submitted to the USPTO during prosecution of the ’311 Patent, which is the parent of the ’940 Patent. This indicates that Mr. Kayser and Mr. Fitzwilliam knew of the prior art disclosed in Maxill’s Invalidity Contentions and deliberately chose to disclose some, but not all, of the prior art references and evidence cited therein. Additionally, on information and belief, Mr. Kayser’s role at Loops and close involvement with Loops’s pending litigations against Maxill would also have provided him knowledge of the prior art disclosed in Maxill’s Invalidity Contentions.

152. The prior art disclosed in Maxill's Invalidity Contentions is material to the patentability of the claims of the '940 Patent. For example, the 2004 Maxill Oral Care Catalogue is a sales brochure that shows and describes products that were in public use and on sale to customers of Maxill in 2004. Among the products shown and described in the 2004 Maxill Oral Care Catalogue was an earlier version of the Supermaxx toothbrush that is accused of infringing the '940 Patent in this case. To the extent that Loops contends the current version of the Supermaxx toothbrush infringes the claims of the '940 Patent, prior art related to the public use and/or sale of an earlier version of the Supermaxx toothbrush would have been material to the patentability of at least the same claims of the '940 Patent.

153. In connection with the prosecution of the application that ultimately led to the issuance of the '940 Patent, Loops, Mr. Kayser, and/or Mr. Fitzwilliam knew or should have known of the duty of candor owed to the USPTO and the duty of disclosure imposed by 37 C.F.R. § 1.56 that requires disclosure of material information to the USPTO. During prosecution of the application that led to the issuance of the '940 Patent, on information and belief, Loops failed to disclose many of the references disclosed in Maxill's Invalidity Contentions to the USPTO. For example, on information and belief, none of the prior art references discussed above are identified on the face of the '940 Patent in the "References Cited" section and were not identified in any of the Information Disclosure Statements submitted by Loops during prosecution of the '940 Patent.

154. On information and belief, Loops, through one or more of the persons involved in the prosecution of the '940 Patent, deliberately withheld the disclosure of these references during prosecution of the '940 Patent with the specific intent to deceive the USPTO. For example, on information and belief, Loops's deliberate withholding of the disclosure of the references

disclosed in Maxill's Invalidity Contentions was motivated by a desire to avoid claim rejections in light of the robust and material disclosure of these references and their substantial similarity to the purported inventions in the '940 Patent, which was not discovered by the examiner during prosecution of the '940 Patent.

155. On information and belief, Loops's failure to submit any of the aforementioned patents, printed publications, or prior use/prior sale evidence during prosecution of the '940 Patent constitutes inequitable conduct because, but for Loops' lack of disclosure, the USPTO would not have issued the '940 Patent.

156. Loops intended to deceive the USPTO because Loops knew of the prior art references and evidence of prior use and sale, it knew that the evidence was material, and yet made a deliberate decision to withhold all of this evidence from the USPTO. The specific intent to deceive further supported by the following: (a) Loops selectively disclosed some of the prior art references identified in Maxill's Invalidity Contentions—such as Boucherie and Valesquez—while deliberately omitting others that were equally or more material, demonstrating that the omissions were not the result of oversight but of a conscious, strategic decision; (b) on information and belief, Maxill's Invalidity Contentions were served on Loops on October 18, 2018, during the pendency of the application that issued as the '940 Patent; (c) the withheld references, particularly the 2004 and 2005 Maxill Oral Care Catalogues and the prior use and sale evidence of the Supermaxx toothbrush, directly anticipated the claimed features of the '940 Patent, making their omission particularly egregious; (d) no reasonable examiner would have issued the '940 Patent had these references been disclosed, as they are but-for material under *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011); and (e) the named inventor and prosecuting attorney had actual, contemporaneous knowledge of the withheld prior

art through their direct involvement in the Washington Action during the prosecution of the ’940 Patent.

157. In light of at least the foregoing, the ’940 Patent is unenforceable due to inequitable conduct.

158. An actual case or controversy exists between Maxill and Loops concerning Maxill’s alleged liability for infringement of the ’940 Patent.

159. Maxill seeks a declaration of this Court that the ’940 Patent is unenforceable due to inequitable conduct.

## COUNTERCLAIM V:

### Noninfringement of U.S. Patent No. 11,013,311

160. Maxill repeats and realleges each and every allegation set forth in the above paragraphs and incorporates them by reference herein.

