**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Loops, L.L.C., | ) | |
| | ) | Case No. 4:25-cv-02346-BYP |
| Plaintiff, | ) | |
| | ) | Judge Benita Y. Pearson |
| vs. | ) | |
| | ) | |
| Maxill Inc., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**Loops' Memorandum in Support of**
**<u>Motion to Dismiss Remaining Counterclaims (I-IV and VII)</u>**

Plaintiff Loops, L.L.C. dismissed with prejudice its claims that Maxill's Supermaxx toothbrush infringes U.S. Patent Nos. 11,013,311 and 10,334,940 (the "'311 and '940 patents," respectively)—the only patents at issue in this case. Maxill then dismissed its corresponding noninfringement Counterclaims V and VI. What remains of the patent case are four declaratory-judgment counterclaims asking this Court to hold those now-dismissed patents invalid or unenforceable, and a fifth "cause of action" that seeks attorneys' fees under 35 U.S.C. § 285.

The Court should decline to decide Counterclaims I–IV. Jurisdiction is not the issue. The Declaratory Judgment Act is discretionary. When patent infringement claims are dismissed with prejudice, a request for a declaration of patent invalidity or unenforceability is warranted only if it would confer some additional benefit the existing dismissal does not. Maxill cannot make that showing. The with-prejudice dismissal, reinforced by res judicata and the *Kessler* doctrine, ends any suit on the '311 or '940 patents against the Supermaxx toothbrush. The existence of patents related to the '311 and '940 patents—for which Loops

has not alleged infringement—is no reason to try the validity or enforceability of two patents that have been adjudicated with finality and for which Maxill faces no present danger.

The Court also should dismiss Counterclaim VII, which seeks attorneys' fees under 35 U.S.C. § 285. Courts agree that §285 is a fee-shifting statute that allows a party to *move* for fees after judgment; it is not a cause of action. Maxill may move for fees under § 285 at the appropriate time if it contends this case is "exceptional." It has neither the right nor the need to recast that intent to seek fees into a standalone cause of action to sustain a counterclaim.

Loops dismissed the infringement claims to focus on its fraudulent-transfer claims. That simplifies the case. It should not be undone by four declaratory-judgment counts that would force the Court and the parties through the full patent gauntlet—claim construction, invalidity and unenforceability contentions, expert disclosures and discovery, summary judgment, *Daubert* practice, trial, and appeal. That is a needless expedition: it attacks two patents that Loops no longer asserts and that no longer threaten the Supermaxx toothbrush. Discretion under the Declaratory Judgment Act exists to avoid such waste. The Court should exercise it, dismiss Counterclaims I–IV without prejudice, dismiss Counterclaim VII as a non-claim, and try the fraudulent-transfer claims that remain.

## **<u>Statement of Facts</u>**

### I. The Parties

Loops is a Delaware limited liability company with its principal place of business in Washington state. (Am. Compl. ¶ 6; Countercl. ¶ 9.)

The answering defendants—and the parties who assert the counterclaims at issue—are Maxill, Inc., a Canadian corporation ("Maxill Canada"); Maxill, Inc., an Ohio corporation ("Maxill Ohio"); Maxill Realty, Inc. ("Maxill Realty"); and John Dennie Shaw ("Shaw"). They

refer to themselves collectively as "Maxill," and Loops does so here as well. (Answer at 1; Countercl. ¶¶ 5-8.)

Maxill Canada is organized under the laws of Ontario, with its principal place of business in Ontario. It manufactures the Supermaxx toothbrush—the product Loops had accused of infringing the ’311 and ’940 patents—and has exported the toothbrushes to Maxill Ohio for distribution in the U.S. (Am. Compl. ¶ 7; Answer ¶ 7.)

Maxill Ohio is an Ohio corporation with its principal place of business in Cortland, Ohio. It is a U.S. subsidiary of Maxill Canada. (Answer ¶ 8.)

Maxill Realty is an Ohio corporation with its principal place of business in Cortland, Ohio—the same location as Maxill Ohio. Maxill Realty owns a warehouse in Cortland, Ohio, that stores Maxill products. (Am. Compl. ¶ 9; Answer ¶ 9.)

Shaw is a Canadian citizen and a resident of Ontario, Canada. He is President of Maxill Canada and the founder and President of Maxill Ohio, and he owns a controlling interest in Maxill Canada. (Am. Compl. ¶¶ 11–12; Answer ¶¶ 11–12.)

