**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Loops, L.L.C., Plaintiff, vs. Maxill Inc., *et al.*, Defendants. | ) ) ) ) ) ) ) ) ) | Case No. 4:25-cv-02346-BYP<br>Judge Benita Y. Pearson<br>[*Filed Concurrently with Declaration of Zachary S. Tedford*] |

**<u>Plaintiff Loops, L.L.C.'s Status Report and Request for LR 37.1 Telephone Conference</u>**

Plaintiff Loops, L.L.C. ("Loops") submits this status report pursuant to the Court's July 30, 2026 Order (the "Order") (ECF No. 47) and requests a telephone conference under LR 37.1 to address Defendant John Dennie Shaw's ("Shaw") obstruction of the limited discovery authorized by that Order. In his written discovery responses and at his September 24, 2026 deposition, Shaw refused to disclose basic contact information and communications concerning Defendant BaderCap Pty Ltd. ("BaderCap") that he has admitted possessing, despite the stipulated protective order entered in this action and Loops' express offer to designate his testimony confidential. His counsel promised post-deposition supplementation but has neither supplied it nor responded to Loops' subsequent meet and confer request. Loops has served the authorized written discovery, examined Shaw, investigated the questionable addresses he supplied for BaderCap, and explored overseas service of that entity. Shaw's deliberate withholding of known, responsive, relevant information has frustrated Loops' efforts to perfect service on BaderCap and/or pursue default as contemplated by the Order.

////

////

## I. Shaw Has Withheld Information Within the Authorized Scope of the Order Despite the Stipulated Protective Order

The Order authorized limited written discovery requests concerning BaderCap's owners, operations, relationship with Shaw, and how Loops may perfect service on that entity. ECF No. 47, p. 2. It also authorized a limited deposition of Shaw concerning information he may have about BaderCap and his relationship with that entity, as well as how Loops may perfect service. *Id.* Loops conducted the authorized discovery within the 60-day period set forth in the Order. Shaw obstructed that discovery by providing deficient written responses and repeatedly refusing during his deposition to disclose responsive information about BaderCap, including basic contact information he admitted possessing.

On August 14, 2026, Loops served interrogatories, document requests, and requests for admission on Shaw (the "Limited Discovery Requests"). Declaration of Zachary S. Tedford ("Tedford Decl.") ¶ 2. On September 14, Shaw served deficient objections and responses. Tedford Decl. ¶ 3, Exs. 1-3. His interrogatory responses identified Alfred Monderas ("Monderas") as BaderCap's President/Managing Director and supplied Toronto and Taipei addresses as physical location for them, but omitted requested telephone numbers and email addresses. Tedford Decl. ¶ 3, Ex. 1, Interrogatory Nos. 1-2, 6-9. When asked how he communicated with BaderCap and how he would contact it to deliver a document, Shaw incorporated responses providing only Monderas's name and the Taipei address. *Id.*, Interrogatory Nos. 8-9. Shaw's interrogatory responses also lacked sworn verification. Tedford Decl. ¶ 4, Ex. 1 p. 12.

Requests for Production Nos. 3-5 sought communications with BaderCap, with Monderas concerning BaderCap, and with Brian DeYue, respectively. Tedford Decl. ¶ 3, Ex. 2, pp. 6-8. Shaw responded with objections only, including those based on confidentiality agreements and ongoing ESI protocol negotiations, and without stating whether he was withholding responsive

communications. *Id.* His production contained no email correspondence with BaderCap or Monderas and consisted entirely of documents Loops already possessed or that were publicly available court filings or UCC financing statements.. Tedford Decl. ¶ 5.

On September 18, 2026, Loops emailed Shaw's counsel a meet and confer letter identifying these and other deficiencies, including the failure to clarify BaderCap's physical locations and explain addresses used in its agreements, and the treatment of service as the only permissible discovery subject. Tedford Decl. ¶ 6, Ex. 4, pp. 1-7. The letter requested verified supplemental interrogatory responses, supplemental responses to requests for documents and admissions, responsive documents by September 22 for Loops review before Shaw's September 24 deposition, and invited counsel to discuss the discovery issues. *Id.*, p. 7. Loops received no response to the meet and confer letter, and Shaw provided no supplemental responses before his deposition. Tedford Decl. ¶ 7.

