# Exhibit A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LOOPS, L.L.C., | ) | |
| | ) | CASE NO. 4:25-cv-02346-BYP |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| vs. | ) | |
| | ) | |
| MAXILL INC. *et al.*, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff Loops, L.L.C. ("Loops") files this Second Amended Complaint against Defendants Maxill Inc. ("Maxill Canada"), Maxill, Inc. ("Maxill Ohio"), Maxill Realty, Inc. ("Maxill Realty"), and BaderCap Pty Ltd. ("BaderCap" and collectively with Maxill Canada, Maxill Ohio, and Maxill Realty, the "Maxill Entities"), John Dennie Shaw ("Shaw"), and Christine Thompson ("Thompson" and collectively with Shaw and the Maxill Entities, "Defendants").

## NATURE OF THE ACTION

1. This action seeks relief from fraudulent transfers made and obligations incurred by Defendants, including but not limited to those affecting real property and business assets in Ohio, designed to place assets beyond Loops' reach and hinder, delay, or prevent satisfaction of Loops' claims for patent infringement and breach of contract pending in Washington and Canada, while allowing Shaw and the businesses he controls to retain possession, control, or use of those assets. Loops asserts claims under the Ohio Uniform Fraudulent Transfer Act, Ohio Rev. Code Chapter 1336, and seeks the remedies authorized by that Act.

2. Loops has asserted rights to payment against Maxill Canada and Maxill Ohio in litigation in Washington and against Maxill Canada and Shaw in litigation in Canada. The

transactions challenged in this action include a mortgage on the property identified in the relevant transaction documents as Parcel No. 34-099516, 181 North Mecca Street and 500 West Main Street, Cortland, Ohio (the "Cortland Property"); purported loan indebtedness owed by Maxill Ohio to Maxill Canada and secured by substantially all of Maxill Ohio's assets; a royalty obligation owed by Maxill Ohio to Maxill Canada in the same upfront amount as the purported loan; a purported preference share redemption debt owed by Maxill Canada to BaderCap; Maxill Canada's assignment of purported indebtedness and secured rights against Maxill Ohio to BaderCap; transfers through which Maxill Dental, Inc. ("Maxill Dental") received Maxill Ohio's operating assets; BaderCap's later assignment of purported mortgage and security interests to Maxill Canada; and Maxill Dental's grant to Maxill Canada of a new security interest in the operating assets it received from Maxill Ohio.

3. The transfers of Maxill Ohio's operating assets did not end its distribution business. Maxill Dental continued that business using the warehouse at the Cortland Property, with substantially the same shipping operations and personnel. Thompson continued administering the warehouse before and after the transfers while remaining employed by Maxill Canada and reporting to Shaw.

4. Loops also challenges Shaw's transfer to Thompson of his interest in certain residential property.

5. Loops seeks to avoid the fraudulent transfers and obligations set forth herein, preserve assets available to satisfy its pending claims, prevent further disposition of those assets, and recover monetary and other relief authorized by law.

**PARTIES**

6. Loops is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Whatcom County, Washington. Loops is registered to conduct business in multiple states throughout the United States. Loops manufactures,

markets, distributes, and sells oral care products, including the Loops Flexbrush®, to institutional and commercial customers throughout the United States, including correctional, detention, and mental health facilities.

7. Upon information and belief, Maxill Canada is a corporation organized and existing under the laws of the Province of Ontario, Canada, with its principal place of business at 80 Elm Street, St. Thomas, Ontario, Canada, N5R 6C8. Upon information and belief, Maxill Canada manufactures and distributes oral care products and exports those products to its U.S. affiliates for warehousing, promotion, marketing, sale, and distribution throughout the United States, including within the State of Ohio and this judicial district. Upon information and belief, Maxill Canada is an affiliate and instrumentality of the other Maxill Entities and operates as part of their unified enterprise under Shaw's direction and control.

8. Upon information and belief, Maxill Ohio is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Cortland, Ohio. Upon information and belief, Maxill Ohio is wholly owned by Maxill Canada and has imported oral care products from Maxill Canada and has warehoused, promoted, marketed, distributed, and sold those products throughout the United States, including within the State of Ohio and this judicial district. Upon information and belief, Maxill Ohio is an affiliate and instrumentality of the other Maxill Entities and operates as part of their unified enterprise under Shaw's direction and control.

9. Upon information and belief, Maxill Realty is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Cortland, Ohio. Upon information and belief, Maxill Realty is owned by Maxill Ohio, which is owned by Maxill Canada. Upon information and belief, Maxill Realty owns, purchases, leases, and manages property used by the Maxill Entities for the warehousing, promotion, marketing, sale, and distribution of oral care products throughout the United States, including within the State of Ohio and this judicial district.

That property includes the Cortland Property. Upon information and belief, Maxill Realty is an affiliate and instrumentality of the other Maxill Entities and operates as part of their unified enterprise under Shaw's direction and control.

10. Upon information and belief, based on the other defendants' representations, BaderCap is a foreign business entity. Its precise legal form, jurisdiction of organization, principal place of business, and ownership remain unknown to Loops despite its investigation and discovery efforts. BaderCap is identified as the mortgagee under the 2017 open-end mortgage and security agreement executed by Maxill Realty encumbering the Cortland Property (the "2017 Mortgage") and as the secured creditor under the April 15, 2025 agreement providing for Maxill Ohio's surrender of collateral to BaderCap or its designee (the "2025 Surrendering Agreement"). As recited in the 2025 Surrendering Agreement, Maxill Canada assigned to BaderCap its rights under Maxill Ohio's August 1, 2020 promissory note and security agreement through an Assignment of Debt and Security dated July 12, 2024 (the "2024 Assignment of Debt and Security"). These transactions are alleged more fully below. Upon information and belief, BaderCap is an affiliate and instrumentality of the other Maxill Entities and operates as part of their unified enterprise under Shaw's direction and control.

11. Upon information and belief, Shaw is a natural person who is a citizen of Canada and resides in St. Thomas, Ontario. Shaw is an owner, president, and sole director of Maxill Canada and has served as president of Maxill Ohio and Maxill Realty. Upon information and belief, Shaw directly or indirectly owns or controls each of the Maxill Entities and exercises complete domination and control over their operations and finances.

12. Upon information and belief, Thompson is a natural person who is a citizen of Canada and resides in St. Thomas, Ontario. Upon information and belief, Thompson is employed by Maxill Canada in purchasing and logistics, reports directly to Shaw, and has served as president of Maxill Dental, the entity that received Maxill Ohio's operating assets through the transfers alleged

below. Upon information and belief, Thompson administered the warehouse at the Cortland Property before, during, and after those transfers while remaining employed by Maxill Canada and reporting to Shaw. Following the transfers, she also oversaw Maxill Dental's operations on behalf of BaderCap. Upon information and belief, Thompson received Shaw's interest in the residential property located at 2 Victoria Street, St. Thomas, Ontario, on or about January 29, 2024, as alleged more fully below.

