**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| LOOPS, L.L.C.,<br><br>Plaintiff,<br><br>v.<br><br>MAXILL INC., *et al.*,<br><br>Defendants. | Case No. 4:25-cv-02346-BYP<br><br>JUDGE BENITA Y. PEARSON |

**MAXILL DEFENDANTS' OPPOSITION TO LOOPS'S MOTION TO DISMISS REMAINING COUNTERCLAIMS (I–IV AND VII)**

## I. INTRODUCTION

Loops has a long history of suing Maxill[1]over Maxill's SuperMaxx toothbrush, going back to 2012. But Loops has not won any judgment. During that time, Maxill has spent a fortune in time and resources defending against Loops's meritless claims. Loops should never have brought this latest case, in which Loops asserted two patents (the '940 and '311 patents)[2] that it procured through inequitable conduct. During prosecution, Loops did not tell the USPTO that it had been selling toothbrushes embodying its purported invention for *twelve years* before Loops filed its applications. Then Loops filed this lawsuit, accusing Maxill of infringing these patents by making and selling a toothbrush that Maxill had also been offering well before Loops filed its patent applications.

Maxill's counterclaims seek concrete relief concerning these two patents: invalidity and unenforceability of the Asserted Patents and fees under 35 U.S.C. § 285 incurred in defending against this exceptional case. Loops concedes that the Court retains jurisdiction over Counterclaims I–IV. The question Loops poses in its Brief[3] is whether adjudicating these counterclaims provides Maxill a practical benefit and serves wise judicial administration. (Brief, pp. 6, 9.) It does.

***First***, dismissing the counterclaims is not "wise judicial administration" because doing so would not eliminate the invalidity and unenforceability issue from the case. This Court

---

[1] Maxill refers to all of the "Maxill Defendants", *i.e.*, Maxill, Inc. ("Maxill Ohio"), Maxill, Inc. ("Maxill Canada"), Maxill Realty, Inc., and John Dennie Shaw.

[2] U.S. Patent No. 10,334,940 and U.S. Patent No. 11,013,311, referred to as the "Asserted Patents".

[3] "Motion" refers to Loops's Motion to Dismiss Remaining Counterclaims (I–IV and VII) (Dkt. No. 60). "Brief" refers to Loops's corresponding Memorandum in Support (Dkt. No. 60-1).

indisputably has jurisdiction to hear Maxill's § 285 fees claim and Maxill, as the prevailing party on the patent infringement claims, has a right to seek that relief. Loops's proposal would disrupt the orderly adjudication of those issues, given Loops's belief that dismissal would eliminate the "odyssey" of federal and local rules governing the case. (Brief, p. 12.) ***Second***, relatedly, by allowing Maxill's counterclaims, and thus keeping to the schedule the Parties jointly proposed and this Court ordered, Maxill will be able to fairly and efficiently litigate its basis for § 285 fees (inequitable conduct). ***Third***, Maxill will also benefit from unenforceability rulings because those rulings would extend to and impact unasserted patent family members stemming from that same conduct, providing Maxill much-needed assurance that Loops will not sue Maxill again on similar unasserted patents. This is not mere speculation given Loops's litigation history against Maxill and Loops's refusal to provide a covenant not to sue Maxill on these similar unasserted patents. In short, Loops concedes that this Court has jurisdiction to hear Maxill's counterclaims, and wise judicial administration would allow those claims to remain in the case and be litigated subject to the schedule the Parties have already agreed to. Loops's Motion should be denied.