161. In view of the facts as alleged above, there is an actual, substantial, immediate, and justiciable controversy between Maxill and Loops regarding whether Maxill infringes any valid and/or enforceable claim of the ’311 Patent.

162. According to the face of the ’311 Patent, Loops is the assignee of the ’311 Patent.

163. Based on Loops’s Amended Complaint (Dkt. No. 24), Loops claims to be the sole owner of the ’311 Patent. *See* Dkt. No. 24 at ¶ 60.

164. On information and belief, Maxill does not infringe any valid and enforceable claim of the ’311 Patent. Additionally, to the extent any claims of the ’311 Patent are construed to cover the Supermaxx toothbrush accused of infringement by Loops in this case, the claims of the ’311 Patent are invalid as a matter of law for failure to comply with one or more of the conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq*., including 35 U.S.C. § 102.

165. As explained above, the earliest effective filing date to which the claims of the ’311 Patent are entitled is July 1, 2019.

166. Further, as explained above, products which are currently manufactured and sold by Maxill and which have been accused of infringing the ’311 Patent are the same as, or substantially the same as, those manufactured and sold by Maxill since before the priority date of the ’311 Patent.

167. To the extent any products which Maxill currently manufactures and/or sells read on the claims of the ’311 Patent, any such claims are invalid pursuant to 35 U.S.C. § 102.

168. Maxill seeks a declaration of this Court that it has not infringed and does not infringe, either directly or by any other means, literally or under the doctrine of equivalents, any valid and enforceable claim of the ’311 Patent.

## COUNTERCLAIM VI:

### Noninfringement of U.S. Patent No. 10,334,940

169. Maxill repeats and realleges each and every allegation set forth in the above paragraphs and incorporates them by reference herein.

170. In view of the facts as alleged above, there is an actual, substantial, immediate, and justiciable controversy between Maxill and Loops regarding whether Maxill infringes any valid and enforceable claim of the ’940 Patent.

171. According to the face of the ’940 Patent, Loops is the assignee of the ’940 Patent.

172. Based on Loops’s Amended Complaint (Dkt. No. 24), Loops claims to be the sole owner of the ’940 Patent. *See* Dkt. No. 24 at ¶ 71.

173. On information and belief, Maxill does not infringe any valid and enforceable claim of the ’940 Patent. Additionally, to the extent any claims of the ’940 Patent are construed

to cover the Supermaxx toothbrush accused of infringement by Loops in this case, the claims of the ’940 Patent are invalid as a matter of law for failure to comply with one or more of the conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq*., including 35 U.S.C. § 102.

174. As explained above, the earliest effective filing date to which the claims of the ’940 Patent are entitled is December 26, 2017.

175. Further, as explained above, products which are currently manufactured and sold by Maxill and which have been accused of infringing the ’940 Patent are the same as, or substantially the same as, those manufactured and sold by Maxill since before the priority date of the ’940 Patent.

176. To the extent any products which Maxill currently manufactures and/or sells read on the claims of the ’940 Patent, any such claims are invalid pursuant to 35 U.S.C. § 102.

177. Maxill seeks a declaration of this Court that it has not infringed and does not infringe, either directly or by any other means, literally or under the doctrine of equivalents, any valid and enforceable claim of the ’940 Patent.

## COUNTERCLAIM VII:

### Exceptional Case Under 35 U.S.C. § 285

178. Maxill repeats and realleges each and every allegation set forth in the above paragraphs and incorporates them by reference herein.

179. This is an exceptional case under 35 U.S.C. § 285 entitling Maxill to an award of its reasonable attorneys’ fees, expenses, and costs. Loops has pursued this litigation in an objectively unreasonable manner. Loops commenced this action despite knowing, or being willfully blind to the fact, that the claims of the ’311 and ’940 Patents are invalid—a conclusion compelled by Loops’s own admissions and publicly available prior art. Specifically: (a) Loops

has admitted in its own briefing in this very case that the Asserted Patents are continuation-in-part that add “new matter not present in the parent application,” thereby conceding that the claims cannot claim priority to any filing date earlier than July 1, 2019 (for the ’311 Patent) and December 26, 2017 (for the ’940 Patent); (b) Loops has admitted that the Supermaxx toothbrush was on sale in Canada “in or around 2016 or 2017”—before both effective filing dates--and that the Supermaxx meets each and every limitation of the asserted claims; (c) Loops has admitted that its own Flexbrush® product was on sale by July 2015 and embodies the claimed invention, yet was on the market years before the effective filing dates of both Asserted Patents; (d) Loops voluntarily dismissed a virtually identical action in Southern District of California (Case No. 3:25-cv-01814) after Maxill moved to transfer it to the Western District of Washington, and then promptly filed this action in the Northern District of Ohio, evidencing a pattern of forum manipulation designed to burden Maxill rather than to advance legitimate patent rights; and (e) despite receiving Maxill’s April 3, 2026 letter setting forth these invalidity grounds with specificity, Loops continued to press its claims. The totality of these circumstances makes this an exceptional case warranting an award of attorneys’ fees to Maxill pursuant to 35 U.S.C. § 285.