BaderCap Pty Ltd ("BaderCap")[1] is a business entity organized under the laws of a presently unknown foreign jurisdiction with its principal place of business in St. Thomas, Ontario. (Am. Compl. ¶ 10.)

[1] Loops served BaderCap with the original summons and complaint (ECF 12), and BaderCap failed to answer and was in default when Loops amended its complaint. With leave of Court, Loops is in the process of obtaining discovery about BaderCap to assist in effectuating service of the new summons and amended complaint. (*See* ECF 47.)

## II. Procedural History

Loops sued Maxill for infringement of the ’311 and ’940 patents. (Am. Compl. ¶¶ 25-28.) Loops also sued Maxill Realty, BaderCap, and Shaw for violating Ohio’s Fraudulent Transfer Act. (Am. Compl. ¶¶ 81-97.)

Maxill answered and pleaded seven counterclaims. (ECF 39.) Counterclaims I and II seek declarations that the ’311 and ’940 patents are invalid. Counterclaims III and IV seek declarations that those same two patents are unenforceable. Counterclaims V and VI seek declarations of noninfringement of those same two patents. Counterclaim VII seeks a finding that this case is exceptional under 35 U.S.C. § 285 and an award of fees. (Countercls. I–VII, ECF 39.)

Maxill’s prayer for relief matches the narrowness of those counts. It asks this Court to declare *only* the ’311 and ’940 patents invalid and unenforceable, to declare that the Supermaxx toothbrush does not infringe only those two patents, and to enjoin Loops from asserting those two patents against Maxill or the Supermaxx toothbrush. The counterclaim does not seek any declaration of invalidity or unenforceability as to any other Loops’ patent. (Countercl. Prayer for Relief ¶¶ 1–8, ECF 39 at PageID 588-590.)

On August 10, 2026, the Court granted Loops’ motion to voluntarily dismiss both of its patent infringement claims with prejudice. (ECF 50.) Loops’ fraudulent transfer claim remains pending.

On September 3, 2026, the Court granted Maxill’s motion to voluntarily dismiss Counterclaims V and VI without prejudice. (ECF 59.)

The parties conferred about a stipulated dismissal of Counterclaims I–IV. They could not agree. Maxill demanded a covenant not to sue that would have reached Loops patents

this action never put in issue, including U.S. Patent No. 8,448,285 (the "'285 patent"). That patent is the subject of a separate, earlier action in the Western District of Washington, *Maxill Inc. v. Loops, LLC*, No. 2:17-cv-01825-TSZ (W.D. Wash.), which has been stayed since 2021.[2] This motion followed.

## **Law and Argument**

### I. The Court should decline to decide Maxill's patent invalidity and unenforceability Counterclaims I-IV.

#### A. Courts have declined to decide declaratory judgment counterclaims in cases with less compelling facts than the present.

The Federal Circuit has held that dismissal of patent infringement claims does not strip a patent invalidity counterclaim of subject matter jurisdiction. *SSI Technologies, LLC v. Dongguan Zhengyang Electronic Mechanical Ltd*., 59 F.4th 1328, 1338 (Fed. Cir. 2023). Because of that binding law, Loops does not contend that the Court lacks subject matter jurisdiction over Counterclaims I-IV. Instead, Loops urges this Court to exercise its *discretion* to dismiss the counterclaims.

The Declaratory Judgment Act is permissive. It says that a district court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). That language "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants," even when the suit otherwise satisfies jurisdictional prerequisites. *Wilton v. Seven Falls Co*., 515 U.S. 277, 282, 286 (1995). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id*. at 288.

---

[2] Loops provides more of an explanation of the Washington action in ECF 33 at PageID 411-412.

The Federal Circuit applies that discretion to patent defense counterclaims. A district court "faced with an invalidity counterclaim challenging a patent that it concludes was not infringed may either hear the claim or dismiss it without prejudice." *SSI*, 59 F.4th at 1338-39 (quoting *Liquid Dynamics Corp. v. Vaughn Co*., 355 F.3d 1361, 1371 (Fed. Cir. 2004)).