Shaw and his counsel continued to obstruct Loops' discovery efforts by their conduct during and after his limited deposition. On September 24, 2026, Loops took Shaw's deposition pursuant to the Order. Tedford Decl. ¶ 8. After reviewing the Order during the examination, Shaw acknowledged that its authorized subjects included BaderCap's contact information. Tedford Decl. ¶ 9, Ex. 5, rough Tr. 23:12-18. He admitted possessing Monderas's current telephone number and an email address Monderas used to conduct BaderCap's business. *Id.* at 26:9-12, 33:8-17. Nevertheless, he repeatedly refused to provide that information, invoking confidentiality and "respect" for Monderas and insisting that BaderCap was not a defendant or a proper defendant. *Id.* at 21:24-22:5, 23:19-24, 25:9-15, 25:22-26:5, 26:13-17, 32:12-21, 33:8-17, 34:1-6, 34:13-35:5, 36:5-13, 38:17-20, 176:7-23. Shaw's testimony made clear that the nondisclosure was deliberate:

////

- Asked why he had not searched for a general BaderCap email address: **"Because I'm not giving you any email addresses."** Asked, "You're not going to give us email addresses or phone numbers for any individual or general contact for Badercap Proprietary, Ltd.?": **"That's correct."** *Id.* at 34:13-35:5.

- After being shown that BaderCap was, in fact, a defendant named in the complaint and again asked for its contact information: **"No, they're not a defendant. You've named them as a defendant, but they're not a defendant. I'm sure once the court hears the whole story, they'll be removed as a defendant."** *Id.* at 36:5-13.

- Asked why he had not searched his emails for communications concerning the mortgage agreement: **"Why? No need to. No need to waste my time."** Asked whether those communications could reveal BaderCap's email addresses or telephone numbers: **"It might."** *Id.* at 128:13-129:2.

- Asked what he personally had done to provide the BaderCap communications and contact information requested in discovery: **"Nothing. I'm not giving up Badercap."** Asked whether neither he nor anyone else had searched for that information: **"That's correct."** *Id.* at 169:8-16.

Shaw invoked confidentiality to withhold this information even though he had already agreed to a protective order—filed August 24, 2026, a month before his deposition—providing mechanisms to protect confidential information disclosed in discovery, including during his deposition. ECF No. 52, ¶¶ 1-6.

Shaw's counsel initially suggested that he answer questions about Alfred Monderas and BaderCap, but he continued to refuse. Tedford Decl. ¶ 9, Ex. 5, rough Tr. 24:22-26:17. When Loops again requested a BaderCap email address and Shaw answered "No," counsel objected stating, **"I think he's given his answer for his deposition,"** and that further questioning would yield the same response. *Id.* at 38:17-39:3. Counsel then expressly promised separate supplementation of the requested contact information under the protective order. *Id.* at 46:12-21. When Loops offered to designate the testimony confidential and obtain the information during the deposition, counsel responded, **"I'm not going to have him go search, you know, at his work desk."** *Id.* at 46:22-47:8. No attorney-client privilege was asserted as a basis for withholding the contact information. Tedford Decl. ¶ 10.

Shaw also admitted retaining emails with Monderas from early 2026 but expressly refused to produce them. Tedford Decl. ¶ 9, Ex. 5, rough Tr. 70:5-16. He acknowledged that he had not searched for emails concerning the February 2026 mortgage assignment or the 2025 surrender transaction. *Id.* at 147:21-148:12, 155:1-17. Those communications bear directly on Shaw's relationship with BaderCap and could identify persons acting for it and the means of contacting such persons.

Shaw also admitted that he retained emails with Monderas from early 2026 but expressly refused to produce them. Tedford Decl. ¶ 9, Ex. 5, rough Tr. 70:5-16. He further acknowledged that he had not searched for emails concerning the February 2026 mortgage assignment or the 2025 surrender transaction. *Id.* at 147:21-148:24, 155:1-17. Asked what he had done to provide the requested BaderCap communications and contact information, he answered, "Nothing. I'm not giving up Badercap." *Id.* at 169:8-16. Counsel instructed Shaw not to answer questions about his communications with Monderas concerning BaderCap's default notice, asserting that their content fell outside the authorized discovery, although the Order expressly permitted inquiry into Shaw's relationship with BaderCap. *Id.* at 158:10-159:18, 168:23-169:7; ECF No. 47, p. 2.

At the close of the deposition, Loops' counsel stated that the examination remained incomplete, reserved seeking an order requiring answers and appropriate follow-up questioning, and remained willing to confer further. Tedford Decl. ¶ 9, Ex. 5, rough Tr. 180:21-181:12. On September 25, 2026, Loops' counsel emailed Shaw's counsel to identify Shaw's refusals and request the supplementation she had promised. Tedford Decl. ¶ 11, Ex. 6, September 25 email, p. 1. The email referred to Loops' September 18 deficiency letter and requested the withheld contact information, verified supplemental interrogatory responses, responsive nonprivileged communications, and the remaining supplementation identified in that letter by close of business

September 28. *Id.* Loops' counsel advised that it would seek an order compelling further responses and production, along with appropriate sanctions, if the deficiencies remained unresolved. *Id.* No response or requested supplementation has been received. Tedford Decl. ¶ 12.