13. Upon information and belief, Shaw's domination and control over each of the Maxill Entities is so complete that each lacks a separate mind, will, or existence of its own and operates as his alter ego. Upon information and belief, Shaw has used that control to cause the Maxill Entities to carry out and conceal the fraudulent transfers and obligations alleged herein. Upon information and belief, the Maxill Entities share common ownership, officers, and business functions, commingle assets and funds, and fail to maintain arm's-length relationships with one another or with Shaw. Upon information and belief, there exists a unity of interest and ownership among Shaw and the Maxill Entities such that any separateness between them has ceased to exist, and adherence to the fiction of separate corporate existence would promote injustice and permit abuse of the corporate privilege.

14. Upon information and belief, in carrying out the transactions alleged herein, Shaw and each of the Maxill Entities are the agents, representatives, and/or principals of each other, such that Shaw and each of the Maxill Entities are acting on behalf of, under the authority of, with full knowledge and consent of, and/or as the agent of the others, and Shaw and each of the Maxill Entities are engaged in activities that, but for the others, they would have to undertake themselves.

15. Upon information and belief, Shaw personally directed, authorized, and participated in the fraudulent transfers and obligations alleged herein. Among other things, Shaw executed the 2017 Mortgage on behalf of Maxill Realty, executed the August 1, 2020 intercompany agreements concerning the loan, security interest, and services and licensing arrangement on behalf of both Maxill Ohio and Maxill Canada, arranged the 2024 Assignment of Debt and Security, and directed

the disposition of Maxill Ohio's operating assets. Upon information and belief, Shaw undertook those acts on behalf of, under the authority of, and with the full knowledge and consent of the Maxill Entities for which he acted.

16. Upon information and belief, Shaw has used his domination and control over the Maxill Entities to transfer assets, create and assign purported indebtedness, and encumber property for the purpose of hindering, delaying, or defrauding creditors, including Loops. Upon information and belief, Shaw's domination and control, and his use of that control to carry out the fraudulent transfers and obligations alleged herein, have injured Loops by removing or encumbering assets otherwise available to satisfy its claims. Accordingly, the corporate veil should be pierced to impose personal liability on Shaw for the wrongful acts of the Maxill Entities established to be his alter egos.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(3) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are completely diverse. Loops is a limited liability company all of whose members are citizens of Washington. Maxill Ohio and Maxill Realty are incorporated in Ohio and have their principal places of business in Ohio. Maxill Canada is incorporated in Ontario, Canada, and has its principal place of business in Canada. Shaw and Thompson are citizens of Canada. Upon information and belief, based on the other defendants' representations that BaderCap is a foreign entity, BaderCap is a citizen or subject of a foreign state. BaderCap's precise legal form, jurisdiction of organization, principal place of business, and ownership remain unknown to Loops despite its investigation and discovery efforts.

18. This Court has general personal jurisdiction over Maxill Ohio and Maxill Realty because they are incorporated in and have their principal places of business in Ohio.

19. This Court has specific personal jurisdiction over Maxill Canada because Maxill Canada purposefully directed conduct toward Ohio by taking a security interest in Maxill Ohio's operating assets, assigning its rights under Maxill Ohio's purported indebtedness and the related security interest to BaderCap through the 2024 Assignment of Debt and Security, participating in the continued operation of the Ohio distribution business, accepting BaderCap's subsequent assignment of purported mortgage and security interests affecting the Cortland Property and the operating assets, and accepting a purported security interest from Maxill Dental in the operating assets previously transferred from Maxill Ohio. These acts formed part of the coordinated conduct among Shaw and the Maxill Entities alleged below. Loops' claims against Maxill Canada arise out of or relate to that conduct directed toward Ohio.

20. This Court has specific personal jurisdiction over Shaw because he personally directed and executed transactions affecting the Cortland Property and Maxill Ohio's assets, including signing for both sides of the August 1, 2020 intercompany agreements and arranging the 2024 Assignment of Debt and Security. Loops' claims based on those transactions arise out of or relate to his conduct directed toward Ohio. This Court also has general personal jurisdiction over Shaw because, upon information and belief and as alleged above, Maxill Ohio and Maxill Realty are his alter egos, lack meaningful corporate independence from him, and are incorporated in and have their principal places of business in Ohio.

21. This Court has specific personal jurisdiction over BaderCap because BaderCap purposefully availed itself of the privilege of conducting business in Ohio by accepting the 2017 Mortgage on the Cortland Property, accepting the 2024 Assignment of Debt and Security from Maxill Canada of rights under Maxill Ohio's purported indebtedness and the related security interest, demanding payment from Maxill Ohio, and entering into the 2025 Surrendering Agreement with

Maxill Ohio. Loops' claims against BaderCap arise out of or relate to those transactions directed toward Ohio.

22. This Court has specific personal jurisdiction over Thompson because Thompson purposefully directed activities toward Ohio by administering the warehouse at the Cortland Property before, during, and after the transfers of Maxill Ohio's operating assets. Following those transfers, Thompson continued administering the warehouse and overseeing Maxill Dental's operations on behalf of BaderCap while remaining employed by Maxill Canada and reporting directly to Shaw. Upon information and belief, Thompson's receipt of Shaw's interest in the residential property and her administration of the Ohio business formed part of the same coordinated scheme to place assets beyond creditors' reach while preserving insider control over the Ohio business and its assets. Loops' claims against Thompson arise out of or relate to her participation in that scheme, including her activities directed toward Ohio.

23. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred here, including the encumbrance of the Cortland Property and the encumbrance and disposition of Maxill Ohio's operating assets. A substantial part of the property that is the subject of this action is also located in this District. Maxill Canada, BaderCap, Shaw, and Thompson do not reside in the United States and may be sued in this District pursuant to 28 U.S.C. § 1391(c)(3).

## FACTUAL ALLEGATIONS

***Loops' Underlying Patent Infringement and Breach of Contract Claims***

24. Loops develops and sells oral care products, including one of its flagship products, the Loops Flexbrush®, a compact toothbrush with a flexible handle that cannot be fashioned into a weapon. Since 2012, Loops has been engaged in litigation against Maxill Canada and, subsequently,

Maxill Ohio and Shaw concerning competing toothbrush products and breaches of a settlement agreement, as described below.

25. On or about December 7, 2012, Loops commenced an action against Maxill Canada in the Federal Court of Canada, Court File No. T-2197-12, for infringement of Loops' Canadian patent covering the Loops Flexbrush® (the "2012 Canadian Action").

26. On or about April 9, 2014, Loops entered into a settlement agreement with Maxill Canada and Shaw, in his personal capacity, that resolved the 2012 Canadian Action (the "2014 Agreement"). Maxill Canada agreed not to sell certain items and to provide specified information within agreed deadlines. It also made representations and warranties regarding information provided in the agreement. Maxill Canada and Shaw further agreed not to disclose, discuss, or reference certain information, or directly or indirectly attack, or assist others in attacking, the validity of certain intellectual property owned by Loops.

27. On or about October 30, 2015, Loops commenced an action against Maxill Canada in the Ontario Superior Court of Justice, Court File No. 2447-16, for breach of the 2014 Agreement (the "2015 Canadian Action"). In that action, Loops now seeks destruction of infringing products, specific performance of Maxill Canada's and Shaw's obligations under the 2014 Agreement, an accounting of Maxill Canada's profits earned through its breaches, and damages arising from Maxill Canada's and Shaw's breaches.