## II. BACKGROUND

Loops filed its applications for its '940 and '311 Patents in December 2017 and July 2019, respectively. (Exs. A, B.) Both applications were "continuations in part", which means the applications added new material to an earlier Loops patent application (resulting in U.S. 8,448,285). Adding this new material gave these applications a priority date corresponding to when they filed the applications—in other words, the USPTO would look at the '940 and '311 filing dates as a reference for determining whether the invention was "new" and patentable. (*See* Dkt. No. 33 at 5.) But Loops concealed from the USPTO the fact that its patent claims were *not*

new: Loops had been selling its own product, which Loops admits is covered by the Asserted Patents, since ***November 23, 2005***:

LOOPS FLEXBRUSH, L.L.C.
Flexbrush Sales History

| Year | Nbr Pcs | Sales Amount |
|---|---|---|
| 2005 (a) | 12,960 | $12,273.36 |
| 2006 | 321,936 | $305,353.20 |
| 2007 | 324,576 | $314,932.62 |
| 2008 | 241,488 | $244,070.48 |
| 2009 | 218,832 | $223,670.69 |
| 2010 | 190,464 | $199,465.84 |
| 2011 | 202,608 | $227,920.61 |
| 2012 | 195,936 | $219,780.78 |
| 2013 | 259,680 | $284,208.47 |
| 2014 | 351,072 | $432,370.88 |
| 2015 | 277,344 | $298,050.95 |
| 2016 | 322,560 | $467,673.85 |
| 2017 | 254,016 | $438,318.72 |
| 2018 | 390,480 | $573,714.35 |
| 2019 | 352,704 | $564,105.98 |
| 2020 | 267,312 | $427,471.34 |
| 2021 | 290,208 | $508,697.68 |
| 2022 | 388,656 | $682,950.57 |
| 2023 | 361,632 | $767,812.20 |
| Total | 5,224,464 | $7,192,842.57 |

(a) 1st sale 11-23-05

(Dkt. No. 33-5 at 38 (annotated).) These prior sales would have prevented the issuance of the asserted claims of the ’940 and ’311 Patents and other claims in the same family because they occurred years before the effective filing dates alleged for those claims.

In addition, while Loops was prosecuting the ’940 and ’311 Patents from 2017 to 2021, Loops never told the USPTO about *Maxill’s* SuperMaxx product, which Maxill had also been selling for years before Loops filed these applications. Loops no-doubt knew about Maxill’s products because it accused Maxill’s SuperMaxx toothbrush of infringement in Canada in 2012 and in the Western District of Washington in February 2018. Given Loops’s own allegations in this case that Maxill’s SuperMaxx toothbrush infringes the ’940 and ’311 Patents, the

SuperMaxx toothbrush would have precluded the ’940 and ’311 Patents from issuing during prosecution had it been disclosed.

After procuring the ’940 and ’311 Patents by hiding Maxill’s invalidating SuperMaxx toothbrush (and Loops’ own invalidating products) from the USPTO, Loops then asserted these patents against Maxill’s SuperMaxx toothbrush in the Southern District of California in 2025, voluntarily dismissed those claims without prejudice, then asserted the same claims against Maxill here in this Court on October 30, 2025.

On April 3, 2026, before Maxill filed its counterclaims, Maxill wrote to Loops counsel, demanding that Loops dismiss its infringement claims in view of Loops’s inequitable conduct. (Ex. C.) Loops responded on April 17 and did not deny any of the facts demonstrating the inequitable conduct. Instead, Loops refused to withdraw its claims, stating that its patents “enjoy a statutory presumption of validity,” and refused to address the inequitable conduct issue until “claim construction, discovery, potentially expert testimony, and adjudication at summary judgment or trial.” (Ex. D.) Maxill followed up on May 1, urging Loops to drop its patent claims. (Ex. E.) Loops did not substantively respond or withdraw its claims, and Maxill was forced to file its counterclaims on May 20, 2026, setting forth the inequitable conduct in detail. (Dkt. No. 39.)

Two and a half months later on August 5, 2026, the Parties filed a Report of Parties’ Planning Meeting, jointly informing the Court that (1) Loops agreed to dismiss its patent infringement claims with prejudice, (2) Maxill agreed to dismiss its non-infringement counterclaims, and (3) that Defendants’ “***invalidity, unenforceability, and exceptional case claims will remain for adjudication in this action***.” (Dkt. No. 48, n. 1.) The Parties also proposed a case schedule for adjudicating Maxill’s counterclaims, including

invalidity/unenforceability contentions due two months later on October 9, 2026, and validity/enforceability contentions due on October 29, 2026. (*Id.* at 1–3.) On August 10, 2026, Loops moved to dismiss its patent infringement claims with prejudice (Dkt. No. 49), which the Court granted the same day (Dkt. No. 50). Maxill then moved to dismiss its counterclaims for non-infringement without prejudice on August 31, 2026 (Dkt. No. 58), which was granted on September 3, 2026 (Dkt. No. 59).