180. Accordingly, Maxill seeks a judgement declaring this an exceptional case under 35 U.S.C. § 285, and an award of all attorneys’ fees, expenses, and costs Maxill has incurred in connection with this action.

**PRAYER FOR RELIEF**

WHEREFORE, Maxill respectfully requests that judgment be entered in its favor and prays that the Court grant the following relief:

1. A judgment declaring that Maxill has not infringed and is not infringing, either directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable

claims of the ’311 Patent, and declaring that the manufacture, use, sale, offer for sale, and/or importation of Maxill’s Supermaxx toothbrush does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claims of the ’311 Patent;

2. A judgment declaring that Maxill has not infringed and is not infringing, either directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claims of the ’940 Patent, and declaring that the manufacture, use, sale, offer for sale, and/or importation of Maxill’s Supermaxx toothbrush does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claims of the ’940 Patent;

3. A judgment that Loops and each of its officers, directors, agents, counsel, servants, employees, and all persons in active concert or participation with any of them, be restrained and enjoined from alleging, representing, or otherwise stating that Maxill or the manufacture, importation, use or sale of Maxill’s Supermaxx toothbrush infringes any valid and enforceable claims of the ’311 Patent, or from instituting or initiating any action or proceeding alleging infringement of the ’311 Patent against Maxill or customers, manufacturers, users, importers, or sellers of Maxill’s Supermaxx toothbrush;

4. A judgment that Loops and each of its officers, directors, agents, counsel, servants, employees, and all persons in active concert or participation with any of them, be restrained and enjoined from alleging, representing, or otherwise stating that Maxill or the manufacture, importation, use or sale of Maxill’s Supermaxx toothbrush infringes any valid and enforceable claims of the ’940 Patent, or from instituting or initiating any action or proceeding alleging infringement of the ’940 Patent against Maxill or customers, manufacturers, users, importers, or sellers of Maxill’s Supermaxx toothbrush;

5. A declaration that the claims of the ’311 Patent are invalid;

6. A declaration that the claims of the ’940 Patent are invalid;

7. A declaration that the claims of the ’311 Patent are unenforceable;

8. A declaration that the claims of the ’940 Patent are unenforceable;

9. A judgment declaring that Maxill is the prevailing party and that this is an exceptional case under 35 U.S.C. § 285 and awarding Maxill its reasonable attorneys’ fees, expenses, and costs in connection with this case; and

10. A judgment awarding Maxill such other relief as the Court may deem just and proper.

**JURY DEMAND**

Maxill hereby demands a jury trial on all issues and claims so triable.

Dated: May 20, 2026

Respectfully submitted,

*/s/ Andrew W. Alexander*
Mark W. McDougall (#0080698)
mmcdougall@calfee.com
Andrew W. Alexander (#0091167)
aalexander@calfee.com
CALFEE HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
Telephone: (216) 622-8200
Facsimile: (216) 241-0816

Boyoon Choi (admitted *pro hac vice*)
b.choi@ccl.law
Choi Capital Law
Ste. 2246
1420 Fifth Ave.
Seattle, WA 98101
Telephone: (206) 588-0463
Facsimile: (206) 971-1650

*Attorneys for Defendants Maxill, Inc., an Ohio corporation, Maxill Realty, Inc., Maxill Inc., a Canadian corporation, and John Dennie Shaw*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been filed electronically on May 20, 2026 with the United States District Court for the Northern District of Ohio. Notice of the filing will be sent by email to all counsel by operation of the Court's electronic filing system and all parties may access this filing through that system.

/s/ *Andrew W. Alexander*
*One of the attorneys for Defendants Maxill Inc., Maxill, Inc., an Ohio corporation, Maxill Realty, Inc., Maxill Inc., a Canadian corporation, and John Dennie Shaw*