The inquiry is practical, not formal. It is a "sufficient reason to decline jurisdiction" when the accused infringer "has not shown how a judgment of invalidity would provide any additional benefit." *AstraZeneca LP v. Breath Ltd*., 542 F. App'x 971, 982 (Fed. Cir. 2013) (emphasis added). In *SSI*, the Federal Circuit affirmed dismissal without prejudice of an invalidity counterclaim where "[n]othing in [the accused infringer's] complaint or any of the parties' briefing suggest[ed] that [it] face[d] any risk of future prosecution under" the patent that had been held not infringed. *SSI*, 59 F.4th at 1339 (citation omitted).

That discretion to decline is greatest early in a case. *Flexuspine* observed that a district court's room to dismiss "may be more limited" after invalidity has been tried or substantially litigated, because the sunk cost of a validity determination has already been paid. *Flexuspine, Inc. v. Globus Med., Inc.*, 879 F.3d 1369, 1376 (Fed. Cir. 2018). The converse follows. Where, as here, little or nothing has been invested in invalidity or unenforceability, the scales tip more decisively in favor of dismissal.

The Federal Circuit has affirmed dismissal entered much later than the stage of this case, including after summary judgment or trial. *See, e.g., Flexuspine*, 879 F.3d at 1372, 1376 (after jury trial); *AstraZeneca*, 542 F. App'x at 975, 982 (after bench trial); *SSI*, 59 F.4th at 1339 (after summary judgment); *Little Giant Ladder Sys., LLC v. Tricam Indus., Inc.*, No. 20-cv-2497, 2024 WL 3014862 (D. Minn. June 14, 2024) (after summary judgment); *PayRange, Inc.*

*v. KioSoft Technologies, LLC*, No. 1:20-cv-20970, 2023 WL 6310230 (S.D. Fla. June 27, 2023) (after summary judgment).

The *Van Der Lely* case is analogous. *C. Van Der Lely N.V. v. F.LLi Maschio S.n.c.*, 561 F. Supp. 16 (S.D. Ohio 1982). There, plaintiff voluntarily dismissed four of eight patent infringement claims with prejudice. The district court dismissed the corresponding invalidity counterclaims. Its lead rationale—that no jurisdiction existed—has since been overruled and does not survive. Its alternative holding does: the court declined jurisdiction because a declaration would serve "no useful purpose" and the defendant had not shown a need for further relief. *Id.* at 25.

Loops asks the Court to do what all of these courts did on less compelling grounds than are present here.

**B. Maxill cannot show an "additional benefit" to litigating the invalidity and unenforceability counterclaims to judgment.**

Maxill cannot show any "additional benefit" to litigate the invalidity and unenforceability counterclaims to judgment, let alone a substantial enough benefit to justify the high cost, time, and effort to litigate those discretionary claims to final judgment.

**1. The with-prejudice dismissal ends any suit on the '311 and '940 patents against the Supermaxx toothbrush.**

A dismissal with prejudice is an adjudication on the merits. *In re PersonalWeb Technologies LLC*, 961 F.3d 1365, 1379 (Fed. Cir. 2020). The with-prejudice dismissal bars Loops from suing Maxill again on those same patents against the same accused product. *Id.* at 1376-79 (with-prejudice dismissal bars future lawsuits on same patent against same product) (citing *Kessler v. Eldred*, 206 U.S. 285 (1907)); *Hemphill v. Kimberly-Clark Corp.*, 335 F. App'x 964, 965 (Fed. Cir. 2008) (judgment on the merits on *some* patent claims bars future

lawsuit on *different* claims of same patent against same product); *Trustees of Boston Univ. v. Kingbright Elect. Co.*, 427 F. Supp. 3d 246, 252 (D. Mass. 2019) (same).

The *Kessler* doctrine provides further protection: it attaches a "limited trade right" to the product itself. *PersonalWeb*, 961 F.3d at 1378-79. The *Kessler* trade right attaches to Maxill's Supermaxx toothbrush and protects the product against future infringement lawsuits on those same patents, whether the suit is aimed at the manufacturer or at its customers. *Id.*

Maxill has not identified a planned redesign of the Supermaxx toothbrush, a new product in the pipeline, or any other products that it says could be accused under the '311 or '940 patents. Fear of a suit on products "not yet in existence" is speculative, not an actual controversy, and something that could be addressed in the future if it occurred. *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999); *accord Van Der Lely*, 561 F. Supp. at 23–24 (whether the defendant "may at some time in the future" introduce a different product the plaintiff might accuse is "speculative at best," and if it happens the issue "can be put directly at issue at that time").