## II. Loops' Efforts to Locate and Serve BaderCap

Loops investigated the Toronto address Shaw identified in his interrogatory responses which is the address of a law firm, WeirFoulds. On September 21, 2026, Wayne Egan of WeirFoulds confirmed that BaderCap had never been located at that address, that the firm did not represent BaderCap, and that it could not accept service for BaderCap. Tedford Decl. ¶ 13, Ex. 7. Shaw could not identify the source or basis for supplying that address as BaderCap's physical location. Tedford Decl. ¶ 9, Ex. 5, rough Tr. 116:14-117:5, 121:12-23. He nevertheless acknowledged that WeirFoulds had handled transactions between him and BaderCap for several years, including purported initial investment documents. *Id.* at 118:24-119:9.

Loops has also contacted an international process server about service at the Taipei address Shaw supplied for BaderCap in his interrogatory responses and obtained estimates of $7,807 and $10,262 for its two service options, each including $6,342 for translation. Tedford Decl. ¶ 14. Loops has not independently confirmed that BaderCap or an appropriate recipient is currently at that address. Tedford Decl. ¶14. Although Shaw testified that the address appeared in shareholder records maintained by his attorneys, he could not confirm that the purported BaderCap office he visited in 2017 or 2018 was located there. Tedford Decl. ¶ 9, Ex. 5, rough Tr. 41:14-43:18, 146:6-147:6.

Shaw's identification of a Toronto address for BaderCap where BaderCap has never been located, coupled with his refusal to disclose known contact information and recent

communications with BaderCap and its purported representative, calls into question the reliability of the Taipei address he also provided for BaderCap. His withholding of contact information has also frustrated Loops' efforts to verify that address before incurring substantial translation and service costs. Loops is also preparing to seek leave to file a second amended complaint to, without limitation, name additional defendants and newly discovered factual allegations, including transfers and obligations not previously known or understood, creating a risk that translation and service of the current pleading would have to be repeated. Tedford Decl. ¶ 15. For these reasons, Loops has not yet initiated Taiwan service and seeks the Court's direction on obtaining the withheld information and coordinating further service and default efforts.

## III. Request for LR 37.1 Telephone Conference

Pursuant to LR 37.1, Loops requests a prompt telephone conference to address Shaw's failure to disclose BaderCap contact information and produce responsive nonprivileged communications he admits possessing, his failure to provide verified supplemental interrogatory answers and other supplemental discovery responses, and completion of his limited deposition. Loops also requests assistance in establishing a schedule for further service efforts and a renewed status report concerning service and default against BaderCap.

Loops further requests that the Court address what sanctions, if any, it considers appropriate for Shaw's deliberate withholding of responsive information in written discovery and at his deposition, taking into account the significant attorneys' fees and expenses Loops incurred in pursuing that discovery, and direct any further submissions it wishes to receive on that issue. Tedford Decl. ¶ 16. Pursuant to LR 37.1, counsel's

accompanying declaration certifies the sincere, good faith efforts made to resolve these disputes without Court intervention. Tedford Decl. ¶ 17.

The accompanying declaration of Zachary S. Tedford is based on the undersigned counsel's personal participation in the deposition and is supported by identified excerpts from the reporter's rough, uncertified transcript because the certified transcript will not be available before this report is due. Tedford Decl. ¶ 9. To the extent required by paragraph 13 of the scheduling order (ECF No. 51), Loops requests leave to submit the accompanying discovery exhibits for purposes of this report and the requested conference and will provide any further briefing or supporting materials the Court requests.

Respectfully submitted,

Dated: September 30, 2026

*/s/ Zachary S. Tedford*

David M. Kohn (*pro hac vice*)
Michael T. Lane (*pro hac vice*)
John M. Houkom (*pro hac vice*)
Zachary S. Tedford (*pro hac vice*)
LEWIS KOHN & WALKER, LLP
17085 Via Del Campo
San Diego, CA 92127
Telephone: (858) 436-1330
dkohn@lewiskohn.com
mlane@lewiskohn.com
jhoukom@lewiskohn.com
ztedford@lewiskohn.com

and

David B. Cupar (0071622)
Matthew J. Cavanagh (0079522)
Benjamin Foote-Huth (0104192)
McDONALD HOPKINS LLC
600 Superior Avenue East, Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5400
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com
bfootehuth@mcdonaldhopkins.com

*Attorneys for Plaintiff Loops, L.L.C.*