28. On or about June 12, 2023, Shaw was added as a defendant to the 2015 Canadian Action by court order.

29. The 2015 Canadian Action remains pending against Maxill Canada and Shaw. Trial dates scheduled for December 2025 and April 2026 were continued by court order.

30. On or about July 20, 2017, Loops commenced an action against Bob Barker Company, Inc. in the United States District Court for the District of Utah, Case No. 1:17-cv-00123

(the "Utah Action"), alleging infringement of U.S. Patent No. 8,448,285 (the "'285 Patent"). On September 7, 2017, Loops filed its First Amended Complaint in the Utah Action, adding Maxill Canada as a defendant.

31. On or about December 5, 2017, Maxill Ohio commenced an action against Loops in the United States District Court for the Western District of Washington, Case No. 2:17-cv-01825-TSZ, seeking declaratory relief concerning the '285 Patent (the "Washington Action"). The Utah Action was subsequently transferred to the Western District of Washington and consolidated with the Washington Action. Loops' claims against Bob Barker Company, Inc. and related parties were resolved by settlement.

32. In the Washington Action, Loops asserts patent infringement claims against Maxill Canada and Maxill Ohio. Loops first asserted its infringement claim against Maxill Canada in the Utah Action on September 7, 2017, and asserted its infringement counterclaim against Maxill Ohio in the Washington Action on February 8, 2018. Those claims remain pending, and Loops seeks monetary relief, among other relief, arising from the alleged infringement.

33. Loops seeks monetary relief against Maxill Canada and Shaw through its breach of contract claims in the 2015 Canadian Action and against Maxill Canada and Maxill Ohio through its patent infringement claims in the Washington Action. Loops' rights to payment arising from those alleged breaches and infringement constitute "claims" within the meaning of Ohio Rev. Code § 1336.01(C), whether or not reduced to judgment, liquidated, matured, or disputed. Loops is therefore a creditor of Maxill Canada, Maxill Ohio, and Shaw within the meaning of Ohio Rev. Code § 1336.01(D).

34. Shaw knew of Loops' claims through his personal involvement in the 2012 Canadian Action, the 2014 Agreement, and the 2015 Canadian Action, and through his direction of the Maxill businesses and their litigation. Maxill Canada and Maxill Ohio likewise knew of the claims asserted

against them through their participation in the actions described above. The timing of that knowledge in relation to the challenged transfers and obligations is alleged more fully below.

***Defendants' Efforts to Shield Assets from Loops' Claims***

35. As Loops pursued its patent infringement and breach of contract claims described in paragraphs 24 through 33 above, Shaw and the Maxill Entities transferred and encumbered assets and created and assigned purported obligations. The following events show how those transactions were intended to hinder, delay, or defraud Loops in obtaining payment while allowing Shaw and the businesses he controlled to retain possession, control, or use of the assets:

- **December 7, 2012:** Loops and Loops Flexbrush, L.L.C. ("Loops Flexbrush") commenced the 2012 Canadian Action against Maxill Canada for patent infringement.
- **December 23, 2013:** Maxill Ohio was formed, and, upon information and belief, was owned by Maxill Canada.
- **January 1, 2014:** A lease between Maxill Realty as landlord and Maxill Ohio as tenant bears this date and provides for use of the Cortland Property for five years at $16,000 per month (the "2014 Lease"). Shaw signed for both entities. In addition to rent, the lease required Maxill Ohio to pay the real estate taxes and assessments on the premises and permitted Maxill Realty to reclaim unused space without reducing Maxill Ohio's rent. The signature page bears a date of December 30, 2014 for Maxill Realty and December 30, 2024 for Maxill Ohio.
- **January 2, 2014:** Maxill Realty was formed and, upon information and belief, was owned by Maxill Ohio.
- **February 4, 2014:** Maxill Realty acquired the Cortland Property for approximately $2.16 million. Upon information and belief, the property was used for the Maxill Ohio distribution business.
- **April 9, 2014:** Loops, Loops Flexbrush, Maxill Canada, and Shaw entered into the 2014 Agreement, settling the 2012 Canadian Action.
- **September 3, 2014:** Maxill Realty granted PNC Bank a mortgage on the Cortland Property securing a loan in an amount not exceeding $1.8 million, together with other obligations described in the mortgage (the "2014 Mortgage"). The secured obligations expressly included obligations owed by Maxill Realty, Maxill Ohio, or Maxill Canada to PNC Bank or its affiliates. Maxill Realty also executed an assignment of rents, leases, and profits from the Cortland Property as additional security for those obligations. Shaw executed both instruments on Maxill Realty's behalf.
- **October 30, 2015:** Loops and Loops Flexbrush commenced the 2015 Canadian Action against Maxill Canada for breach of the 2014 Agreement.

- **July 20, 2017:** Loops and Loops Flexbrush commenced the Utah Action against Bob Barker Company, Inc. for patent infringement.
- **September 7, 2017:** Loops added Maxill Canada as a defendant in the Utah Action.
- **October 6, 2017:** The 2017 Mortgage bears this effective date and purports to grant BaderCap an open-end mortgage and security interest in the Cortland Property from Maxill Realty, with a stated maximum principal amount of $14 million. That effective date fell less than one month after Loops added Maxill Canada as a defendant in the Utah Action, while the 2015 Canadian Action remained pending.
- **October 13, 2017:** PNC Bank executed a satisfaction of the 2014 Mortgage (the "2017 Mortgage Satisfaction"), acknowledging that its mortgage on the Cortland Property had been satisfied.
- **October 18, 2017:** Shaw acknowledged the 2017 Mortgage before a notary in Trumbull County, Ohio, on behalf of Maxill Realty in his capacity as its president.
- **October 19, 2017:** The 2017 Mortgage was recorded with the former Trumbull County Recorder, Tod Latell, as Instrument No. 201710190028713.
- **December 5, 2017:** Maxill Ohio commenced the Washington Action seeking a declaration that its products did not infringe the '285 Patent.
- **February 8, 2018:** Loops and Loops Flexbrush asserted infringement counterclaims against Maxill Ohio in the Washington Action.
- **July 5, 2018:** The Utah Action was transferred to the United States District Court for the Western District of Washington and was consolidated with the Washington Action on July 30, 2018. Maxill Canada joined Maxill Ohio in its claims for non-infringement, and likewise, Loops' counterclaims for infringement were asserted against Maxill Canada alongside Maxill Ohio.
- **August 1, 2020:** Shaw executed an intercompany loan agreement on behalf of both Maxill Ohio and Maxill Canada, documenting purported indebtedness of approximately $8.22 million owed by Maxill Ohio to Maxill Canada and establishing repayment terms (the "2020 Loan Agreement"). A promissory note executed by Shaw on behalf of Maxill Ohio reflected the same indebtedness (the "2020 Promissory Note"). Shaw also executed a security agreement on behalf of both entities, granting Maxill Canada a security interest in substantially all of Maxill Ohio's assets (the "2020 Security Agreement"). The 2020 Promissory Note specified the entry of one or more judgments against Maxill Ohio exceeding $50,000 as an event of default permitting acceleration of the debt. The 2020 Loan Agreement and 2020 Security Agreement expressly permitted Maxill Canada to assign its rights to BaderCap.
- **August 1, 2020:** Shaw executed a master services and license agreement on behalf of both Maxill Ohio and Maxill Canada (the "2020 Services and License Agreement"), requiring Maxill Ohio to pay Maxill Canada an upfront royalty of approximately $8.22 million, matching the principal amount under the 2020 Loan Agreement and 2020 Promissory Note, together with continuing royalties and service charges.