On September 29, 2026, nearly two months after jointly informing the Court that Maxill's counterclaims "remain for adjudication in this action" and establishing a schedule for exchanging contentions, Loops moved to dismiss Maxill's counterclaims. Loops's request, which was made just ***days before*** Maxill's invalidity/unenforceability contentions were due, asks this Court to invoke its discretion to dismiss Maxill's counterclaims on considerations of "practicality and wise judicial administration." (Brief, p. 5.)

On October 9, 2026, Maxill served its invalidity/unenforceability contentions, consisting of 97 pages of analysis and argument and a document production consisting of nearly 900 pages. And Loops's served its responsive validity/enforceability contentions today (October 29, 2026).

## III. LAW AND ARGUMENT

### A. <u>Maxill's § 285 Counterclaim is procedurally proper and should not be dismissed.</u>

Maxill's counterclaim for fees under 35 U.S.C. § 285 is procedurally proper, and courts have rejected Loops's same arguments in denying similar motions to dismiss. Loops is thus wrong in representing that "[c]ourts unanimously agree that 'an assertion of an "exceptional case" under 35 U.S.C. § 285 is not a separate cause of action.'" (Brief, p. 12.) In *H.R. Techs., Inc. v. Astechnologies, Inc.*, the Federal Circuit, while not expressly addressing the issue, implicitly confirmed that bringing a § 285 counterclaim is procedurally proper when it *reversed* a

dismissal of a § 285 counterclaim after the plaintiff dismissed its patent claims, reasoning that "it was not improper for [the defendant] to assert the counterclaim[] of . . . section 285 attorney fees against [the plaintiff]." 275 F.3d 1378, 1386 (Fed. Cir. 2002). District courts have also denied motions to dismiss a § 285 counterclaim. For example, in *Great Lakes Intellectual Prop., Ltd. v. Sakar Int'l, Inc.*, the court denied a motion to dismiss, relying on Federal Circuit precedent and Sixth Circuit precedent regarding the 12(b)(6) standard. 2007 U.S. Dist. LEXIS 99797, at *9 (W.D. Mich. Dec. 14, 2007). The *Great Lakes* court reasoned that under Sixth Circuit law, a "counterclaim should not be dismissed under Rule 12(b)(6) unless the pleader fails to allege any set of facts which, if accepted as true, entitle it to relief" and that the § 285 counterclaim "allege[s] facts which, if proven, could establish extraordinary circumstances within the meaning of section 285, thus entitling defendant to request the court to exercise its discretion to award fees." *Id.* In *Great Lakes*, the court further reasoned that "[t]he Federal Circuit has remarked that section 285 'places no procedural limitations on the court's ability to make such an award provided that it has jurisdiction over the case.'" *Id.* at *10 (quoting *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 n. 3 (Fed. Cir. 2005)). There is no dispute that this Court has jurisdiction to hear Maxill's § 285 claim and that Maxill has pleaded it sufficiently as a counterclaim—there is thus no basis under the law to dismiss it. *See id.* at *12; *see also In re Rivastigmine Patent Litig. (MDL No. 1661)*, 246 F.R.D. 428, 431 (S.D.N.Y. 2007) (expressly allowing a defendant to amend counterclaims to add § 285 counterclaim after plaintiff voluntarily dismissed infringement claim). Moreover, dismissing Maxill's § 285 counterclaim would serve no purpose, as Loops concedes that Maxill may move for such relief regardless. Loops's Motion should be denied.

B. Practicality and wise judicial administration do not support dismissing Maxill's unenforceability and invalidity counterclaims.