Thus, as in *SSI*, Maxill does not "face[] any risk of future prosecution under either of the patents-in-suit, so there is no need for the court to determine whether the patents are invalid." *SSI*, 59 F.4th at 1339.

**2. The early stage of this case and the lack of appeal possibility further favor dismissal.**

The early stage of this case is far more favorable for dismissal than those cited above, where dismissals occurred after summary judgment or trial. The patent aspect of this case has not reached claim construction, invalidity or inequitable conduct contentions, fact discovery, expert discovery, summary judgment, or trial.

In *Flexuspine*, not only had the parties fully litigated invalidity, they tried it to a jury. The jury returned a verdict of no infringement and invalidity. 879 F.3d at 1372. The district court sent the jury back to correctly complete the verdict form because they were not supposed to decide invalidity if they found "no" infringement. Despite that, the district court refused to adjudicate invalidity. The Federal Circuit affirmed. *Id.* at 1376. Similarly, in *AstraZeneca*, the court conducted a bench trial on infringement and invalidity, found no infringement, and declined to rule on invalidity. 542 F. App'x at 975. Again, the Federal Circuit affirmed. *Id.* at 982. If "practicality and wise judicial administration" favored dismissal in *Flexuspine* and *AstraZeneca*, they favor dismissal here many times over.

A classic argument for keeping an invalidity counterclaim alive after a noninfringement judgment is the risk that the noninfringement judgment may be reversed and require invalidity to be decided after remand. That's what happened in *SSI*. The Federal Circuit vacated the dismissal of the invalidity counterclaim on the '038 patent because it reversed noninfringement of that patent; it affirmed the dismissal on the '153 patent because noninfringement of that patent was affirmed. 59 F.4th at 1339. That remand risk does not exist here. Loops obtained a *voluntary* with-prejudice dismissal of its own infringement claims. Those claims cannot come back on appeal. A declaratory judgment on invalidity or enforceability is therefore not a hedge against a revived infringement case. It is litigation on complex and expensive defenses that this Court need not decide.

## II. Maxill's opposition to dismissal does not provide the "additional benefit" to justify proceeding on the invalidity and unenforceability counterclaims.

Loops conferred with Maxill before filing this motion, as the Court's case-management order requires. Maxill would not consent to the dismissal, and the grounds it identified in opposition do not justify its declaratory judgment counterclaims.[3]

### A. A covenant not to sue is not required for a *discretionary* dismissal.

Maxill responded that the counterclaims should remain because Loops has not issued a covenant not to sue. But a covenant not to sue is only required to remove subject matter jurisdiction; it's not required to obtain a discretionary dismissal, which is what Loops seeks. Indeed, covenants not to sue were not required for dismissal in any of the cases cited above. (*See supra* pp. 6-7.) What was missing in those cases is also missing here: an additional benefit.

### B. The validity or enforceability of patents that Maxill did not plead cannot keep Counterclaims I–IV alive.

Maxill says Loops "has issued patents and pending applications in the same patent family" that are "substantially similar" to the '311 and '940 patents and "infected by the same inequitable conduct." (Ex. A.) It cites U.S. Patent No. 12,064,028 (the "'028 patent") as an example, and it says there is "a live controversy with respect to the unenforceability of the asserted patents so long as the covenant not to sue is not broad enough to cover any infected family members." (*Id.*) It also says its fee demand under 35 U.S.C. § 285 independently supports the unenforceability counterclaims under *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1242–43 (Fed. Cir. 2008).

[3] The conferral emails between the parties are attached as Ex. A.

But Maxill faces a dispositive problem: the unenforceability of other patents or applications is not something Maxill's pleading asks this Court to adjudicate. Counterclaims I–IV and the prayer for relief seek declarations of invalidity and unenforceability ***only*** as to the '311 and '940 patents. (Countercls. I–IV; Prayer for Relief ¶¶ 5–8.) For example, Maxill prays that the court issue a "declaration that the claims of the '311 Patent are unenforceable," and that the "claims of the '940 Patent are unenforceable." (Prayer for Relief ¶¶ 7, 8.) Nowhere does its pleading even mention the '028 patent or any member of the "patent family," let alone seek declarations of invalidity or unenforceability against them. This is *ex post facto* rationalization.