- **August 13, 2020:** Counsel for Dana Robie ("Robie"), a furloughed Maxill Ohio employee, sent Maxill Ohio a letter requesting her return to full-time employment and threatening legal action. The Washington Action and 2015 Canadian Action were already pending.
- **October 9, 2020:** Robie filed a wrongful termination action against Maxill Ohio in Trumbull County, Ohio (the "Robie Action").
- **December 31, 2020:** The Federal Circuit reversed the Washington district court's judgment of noninfringement in the Washington Action and remanded the case for further proceedings on Loops' infringement claims. The reversal restored Loops' ability to pursue those claims and seek infringement damages.
- **March 10, 2021:** The Washington Action was stayed pending resolution of the 2015 Canadian Action. Loops' claims for monetary relief remained unresolved.
- **April 11, 2023:** Melanie Barbosa commenced a wrongful termination action against Maxill Canada in the Ontario Superior Court of Justice, Court File No. CV-23-00697634-0000, seeking approximately $200,000 (the "Barbosa Action").
- **July 6, 2023:** Robie obtained an interim arbitration determination establishing Maxill Ohio's liability, while Loops' claims against Maxill Ohio, Maxill Canada, and Shaw and Barbosa's claims against Maxill Canada remained pending.
- **January 29, 2024:** Shaw transferred his interest in the property located at 2 Victoria Street, St. Thomas, Ontario, to Thompson (the "2024 Transfer"). Publicly available records identify a CAD $300,000 mortgage granted by Thompson in favor of Shaw. The transfer occurred while Loops' claims against Shaw in the 2015 Canadian Action remained pending. Thompson was a Maxill Canada employee who reported directly to Shaw.
- **January 31 through June 28, 2024:** Maxill Ohio's PNC Bank account balance fell from $217,399.58 to $89.31. Upon information and belief, Shaw directed the diversion of funds from the account to hinder creditors, including Loops.
- **February 28, 2024:** A UCC financing statement was filed in Ohio as Filing No. OH00279674507, identifying Maxill Ohio as debtor and Maxill Canada as secured party in connection with the 2020 Security Agreement, which purported to encumber substantially all of Maxill Ohio's assets. Upon information and belief, the security interest in Maxill Ohio's inventory, equipment, and accounts receivable had not previously been perfected, and this filing first purported to perfect that interest. The filing occurred more than three years after the agreement's stated date, after the arbitrator had found Maxill Ohio liable to Robie, and while Loops' and Barbosa's claims remained pending.
- **March 5, 2024:** Robie received a final arbitration award against Maxill Ohio for $308,661.98, plus interest at eight percent per year. Loops' and Barbosa's claims remained pending.
- **By July 12, 2024:** Maxill Canada purportedly owed BaderCap CAD $18,852,200 for the redemption of preference shares held by BaderCap, as recited in the 2025 Surrendering Agreement. This purported redemption debt supplied the stated basis for Maxill Canada's assignment to BaderCap of its rights under the 2020 Promissory Note and 2020 Security Agreement in partial satisfaction of that debt.

- **July 12, 2024:** Maxill Canada assigned to BaderCap its rights under the 2020 Promissory Note reflecting approximately $8.22 million in purported indebtedness owed by Maxill Ohio and the related 2020 Security Agreement through the 2024 Assignment of Debt and Security, purportedly in partial satisfaction of Maxill Canada's CAD $18,852,200 preference share redemption debt to BaderCap. Upon information and belief, Shaw arranged the transaction while Loops' and Barbosa's claims remained pending and Robie's arbitration award remained unpaid.
- **July 25, 2024:** A UCC financing statement amendment was filed in Ohio as Filing No. SR1289974, identifying Maxill Canada as the assignor and BaderCap as the assignee under the initial financing statement No. OH00279674507, filed February 28, 2024, concerning Maxill Ohio's obligations under the 2020 Security Agreement. The amendment identified BaderCap as the secured party in place of Maxill Canada pursuant to the 2024 Assignment of Debt and Security.
- **October 30, 2024:** The court entered judgment against Maxill Ohio on Robie's arbitration award for $308,661.98, plus interest at eight percent per year.
- **February 11, 2025:** A certificate of action was registered against the 50 Silver Street property in connection with Nucor Steel ULC's construction lien proceeding against Maxill Canada, 50 Silver Street Ltd., and others in the Ontario Superior Court of Justice, Court File No. CV-25-00000011-0000 (the "Nucor Action"). Nucor sought approximately $300,000 for unpaid construction work and enforcement of its lien.
- **April 10, 2025:** BaderCap issued a letter to Maxill Ohio declaring a default and demanding payment of the purported indebtedness assigned under the 2024 Assignment of Debt and Security (the "2025 Default Letter"). Five days later, Maxill Ohio agreed to surrender its operating assets to BaderCap or its designee, while Robie's award remained unpaid and Loops', Barbosa's, and Nucor's claims remained pending.
- **April 15, 2025:** BaderCap and Maxill Ohio entered into the 2025 Surrendering Agreement, providing for Maxill Ohio's voluntary surrender of its collateral to BaderCap or its designee in partial satisfaction of Maxill Ohio's purported indebtedness. The agreement designated 2 Victoria Street, the property involved in Shaw's 2024 Transfer to Thompson, as BaderCap's notice address.
- **June 10, 2025:** Maxill Dental was incorporated in Delaware while Robie's award remained unpaid and Loops', Barbosa's, and Nucor's claims remained pending.
- **June 11, 2025:** A bill of sale and assignment identified Maxill Ohio as the transferor and Maxill Dental as the recipient of Maxill Ohio's operating assets (the "2025 Bill of Sale"). The transaction moved those assets to an entity formed just one day earlier, without Maxill Dental assuming Maxill Ohio's liabilities. Maxill Dental continued the distribution business previously operated by Maxill Ohio. Upon information and belief, Thompson continued administering the warehouse at the Cortland Property while remaining employed by Maxill Canada and reporting to Shaw.
- **July 16, 2025:** Loops commenced an action against Maxill Canada and Shaw in the United States District Court for the Southern District of California, Case No. 3:25-cv-01814-JLS-DDL, alleging infringement of U.S. Patent Nos. 11,013,311 (the "'311 Patent") and 10,334,940 (the "'940 Patent") (the "California Action"). The filing asserted additional

claims for monetary relief against Maxill Canada and Shaw while Loops' claims in the Washington Action and the 2015 Canadian Action remained pending.