Loops concedes that this Court has jurisdiction to hear Maxill's invalidity and unenforceability counterclaims. (Brief, p. 5, "Loops does not contend that the Court lacks subject matter jurisdiction over Counterclaims I–IV.") Instead, Loops invokes "practicality and wise judicial administration" as the reason this Court should, *in its discretion*, dismiss Maxill's counterclaims. (*Id.*) But dismissing those counterclaims is neither practical nor wise judicial administration. Even if this Court grants Loops's request, this Court will still have to determine whether Loops's patents are invalid and unenforceable when Maxill moves for fees under 35 U.S.C. § 285.[4] Loops quietly concedes this in its Brief (Motion, p. 2): "It is a statutory right to *move* for fees. Maxill may file a § 285 motion at the appropriate time"), but Loops ignores its import: Maxill's basis for § 285 fees is that Loops's Asserted Patents are ***unenforceable*** because Loops concealed invalidating prior art from the USPTO that would have made the Asserted Patents ***invalid***.

Loops ignores this obvious strike against judicial efficiency in its Motion and, instead, claims that Maxill will receive no "additional benefit" from prevailing on its invalidity and unenforceability counterclaims. (Brief, p. 6.) This is not true. If Maxill prevails on its invalidity and unenforceability counterclaims, (1) Maxill will have established a recognized basis for finding a case exceptional under § 285 and awarding attorneys' fees, and (2) an unenforceability finding will have a broader impact on Loops's very similar unasserted patents through the doctrine of infectious unenforceability, which will give Maxill the assurance it can continue to sell its SuperMaxx toothbrush without further patent infringement litigation.

[4] Maxill is the prevailing party on Loops's patent infringement claims given that Loops dismissed them with prejudice.

1. *Allowing Maxill's Counterclaims is proper in view of Maxill's claim for § 285 fees.*

The Court should deny Loops's Motion in view of Maxill's claim for § 285 fees due to Loops's inequitable conduct. Contrary to Loops's claim that Maxill's counterclaims would provide no "additional benefit" to Maxill beyond the non-infringement judgment, adjudicating Maxill's basis for its § 285 claim (i.e., inequitable conduct) *is* an "additional benefit" sufficient to deny Maxill's Motion.

Inequitable conduct is routinely found as a basis for fees under § 285. *See Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 669 (Fed. Cir. 2000) ("A finding of inequitable conduct can be the basis for awarding fees under section 285."); *see also*, *Nilssen v. Osram Sylvania*, 528 F.3d 1352, 1358 (Fed. Cir. 2008); *Bruno Indep. Living Aids, Inc. v. Acorn Mobility*, 394 F.3d 1348, 1351 (Fed. Cir. 2005); *A.B. Chance Co. v. RTE Corp.*, 854 F.2d 1307, 1312–13 (Fed. Cir. 1988); *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001); *OnStar, LLC v. Micral, Inc.*, 1:08 CV 2047, 2010 U.S. Dist. LEXIS 69258, at *12 (N.D. Ohio July 12, 2010). A finding of inequitable conduct requires a showing that the applicant (1) knew of a prior art reference, (2) knew it was material to patentability, and (3) deliberately withheld it from the USPTO. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). Materiality requires a showing that the USPTO would not have allowed the patent claims if it knew about the reference—this is essentially an invalidity analysis. *Id.* at 1391–92. Once a court finds a patent was obtained through inequitable conduct, it *must* find it unenforceable. *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1243 (Fed. Cir. 2008) ("A district court has no discretion to decide whether a patent is unenforceable once it enters a finding of inequitable conduct.")