Courts have rejected this exact move: keeping a declaratory judgment counterclaim in this case to shadow-box a related patent that is not in this case. In *Little Giant*, the accused infringer asked the court to decide invalidity of the patent-in-suit because the patentee had obtained a new related patent and had accused the same products of infringing it. The court dismissed. The question was whether the defendant faced a "current threat of liability arising from the patent-in-suit in this case." *Little Giant Ladder Sys., LLC v. Tricam Indus., Inc.*, No. 20-cv-2497, 2024 WL 3014862, at *2 (D. Minn. June 14, 2024) (emphasis added). Maxill faces no threat on the '311 or the '940. Maxill also faces no present risk relating to the '028 patent or any other related patents because Loops has not alleged infringement of those patents.[4] If a patent owner *threatening* a related patent was not enough to carry an invalidity counterclaim in *Little Giant*, then the mere *existence* of related patents—for which Loops has *not* alleged infringement—cannot justify such a counterclaim either.

[4] While Loops has sued for infringement of the related '285 patent in Washington federal court, Maxill can litigate its infringement defenses against that patent once the stay is lifted in that case.

*Monsanto* stands for the uncontroversial proposition that a court may retain jurisdiction to decide fees after the patent claims are gone. 514 F.3d at 1242–43. No one disputes that. But that legal truth does not convert a fee motion under 35 U.S.C. § 285 into a cause of action that requires the court to proceed on an odyssey of invalidity and unenforceability contentions, claim construction, discovery, expert phase, motion practice, and trial of invalidity or unenforceability on two dismissed patents, or on family members that Maxill's pleading never named and Loops has not asserted.

**III. Counterclaim VII is not a cause of action.**

Courts unanimously agree that "an assertion of an 'exceptional case' under 35 U.S.C. § 285 is not a separate cause of action." *InteraXon Inc. v. NeuroTek, LLC*, No. 15-cv-05290, 2017 WL 24721, at *1 (N.D. Cal. Jan. 3, 2017) (citing cases); *accord Elan Pharmaceuticals, LLC v. Sexton*, 421 F. Supp. 3d 1119, 1126 (D. Kan. 2019) (citing cases). "Therefore, [a party] should not be permitted to include a separate count based on exceptional case, or the allegations underlying that nonexistent cause of action." *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-cv-5023, 2010 WL 1257803, at *3 (E.D.N.Y. Mar. 26, 2010) ("The Court is aware of no precedent that has defined an assertion of 'exceptional case' as a separate cause of action").

Thus, courts will dismiss a counterclaim that asserts "Exceptional case under 35 U.S.C. § 285" as a cause of action, but allow the counterclaimant to move for fees under that statute at the appropriate time, typically after judgment. *See, e.g.*, *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 644-45 (S.D.N.Y. 2018) (dismissing counterclaim for attorneys' fees under § 285). Likewise, courts will deny as futile a motion to amend a pleading to assert § 285 as a separate cause of action. *See, e.g.*, *InteraXon*, 2017 WL 24721, at *2.

Maxill pleaded Counterclaim VII as a standalone cause of action for "Exceptional case under 35 U.S.C. § 285." (Countercl. VII; Prayer for Relief ¶ 9.) Again, neither § 285 nor the caselaw interpreting it allows that. The Court should dismiss Counterclaim VII and view it as what it is: a statement that Maxill intends to move for fees, which belongs in the prayer of its answer, not as an independent cause of action in a counterclaim.

**Conclusion**

The Court should dismiss Counterclaims I-IV without prejudice and dismiss Counterclaim VII with prejudice as a count, but without prejudice to a later § 285 motion.

Respectfully submitted,

Dated: September 29, 2026

s/ Matthew J. Cavanagh

David B. Cupar (0071622)
Matthew J. Cavanagh (0079522)
McDONALD HOPKINS LLC
600 Superior Ave., East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

and

David M. Kohn (pro hac vice)
Zachary S. Tedford (pro hac vice)
LEWIS KOHN & WALKER LLP
17085 Via Del Campo
San Diego, CA 92127
t 858.436.1332 | f 858.436.1349
dkohn@lewiskohn.com
ztedford@lewiskohn.com

*Counsel for Loops L.L.C.*

## Certificate of Compliance with L.R. 7.1(f)

I hereby certify that this case is assigned to the standard track and adheres to the page limitations set forth in L.R. 7.1(f) of 20 pages.

s/ Matthew J. Cavanagh
*Counsel for Plaintiff*