- **October 30, 2025:** Loops commenced this action in the United States District Court for the Northern District of Ohio, asserting claims for infringement of the '311 and '940 Patents together with fraudulent transfer claims concerning the Cortland Property and Maxill Ohio's assets.
- **October 31, 2025:** Loops voluntarily dismissed the California Action.
- **November 19, 2025:** Maxill Realty paid Maxill Canada $200,000 from its Farmers Bank account through a check dated October 21, 2025. The payment moved funds from Maxill Realty to an affiliated Canadian entity after Loops commenced this action and while Robie was pursuing collection against Maxill Realty and Maxill Dental.
- **December 9, 2025:** Maxill Ohio, Maxill Realty, and Maxill Dental filed Chapter 11 petitions in the United States Bankruptcy Court for the Northern District of Ohio, Case Nos. 25-41500, 25-41501, and 25-41502, respectively (collectively, the "2025 Bankruptcy"). All three identified the same business address at the Cortland Property. The petitions halted creditor collection efforts against the debtors, one day before the scheduled evidentiary hearing in the Robie Action concerning whether Maxill Realty and Maxill Dental were separate from Maxill Ohio and whether the garnished funds were available to satisfy Robie's judgment.
- **January 14, 2026:** Steven Lewinsky, a former network administrator for Maxill Canada, commenced a wrongful termination action against Maxill Canada in the Ontario Superior Court of Justice, Court File No. CV-26-00000004-0000, seeking approximately $400,000 in damages.
- **January 23, 2026:** The United States Trustee moved to dismiss or convert all three cases in the 2025 Bankruptcy, citing failures to file required financial disclosures and operating reports, comply with a court order, provide requested financial records, and maintain appropriate insurance. The Trustee further asserted that Maxill Ohio had no assets, operations, employees, or income and no reasonable likelihood of rehabilitation. The missing financial records prevented the Trustee from assessing the debtors' financial condition and compliance with their obligations in bankruptcy.
- **February 5, 2026:** Loops filed its First Amended Complaint ("FAC") in this action, identifying the 2020 intercompany agreements, the 2024 Assignment of Debt and Security to BaderCap, the depletion of Maxill Ohio's bank account, and the 2025 transfer of Maxill Ohio's operating assets to Maxill Dental.
- **February 10, 2026:** Upon information and belief, Maxill Dental granted Maxill Canada a purported security interest in the operating assets previously transferred from Maxill Ohio and previously encumbered under the 2020 Security Agreement, pursuant to a security agreement dated February 10, 2026 (the "2026 Security Agreement"). The agreement's stated date was five days after Loops filed the FAC challenging the earlier transactions.
- **February 25, 2026:** A UCC financing statement amendment was filed in Ohio as Filing No. SR1589485, identifying BaderCap as assignor and Maxill Canada as assignee under initial financing statement No. OH00279674507, filed February 28, 2024, concerning Maxill Ohio's obligations under the 2020 Security Agreement. The amendment identified Maxill Canada as

the assignee of BaderCap's secured-party position of record after Loops challenged the earlier assignment to BaderCap in this action.

- **February 2026:** Upon information and belief, BaderCap assigned its interest in the 2017 Mortgage to Maxill Canada, moving the purported secured rights in the Cortland Property from BaderCap to another Shaw-controlled entity while Loops' challenge to the mortgage remained pending.
- **March 5, 2026:** A UCC financing statement, No. OH00296814334, was filed in Ohio identifying Maxill Dental as debtor and Maxill Canada as secured party and describing the collateral by reference to the 2026 Security Agreement.
- **May 1, 2026:** The bankruptcy court dismissed the Chapter 11 cases comprising the 2025 Bankruptcy.

***Shaw's Control and Use of the Challenged Transactions to Hinder, Delay, or Defraud Loops***

36. Upon information and belief, the transactions described in paragraph 35 above were successive steps in a plan directed by Shaw to hinder, delay, or defraud creditors, including Loops. Shaw used purported insider obligations to encumber assets and transferred assets and secured rights among businesses he controlled, impairing Loops' ability to obtain payment while preserving his control over the Ohio distribution business formerly operated by Maxill Ohio and continued by Maxill Dental at the Cortland Property.

37. Shaw controlled the decisions on both sides of the 2020 Loan Agreement, 2020 Security Agreement, and 2020 Services and License Agreement. Maxill Canada owned Maxill Ohio, Maxill Ohio had no management employees of its own, and Shaw performed its management functions. Upon information and belief, no independent decision maker negotiated those agreements for Maxill Ohio. Shaw used that control to impose purported payment obligations on Maxill Ohio in favor of Maxill Canada and to secure the purported loan indebtedness with substantially all of Maxill Ohio's assets.

38. The matching loan principal and upfront royalty amounts, the security interest in substantially all of Maxill Ohio's assets, the express permission to assign rights to BaderCap, and the provision making judgments exceeding $50,000 an event of default served complementary purposes.

Upon information and belief, Shaw structured these arrangements to place Maxill Canada's purported secured claim ahead of outside creditors, permit its assignment to BaderCap, and enable acceleration of the debt and enforcement against Maxill Ohio's assets when a creditor obtained a qualifying judgment. Maxill Canada's subsequent assignment to BaderCap, BaderCap's default demand, and Maxill Ohio's surrender and transfer of its operating assets carried that arrangement into effect.

39. Upon information and belief, Shaw used the 2017 Mortgage to encumber the Cortland Property with a purported insider lien in favor of BaderCap while Maxill Realty retained ownership and the property remained in use for Maxill Ohio's distribution business. The purported obligations of Maxill Realty secured by the 2017 Mortgage and of Maxill Ohio secured by the 2020 Security Agreement did not reflect bona fide indebtedness supported by reasonably equivalent value to those respective entities. Shaw used those purported obligations and encumbrances to hinder, delay, or prevent Loops from reaching the Cortland Property and Maxill Ohio's operating assets to satisfy its claims.

40. Upon information and belief, BaderCap served as a conduit for transferring Maxill Ohio's operating assets under the appearance of enforcement by an independent secured creditor. Shaw arranged Maxill Canada's assignment to BaderCap of the purported indebtedness under the 2020 Promissory Note and the security interest under the 2020 Security Agreement and directed the subsequent transfer of Maxill Ohio's operating assets to Maxill Dental. Thompson continued administering the warehouse and reporting to Shaw throughout those transactions. The designation of 2 Victoria Street, the property in which Shaw had transferred his interest to Thompson, as BaderCap's notice address in the 2025 Surrendering Agreement further connects BaderCap to Shaw and Thompson and their roles in the continued operation of the Ohio business.

41. The transfer to Maxill Dental separated Maxill Ohio's operating assets from its liabilities without ending the distribution business. Upon information and belief, Shaw directed that

separation so the business could continue using the transferred assets while creditors, including Loops, pursued Maxill Ohio, which no longer held them. Thompson's continued administration of the warehouse, employment by Maxill Canada, and reporting to Shaw demonstrate that operational control remained with Shaw despite the change in the entity holding the assets.

42. Upon information and belief, Maxill Ohio did not receive reasonably equivalent value for the operating assets it surrendered and transferred. Maxill Ohio had a history of unprofitability, depleted bank accounts, an inability to satisfy Robie's award before the transfers, and a loss of substantially all operating assets through the transfers described herein. Upon information and belief, Maxill Ohio was insolvent when those transfers occurred or became insolvent as a result. Its remaining assets were unreasonably small for its business, and it could not pay its debts as they became due. The United States Trustee's later assertions that Maxill Ohio had no assets, operations, employees, or income, as described in paragraph 35 above, were consistent with the removal of its operating business.