Accordingly, resolving Maxill's request for fees under § 285 will necessarily involve determining unenforceability and invalidity. In Counterclaims III and IV, Maxill set forth its unenforceability claims, which describe Loops's inequitable conduct in detail. The Federal Circuit's decision in *Monsanto Co. v. Bayer Bioscience N.V.* illustrates why dismissing Maxill's counterclaims will not divest this Court from deciding these issues. In *Monsanto*, the plaintiff dismissed three of its patents from an infringement case with prejudice and filed a covenant not to sue the defendant on those patents (something Loops has not done). *Id.* at 1242. The district court ultimately held that those three patents were unenforceable due to inequitable conduct. *Id.* The plaintiff appealed, arguing that the district court lacked jurisdiction to find the dismissed patents unenforceable because of the dismissal and covenant not to sue. The Federal Circuit affirmed because "the district court's jurisdiction to rule on attorney fees encompassed the jurisdiction to make findings of inequitable conduct regarding all four patents." *Id.* And once the court finds inequitable conduct, it must find the patent unenforceable: "the unenforceability of a patent follows automatically once a patent is found to have been obtained via inequitable conduct." *Id.* at 1243. Accordingly, dismissing Maxill's counterclaims simply because non-infringement has been established will not and should not avoid determining inequitable conduct or invalidity. *See also Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1348 (Fed. Cir. 2005) (reversing dismissal of inequitable conduct counterclaim and request for § 285 after jury non-infringement verdict). Rather, the real question Loops poses to this Court is whether abandoning the Local Patent Rules and discovery on these issues before ruling on them is "practical[] and wise judicial administration." (Brief, p. 5.) It is not.

Loops contends that dismissing Maxill's counterclaims will avoid "claim construction, invalidity and unenforceability contentions, expert disclosures and discovery, summary

judgment, *Daubert* practice, trial, and appeal." (*See* Brief, p. 2.) But this is not a good reason to dismiss Maxill's counterclaims—it is the opposite. This would just sacrifice the efficiencies and fairness embedded in Local Patent Rules and Federal Rules of Civil Procedure before adjudicating an issue that is indisputably in play in this case. This would not be a practical or wise use of this Court's discretion. Rather, it would prejudice Maxill in its right to pursue § 285 fees. Loops's Motion should be denied.

2. *A finding that the '940 and '311 Patents are unenforceable will provide assurance to Maxill it can continue selling its SuperMaxx toothbrush without further patent infringement allegations.*

In addition to the benefit described above, which is sufficient to deny Loops's Motion, Maxill would also benefit from an inequitable conduct ruling because that finding would impact the similar patents in the Asserted Patents' same family that Loops held back in this litigation. If a patent is found unenforceable due to inequitable conduct, that unenforceability "may render unenforceable all claims which eventually issue from the same or a related application." *Agfa Corp. v. Creo Prods.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006). This doctrine is known as "infectious unenforceability." *Guardant Health, Inc. v. Found. Med., Inc.*, Nos. 17-1616-LP S-CJB; 17-1623-LPS-CJB, 2020 U.S. Dist. LEXIS 87453, at *10 (D. Del. Jan. 7, 2020).

As explained above, Loops withheld material information throughout prosecuting the patent family of the Asserted Patents going back to the '285 Patent's prosecution (the parent of the Asserted Patents). (*See supra*, p. 3.) At minimum, this infectious unenforceability would likely extend to Loops's U.S. 12,064,028 Patent, which is a continuation-in-part of both of the Asserted Patents and very similar in subject matter. (Ex. F.) Although Loops did not assert this patent in this litigation, a finding of unenforceability of its parent patents would likely extend to the '028 Patent and any other patent in this family in which the inequitable conduct had an immediate and necessary relation. *Cordis Corp. v. Boston Sci. Corp.*, 188 Fed. Appx. 984, 989

(Fed. Cir. 2006). Given Loops's 14-year litigation history against Maxill, the likelihood of Loops asserting additional patents against Maxill, including the '028 Patent, is not simply speculation. Indeed, Loops asserted the '285 Patent against Maxill in a pending case in the Western District of Washington. And Loops refused to covenant not to sue on the '028 Patent when the Parties met and conferred with respect to Loops's Motion. In fact, Loops has not provided *any* covenant not to sue Maxill. *See Arris Group, Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1381 (Fed. Cir. 2011) ("a patentee's refusal to give assurances that it will not enforce its patent is relevant to the determination of declaratory judgment standing") (cleaned up). An unenforceability finding for the Asserted Patents would provide Maxill assurance that it will not continue asserting patents within this tainted family in the future. This is an "additional benefit" sufficient to deny Loops's Motion.