43. Upon information and belief, Maxill Ohio did not receive reasonably equivalent value for the transfer of the security interest associated with the February 28, 2024 UCC filing described in paragraph 35 above, and the purported antecedent debt did not supply such value. Upon information and belief, Maxill Ohio was then insolvent or became insolvent as a result of that transfer, and the encumbrance left it with unreasonably small assets for its business.

44. After Loops challenged the transactions in this action, BaderCap purportedly assigned its interest in the 2017 Mortgage to Maxill Canada, and a UCC amendment identified Maxill Canada as the assignee of BaderCap's secured-party position of record concerning Maxill Ohio's assets. Maxill Dental also purportedly granted Maxill Canada a new security interest in the operating assets previously transferred from Maxill Ohio. Upon information and belief, Shaw coordinated those steps to move the disputed secured positions out of BaderCap while maintaining purported insider

encumbrances over the Cortland Property and the transferred operating assets. Those changes preserved claims of priority within Shaw's controlled businesses while Loops sought to reach the same assets.

45. Through the 2024 Transfer, Shaw placed his interest in 2 Victoria Street in Thompson's name while Loops' claims against him remained pending. Thompson was employed by Maxill Canada and reported directly to Shaw. Upon information and belief, Shaw made the transfer to hinder, delay, or defraud creditors, including Loops. His relationship with Thompson, the timing of the transfer, and the property's subsequent designation as BaderCap's notice address in the 2025 Surrendering Agreement connect the transfer to the broader plan alleged above.

46. The timing of the challenged transactions reinforces their alleged purpose. The assets were encumbered and transferred while Loops' claims remained unresolved, and the purported insider secured claims were asserted and enforced as other creditors obtained awards and judgments and pursued collection. Upon information and belief, Shaw responded to those collection efforts by directing transfers of assets and secured rights among related recipients, hindering Loops' ability to obtain payment while preserving the business and his control over its operations.

47. Upon information and belief, Shaw's control over the Maxill Entities in the challenged transactions was so complete that they lacked a separate mind, will, or existence of their own. Shaw exercised that control to cause the fraudulent transfers and obligations alleged herein, injuring Loops by removing or encumbering assets otherwise available to satisfy its claims. These facts further support the alter ego allegations above and Loops' request to hold Shaw personally liable for the wrongful acts of the Maxill Entities established to be his alter egos.

***BaderCap's Purported Financial Advisor***

48. The circumstances concerning BaderCap's purported financial advisor, described below, further support the allegation that BaderCap was used to create an appearance of legitimate,

independent financing for the purported indebtedness and transactions through which defendants sought to shield assets from creditors, including Loops.

49. A LinkedIn profile for Brian DeYue identified him as a Strategic Financial Advisor for Maxill and a Private Equity Analyst for SMIC - BaderCap Investments, as shown in the screenshots below:




////

////

////

////

////

## Work experience

**Private Equity Analyst**
SMIC - BaderCap Investments
February 2010- Currently · 15 years and 9 months
Taipei City, Taiwan

**Colgate-Palmolive**
7 years

**Finance Analyst**
2007 - 2010 · 3 years
Beijing City, China
Analyst and banking liaison for restructuring and acquisitions.

**Mergers Acquisition**
2004-2007 · 3 years
São Paulo Area, Brazil

**Taxation Manager**
2003-2004 · 1 year
São Paulo Area, Brazil
Import and Export Tax Reclamation

**Junior Costing Intern**
Volkswagen of Brazil
2000 - 2002 · 2 years
São Paulo Area, Brazil
Costs inputs and updates for the Mercosur region.

## Educational Background

**London Business School**
Finance · Business/Managerial Economics

**The London School of Economics and Political Science (LSE)**
Fianance · Business Administration and Management, General

////

50. The photograph used in the LinkedIn profile appearing under Brian DeYue's name is identical to the photograph used in a LinkedIn profile appearing under the name Ahmad Nizam Shahrul Wajdi. As shown below, the latter profile lists employment with PETRONAS and GE and education at Universiti Teknologi Malaysia, rather than the employment and education listed in the Brian DeYue profile:




////

////

////

## Experience

**Lead Sourcing Specialist**
PETRONAS
Dec 2018 - Present · 6 yrs 11 mos
WP. Kuala Lumpur, Federal Territory of Kuala Lumpur, Malaysia

**Supply Chain Management Analyst**
GE
Feb 2015 - Nov 2018 · 3 yrs 10 mos
w.linkedin.com/company/1015/
WP. Kuala Lumpur, Federal Territory of Kuala Lumpur, Malaysia

**Internship**
PETRONAS
Dec 2013 - May 2014 · 6 mos
Kuala Lumpur, Federal Territory of Kuala Lumpur, Malaysia

## Education

**Universiti Teknologi Malaysia**
Bachelor's degree, Computer and Information Sciences and Support Services
2009 - 2013

Grade: 3.89

////

////

////

////

////

////

////

////

////

51. The photograph used in both profiles was taken from iStock, an online stock photography provider based in Canada, where it appears under the description "Asian Businessman 2" (https://www.istockphoto.com/photo/asian-businessman-2-gm92591698-822658), as shown in the screenshot below. The use of this stock photograph further calls into question the authenticity of the profile appearing under Brian DeYue's name.




////

////

////

52. Upon information and belief, the Brian DeYue LinkedIn profile presented a misleading appearance of professional financial operations linking Maxill and BaderCap. Together with Shaw's control of the challenged transactions, the use of addresses associated with Shaw and Thompson, and the movement of purported secured rights into and later out of BaderCap, these circumstances further support the allegation that BaderCap served as a conduit in the plan to hinder, delay, or defraud Loops described in paragraphs 35 through 47 above.

***Injury to Loops Resulting from Defendants' Wrongful Conduct***

53. Through their respective roles in the challenged transactions, defendants transferred or encumbered assets and created, assigned, or enforced purported obligations with the intent to hinder, delay, or prevent Loops from obtaining payment on its claims.

54. Those transactions directly injured Loops by removing or encumbering assets otherwise available to satisfy its claims in the Washington Action and the 2015 Canadian Action, while allowing Shaw and the businesses he controls to retain possession, control, or use of those assets.

55. But for the fraudulent scheme alleged herein, Loops could recover from assets otherwise available to satisfy its claims. Defendants' conduct impaired that recovery by placing those assets beyond Loops' reach or subjecting them to purported insider claims of priority.

56. Loops' injury resulted from defendants' respective participation in the challenged transactions, including Shaw's use of his domination and control over the Maxill Entities to cause them to carry out those transactions. Loops seeks relief against each defendant based on that defendant's role and seeks to hold Shaw personally liable under the alter ego allegations above.

////

////

////

## FIRST CLAIM FOR RELIEF

**(Fraudulent Transfers and Obligations Against All Defendants Pursuant to Ohio Rev. Code §§ 1336.04(A)(1), 1336.04(A)(2), and 1336.05(A))**

57. Loops hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 56 above.

58. This claim arises under the Ohio Uniform Fraudulent Transfer Act, Ohio Rev. Code §§ 1336.01 et seq.

59. Loops is a creditor of Maxill Canada, Maxill Ohio, and Shaw within the meaning of Ohio Rev. Code § 1336.01(D), by virtue of its rights to payment arising from the patent infringement and breaches of contract alleged above and pursued in the Washington Action and the 2015 Canadian Action. The timing of those claims in relation to the challenged transactions is alleged in paragraph 35 above. Those rights to payment constitute "claims" within the meaning of Ohio Rev. Code § 1336.01(C), whether or not reduced to judgment, liquidated, matured, or disputed. Defendants knew or reasonably should have known that Maxill Canada, Maxill Ohio, and Shaw faced substantial and foreseeable liability to Loops arising from their respective wrongful acts at issue in those actions.