C. Loops's arguments in favor of dismissal fall short.

Loops cites a number of cases in which courts used their discretion to dismiss invalidity counterclaims after dismissal of infringement claims, but the opinions do not address the circumstances here and are thus inapposite. For example, in *SSI Techs., LLC v. Dongguan Zhengyang Elec. Mech. LTD*, the issue was whether the district court could dismiss invalidity counterclaims after a finding of non-infringement—the court did not address the circumstances here, where the defendant counterclaimed for § 285 fees based on inequitable conduct. 59 F. 4th 1328, 1338 (Fed. Cir. 2023). However, in *Monsanto*, the Federal Circuit made clear that under those circumstances, it is proper to rule on the inequitable conduct issues despite the patents at issue being dismissed. *Monsanto*, 514 F.3d at 1242. The other cases Loops cites suffer from the same issue—they do not address circumstances in which § 285 fees are at issue. *See, e.g., Flexuspine, Inc. v. Globus Med., Inc.*, 879 F.3d 1369, 1376 (Fed. Cir. 2018) (did not involve §

285 fees or inequitable conduct); *AstraZeneca LP v. Breath Ltd.*, 542 Fed. Appx. 971, 982 (Fed. Cir. 2013) (same); *Little Giant Ladder Sys., LLC v. Tricam Indus., Inc.*, No. 20-cv-2497, 2024 U.S. Dist. LEXIS 108652, at *6 (D. Minn. June 14, 2024) (same); *Payrange, Inc. v. Kiosoft Techs., LLC & Techtrex, Inc.*, No. 1:20-cv-20970, 2023 U.S. Dist. LEXIS 179807, at *5 (S.D. Fla. June 27, 2023) (same); *C. Van Der Lely N.V. v. F.LLi Maschio S.n.c*, 561 F. Supp. 16, 24 (S.D. Ohio 1982) (same).

Loops also claims that "little or nothing has been invested in invalidity or unenforceability," arguing that this weighs in favor of the Court exercising its discretion to dismiss Maxill's counterclaims. (Brief, p. 6.) But this is not true. Under the schedule that the Parties jointly proposed to this Court, Maxill has expended significant time and effort preparing its preliminary invalidity/unenforceability contentions, which it served just days before Loops filed its Motion. And Loops served responsive validity/enforceability contentions today (October 29). In addition, Maxill has served Loops with a set of ESI search terms that are directed towards Loops's inequitable conduct, but Loops has yet to produce any responsive documents. There is no reasonable justification to derail this Court's schedule on the patent issues only to have to eventually rule on them down the road. Loops's Motion should be denied.

## IV. CONCLUSION

The Court should not entertain Loops's efforts to evade the consequences of asserting patents it procured through inequitable conduct against Maxill and cut the legs out from Maxill's request for § 285 fees after dismissing its patent infringement claims with prejudice. This would not be "practical" or "wise judicial administration." It would greatly prejudice Maxill and disrupt the orderly adjudication of issues that are properly before the Court. Loops's Motion should be denied.

Dated: October 29, 2026

Respectfully submitted,

*/s/ Mark W. McDougall*

Mark W. McDougall (#0080698)
mmcdougall@calfee.com
Andrew W. Alexander (#0091167)
aalexander@calfee.com
Ronald McMillan (#0072437)
rmcmillan@calfee.com
CALFEE HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
Telephone: (216) 622-8200
Facsimile: (216) 241-0816

Boyoon Choi (admitted *pro hac vice*)
b.choi@ccl.law
Choi Capital Law
Ste. 2246
1420 Fifth Ave.
Seattle, WA 98101
Telephone: (206) 588-0463
Facsimile: (206) 971-1650

*Attorneys for Maxill Defendants*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been filed electronically on October 29, 2026 with the United States District Court for the Northern District of Ohio. Notice of the filing will be sent by email to all counsel by operation of the Court's electronic filing system and all parties may access this filing through that system.

/s/ *Mark W. McDougall*
*One of the attorneys for Maxill Defendants*