60. Upon information and belief, Maxill Realty granted BaderCap the 2017 Mortgage on the Cortland Property, bearing an effective date of October 6, 2017, and a stated maximum principal amount of $14 million, although the property had a fair market value of approximately $2 million. Shaw acknowledged the mortgage before a notary on October 18, 2017, on behalf of Maxill Realty as its president. These events occurred while Loops was pursuing its breach of contract claims in the 2015 Canadian Action and its patent infringement claim against Maxill Canada in the Utah Action.

61. Upon information and belief, Shaw owned, controlled, or directed BaderCap and used it as a shell or conduit to fabricate or exaggerate indebtedness and encumber the Cortland Property to hinder, delay, or prevent creditors, including Loops, from reaching that property.

BaderCap's designation of 2 Victoria Street, the property in which Shaw transferred his interest to Thompson, as its notice address in the 2025 Surrendering Agreement further supports its connection to Shaw and the challenged transactions.

62. Upon information and belief, BaderCap did not provide bona fide loan advances or other reasonably equivalent value to Maxill Realty in exchange for the 2017 Mortgage and the obligations it purported to secure. Upon information and belief, Shaw intended to use the mortgage's open-end structure to claim additional fictitious indebtedness and thereby inflate the purported encumbrance on the Cortland Property.

63. Upon information and belief, in addition to Maxill Realty's execution of the 2017 Mortgage in favor of BaderCap, the following transactions were undertaken as successive steps in the same plan to hinder, delay, or defraud creditors:

(a) On August 1, 2020, Maxill Ohio incurred purported loan indebtedness of approximately $8.22 million to Maxill Canada under the 2020 Loan Agreement and 2020 Promissory Note and granted Maxill Canada a security interest in substantially all of Maxill Ohio's assets under the 2020 Security Agreement. The security interest in Maxill Ohio's inventory, equipment, and accounts receivable was first perfected, to the extent otherwise valid and enforceable, through the February 28, 2024 UCC filing identified in paragraph 35 above;

(b) Also on August 1, 2020, Maxill Ohio incurred an upfront royalty obligation of approximately $8.22 million payable to Maxill Canada under the 2020 Services and License Agreement, matching the amount of the purported loan indebtedness under the 2020 Loan Agreement and 2020 Promissory Note, together with continuing royalties and service charges;

(c) By July 12, 2024, Maxill Canada purportedly incurred a CAD $18,852,200 debt to BaderCap for the redemption of preference shares held by BaderCap;

(d) Through the 2024 Assignment of Debt and Security, Maxill Canada assigned to BaderCap its rights under the 2020 Promissory Note and 2020 Security Agreement, purportedly in partial satisfaction of Maxill Canada's CAD $18,852,200 preference-share redemption debt to BaderCap;

(e) Shaw transferred to Thompson his interest in the property at 2 Victoria Street, St. Thomas, Ontario;

(f) Upon information and belief, Shaw caused funds belonging to Maxill Ohio to be diverted to one or more of the other defendants or other entities controlled by Shaw;

(g) In 2025, Maxill Ohio agreed to surrender its operating assets to BaderCap or its designee and subsequently transferred those assets to Maxill Dental under the 2025 Bill of Sale, without Maxill Dental assuming Maxill Ohio's liabilities;

(h) BaderCap purportedly assigned its interest as mortgagee under the 2017 Mortgage to Maxill Canada in February 2026. A UCC financing statement amendment filed on February 25, 2026, also identified Maxill Canada as the assignee of BaderCap's secured party position of record under the financing statement concerning the 2020 Security Agreement; and

(i) Under the 2026 Security Agreement, Maxill Dental granted Maxill Canada a purported security interest covering the operating assets previously transferred from Maxill Ohio.

The transactions identified in subparagraphs (a) through (i) above created purported insider obligations or moved assets and secured rights among Shaw, Thompson, and the businesses Shaw

controlled, impairing creditors' ability to obtain payment while preserving insider control over the assets and the ongoing business.

64. Maxill Realty's execution and recordation of the 2017 Mortgage in favor of BaderCap, its incurrence of the obligations purportedly secured by that mortgage, and the transfers and obligations identified in paragraph 63(a) through (i) above were undertaken with actual intent to hinder, delay, or defraud Loops as a creditor, in violation of Ohio Rev. Code § 1336.04(A)(1). Indicators of actual intent, as applicable to the respective transactions, include, among others:

(a) the 2017 Mortgage and the obligations, assignments, and asset transfers identified in paragraph 63(a) through (i) above involved insiders, including businesses owned or controlled by Shaw;

(b) Maxill Realty retained possession and control of the Cortland Property after granting the 2017 Mortgage, and the Ohio distribution business continued using Maxill Ohio's former operating assets after their transfer to Maxill Dental;

(c) the purported obligations secured by the 2017 Mortgage and the 2020 Security Agreement were presented as legitimate indebtedness despite the absence of bona fide indebtedness or reasonably equivalent value, as alleged above;

(d) the 2017 Mortgage and the transactions identified in paragraph 63(a) through (i) above occurred against the background of pending or threatened creditor claims, including Loops' claims, as described in paragraph 35 above;

(e) Maxill Ohio transferred substantially all of its operating assets to Maxill Dental in 2025 while Maxill Ohio's liabilities remained with Maxill Ohio;

(f) Maxill Ohio was insolvent when it surrendered and transferred its operating assets in 2025 or became insolvent as a result;

(g) Maxill Dental was formed one day before the 2025 Bill of Sale and continued the distribution business previously operated by Maxill Ohio; and

(h) Maxill Canada assigned its purported secured rights against Maxill Ohio to BaderCap, and BaderCap later purportedly assigned its mortgage interest to Maxill Canada while the February 25, 2026 UCC amendment identified Maxill Canada as the assignee of BaderCap's secured-party position of record after Loops challenged the transactions.

65. For purposes of Ohio Rev. Code Chapter 1336, the transfer of the security interest described in paragraph 63(a) above is treated as made on February 28, 2024 pursuant to Ohio Rev. Code § 1336.06(A)(1)(b). As an alternative to the actual intent grounds alleged above, the transfer of the security interest, as described in paragraph 63(a), and Maxill Ohio's surrender of its operating assets to BaderCap or its designee and subsequent transfer of those assets to Maxill Dental in 2025, as described in paragraph 63(g), were constructively fraudulent under Ohio Rev. Code § 1336.04(A)(2), because Maxill Ohio did not receive reasonably equivalent value in exchange for each respective transfer and, at the time of each transfer, was engaged in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or intended to incur, believed, or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

66. The transfer of the security interest described in paragraph 63(a) above and Maxill Ohio's surrender of its operating assets to BaderCap or its designee and subsequent transfer of those assets to Maxill Dental in 2025 were also constructively fraudulent under Ohio Rev. Code § 1336.05(A). Loops' right to payment from Maxill Ohio arose before each respective transfer, Maxill Ohio did not receive reasonably equivalent value in exchange for each respective transfer, and Maxill Ohio was insolvent when each respective transfer was made or became insolvent as a result.

67. Loops seeks relief under Ohio Rev. Code § 1336.04(A)(1) concerning the 2017 Mortgage and the obligations it purported to secure, together with the transfers and obligations identified in paragraph 63(a) through (i) above. With respect to the transfer of the security interest, as described in paragraph 63(a), and Maxill Ohio's surrender of its operating assets to BaderCap or its designee and subsequent transfer of those assets to Maxill Dental in 2025, as described in paragraph 63(g), Loops also seeks relief under Ohio Rev. Code §§ 1336.04(A)(2) and 1336.05(A) as alternative grounds for finding those transfers fraudulent.

68. Loops seeks relief against each defendant based on that defendant's role in the particular transaction as a debtor, transferee, obligee, or person for whose benefit a transfer was made, as alleged herein, and additionally against Shaw under the alter ego allegations set forth above.

69. As a direct and proximate result of the 2017 Mortgage and the obligations it purported to secure, together with the transfers and obligations identified in paragraph 63(a) through (i) above, Loops has been and will continue to be hindered, delayed, and impaired in its efforts to collect upon its rights to payment in the Washington Action and the 2015 Canadian Action. The encumbrance of the Cortland Property, creation and assignment of purported insider obligations, diversion of Maxill Ohio's funds, transfer of Shaw's interest in the property at 2 Victoria Street, and surrender, transfer, and subsequent encumbrance of Maxill Ohio's former operating assets removed or encumbered assets otherwise available to satisfy Loops' rights to payment while preserving Shaw's control over assets and the ongoing business.

70. Pursuant to Ohio Rev. Code §§ 1336.07 and 1336.08, Loops seeks relief concerning the 2017 Mortgage and the obligations it purported to secure, together with the transfers and obligations identified in paragraph 63(a) through (i) above. Loops seeks avoidance of those transfers and obligations and nullification or subordination of the resulting mortgages, security interests, and other encumbrances to the extent necessary to satisfy its rights to payment; a constructive trust upon

transferred property and identifiable proceeds; injunctive relief restraining further transfer or encumbrance; and a money judgment against the transferees and beneficiaries liable under § 1336.08 for the value of the assets transferred, subject to equitable adjustment, or the amount necessary to satisfy Loops' rights to payment, whichever is less, together with costs, attorneys' fees to the extent permitted by law, and such other relief as the Court deems just and equitable.

71. Defendants' respective conduct in directing and carrying out the execution and recordation of the 2017 Mortgage, the incurrence of the obligations it purported to secure, and the transactions identified in paragraph 63(a) through (i) above were undertaken with actual malice, intent to defraud, and conscious disregard for the rights of Loops. Such conduct was willful, wanton, and malicious, and Loops seeks punitive or exemplary damages against each defendant responsible for that intentionally fraudulent conduct to the extent permitted by Ohio law.

72. Loops avers that it did not discover, nor could it reasonably have discovered, any of the transfers or obligations on which it sues, or their fraudulent nature, more than one year before first asserting claims concerning them in this action.

## PRAYER FOR RELIEF

WHEREFORE, Loops prays for relief as follows:

A. That the Court find and declare that the 2017 Mortgage between Maxill Realty and BaderCap and the obligations it purported to secure constitute a fraudulent transfer or the incurrence of fraudulent obligations under Ohio Rev. Code § 1336.04(A)(1);

B. That the Court, pursuant to Ohio Rev. Code § 1336.07, avoid, set aside, or subordinate the 2017 Mortgage and any related liens or encumbrances on the Cortland Property, and avoid the fraudulent obligations purportedly secured thereby, to the extent necessary to satisfy Loops' rights to payment;

C. That the Court impose a constructive trust upon the Cortland Property, its rents, proceeds, and profits for the benefit of Loops to the extent necessary to satisfy Loops' rights to payment, and issue injunctive relief prohibiting further transfer, conveyance, or encumbrance of that property or its proceeds pending satisfaction of those rights;

D. That the Court find and declare that the additional transfers and obligations identified in paragraph 63(a) through (i) above constitute fraudulent transfers or the incurrence of fraudulent obligations under Ohio Rev. Code § 1336.04(A)(1), and that the transfer of the security interest, as described in paragraph 63(a), and Maxill Ohio's surrender of its operating assets to BaderCap or its designee and subsequent transfer of those assets to Maxill Dental in 2025, as described in paragraph 63(g), also constitute constructively fraudulent transfers under Ohio Rev. Code §§ 1336.04(A)(2) and 1336.05(A);

E. That the Court, pursuant to Ohio Rev. Code §§ 1336.07 and 1336.08 and other applicable law, grant Loops appropriate relief at law or in equity concerning the transfers and obligations identified in paragraph 63(a) through (i) above, including avoidance of the transfers and obligations; nullification or subordination of the resulting liens and security interests; recovery or attachment of transferred assets or identifiable proceeds; imposition of a constructive trust; and injunctive relief against further disposition or encumbrance, to the extent necessary to satisfy Loops' rights to payment;

F. That the Court enter a money judgment against each Defendant liable as a transferee or person for whose benefit a fraudulent transfer was made under Ohio Rev. Code § 1336.08, for the value of the asset fraudulently transferred or encumbered, subject to equitable adjustment, or the amount necessary to satisfy Loops' rights to payment, whichever is less, with joint and several liability to the extent permitted by law and without duplicative recovery;

G. That the Court pierce the corporate veil of the Maxill Entities as established by the evidence and hold Shaw personally liable for their liabilities arising from the fraudulent transfers and obligations alleged in this action;

H. That the Court award Loops punitive or exemplary damages against each Defendant responsible for intentionally fraudulent and malicious conduct in an amount sufficient to punish and deter that conduct, subject to proof at trial and to the extent permitted by Ohio law;

I. That the Court award Loops prejudgment and postjudgment interest and costs of suit against the Defendants liable for such relief, as permitted by law;

J. That the Court award Loops its reasonable attorneys' fees incurred in this action to the extent permitted by applicable law; and

K. That Loops receive such other and further relief as this Court may deem just and proper.

Dated: October 6, 2026

Respectfully submitted,

*s/ David B. Cupar*

David B. Cupar (0071622)
Matthew J. Cavanagh (0079522)
Benjamin Foote-Huth (0104192)
McDONALD HOPKINS
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5400
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com
bfootehuth@mcdonaldhopkins.com

David M. Kohn (*pro hac vice*)
Michael T. Lane (*pro hac vice*)
John M. Houkom (*pro hac vice*)
Zachary S. Tedford (*pro hac vice*)
LEWIS KOHN & WALKER, LLP

17085 Via Del Campo
San Diego, CA 92127
Telephone: (858) 436-1332
dkohn@lewiskohn.com
mlane@lewiskohn.com
jhoukom@lewiskohn.com
ztedford@lewiskohn.com

*Attorneys for Plaintiff Loops L.L.C.*

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Loops hereby demands a trial by jury as to all claims and all issues triable by jury.

*s/ David B. Cupar*
*Attorney for Plaintiff Loops L.L.C.*